

FILED by _____ D.C.

NOV 2 5 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.    9:13-cv-80720-KAM

John Pinson, *pro se*

     Plaintiff

vs

**JPMORGAN CHASE BANK, N.A., et. al.**

       Defendants/

---

## PLAINTIFF *PRO SE'S* RESPONSE IN OPPOSITION TO
## DEFENDANT LAW OFFICES OF MARSHALL C. WATSON, P.A.
## a/k/a CHOICE LEGAL GROUP, P.A.'S  MOTION TO DISMISS

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW the Plaintiff John Pinson, *pro se*, who hereby submits his response to the Motion

To Dismiss pursuant to FRCP Rule 12(b)(6) filed by Defendant Law Offices of Marshall C.

Watson, P.A. a/k/a Choice Legal Group, P.A. (hereinafter "Marshall Watson/ Choice") and states

as follows:

### STATEMENT OF FACTS

1. On August 27, 2013, Plaintiff filed his amended verified complaint[1] with 21 page appendix[2].

2. On September 19, 2013, Plaintiff was notified by Defendant Chase and became aware of a

   scanning error in the Clerks office of the federal District Court in West Palm Beach. Plaintiff

   contacted the clerk's office who pulled the paper file, affirmed the scanning error, and

   corrected the clerks error and re-scanned the amended verified complaint which was received

---

[1] See DE 06.
[2] See DE 06-1.

August 27, 2013, and appears as Docket entry 09[3]. The Clerks office informed Plaintiff that

since the party had been served with the summons and complaint, counsel for that party

would find the clerks correction on the docket and re-service was unnecessary.

3.  On October 13, 2013 Defendant Marshall Watson/ Choice filed its Motion to Dismiss.[4]

4.  On October 31, 2013 the Court issued an Order granting Plaintiff unopposed motion for

enlargement of time, through November 25, 2013, to respond to Defendant Marshall Watson/

Choice's Motion to Dismiss.[5]

5.  "This is an action brought for damages for violations of the Fair Debt Collection Practices

Act (FDCPA) 15 U.S.C. §1692 et seq.; and, for damages for violations of the Florida

Consumer Collection Practices Act (FCCPA) FLA. STAT. §559 (Part VI); and for

declaratory and injunctive relief."[6]

6.  "Upon belief and information, Plaintiff contends that many of these practices are widespread

for some or all of the Defendants."[7] Florida Bar records show that the managing attorney of

Defendant Marshall Watson/ Choice, attorney Marshall C. Watson had his law license

Suspended - with Conditions on May 30, 2013, with a file reference number of 201151042[8]

and found in Florida Supreme Court CASE NO.: SCI2-2731[9]. It is Plaintiffs understanding

that Watson's suspension was due to actions similar to those in his complaint.

---

[3] See DE 09.
[4] See DE 17.
[5] See DE 18, 19.
[6] See DE 09 ¶ 1.
[7] See DE 09 ¶ 2.
[8] See http://www.floridabar.org/names.nsf/0/C2AF815DCA28947785256A83007987B8?OpenDocument
[9]
http://www.floridabar.org/DIVADM/ME/MPDisAct.nsf/DisActFS?OpenFrameSet&Frame=DisActToC&Src=%2F
DIVADM%2FME%2FMPDisAct.nsf%2FdaToc!OpenForm%26AutoFramed%26MFL%3DMarshall%2520Craig%
2520Watson%26ICN%3D201151042%26DAD%3DSuspended%2520-%2520with%2520Conditions

7. "Plaintiff contends that the Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect an alleged but nonexistent debt and knowingly making false assertions of ownership in relation to the debt."[10]

8. "This is not Defendants first attempt to illegally collect this alleged but nonexistent debt."[11]

9. The Defendant(s) is a 3rd Party Debt Collector(s) located in the United States of America, in Florida, as such is governed under the law by the Fair Debt Collection Practices Act 15 U.S.C. §1601, et seq.

10. The State of Florida abides by and adheres to these laws. Specifically the federal Fair Debt Collection Practices Act FDCPA 15 U.S.C. §1692, et sec. and also the Florida Consumer Collection Practices Act ("FCCPA") Fla. Stat. §559 (Part VI) et sec., and as such the Defendant(s) are governed under these laws.

11. The Plaintiff denies having any contractual agreement for credit, loans or services relationship with the Defendant(s).

12. Even if the Plaintiff did have such an agreement, which the Plaintiff denies, alleged debt is not in question here. But the fact as to how it was or was not validated and wrongful actions of the Defendant(s) in an attempts to collect and credit reporting of the alleged debt, violated rights of the Plaintiff and the laws as outlined in the Fair Debt Collections Practices Act, 15 U.S.C. § 1601, et seq. and the Florida Consumer Collection Practices Act ("FCCPA") Fla. Stat. §559 et sec.

13. Plaintiff has made numerous efforts to ascertain the undisclosed identity of the alleged creditor and demanded proper validation under the FDCPA of any alleged debt, and defendants have not provided the same notwithstanding Plaintiffs written dispute.[12]

---

[10] See DE 09 ¶ 3.
[11] See DE 09 ¶ 4.

14. "The communications in question here are all related to the collection of a[n un-validated alleged] consumer debt."[13]

15. Chase and CPCC by and through their attorney(s) Marshall Watson/ Choice attempted to take a legal action they were not legally entitled to take.

16. "Defendant[s] continue to attempt to enforce and collect a non-existent debt."[14]

17. Plaintiffs FDCPA and FCCPA claim is based on the **wrongful actions of defendant**, not whether or not a valid debt existed with defendants, which plaintiff denies.

## STANDARD OF REVIEW

18. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555 (2007), _quoting Conley v. Gibson_, 355 U.S. 41, 47 (1957).  "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," Id. At 555, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." _Id._ At 570.

19. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". _Friends of Lake View School District v. Beebe_, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. Id. A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". _Ashcroft v. Iqbal_, 129 W.Ct, 1937, 1950 (2009).

---

[12] See DE 06-1 generally.
[13] See DE 09 ¶ 20.
[14] See DE 09 ¶ 35.

20. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ARGUMENTS AND AUTHORITIES

21. When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). If the complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

22. To bring these matters in controversy before the Court, the Plaintiff *pro se* did file his amended verified complaint[15] outlining statements of fact that point to documents that are appended[16] to his verified complaint and which the defendant fails to allege as being untrue. In its motion to dismiss, the Defendant, Marshall Watson/ Choice, simply complains about the Plaintiff *pro se's* complaint being inadequate or insufficient, but fails to refute or deny any of the Plaintiff *pro se's* factual allegations or contentions.

23. Regarding *pro se* litigants the Court's findings are clear that "... the right to file a lawsuit *pro se* is one of the most important rights under the constitution and laws." *Elmore v.*

---

[15] See DE 09.
[16] See DE 06-1.

*McCammon* (1986) 640 F. Supp. 905. "There can be no sanction or penalty imposed upon one because of his exercise of Constitutional Rights." *Sherar v. Cullen*, 481 F. 2d 946 (1973).

24. "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. *Conley v. Gibson*, 355 U.S. 41 at 48 (1957).

25. "Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519 (1972).

26. "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938).

27. It was held that a *pro se* complaint requires a less stringent reading than one drafted by a lawyer per Justice Black in *Conley v. Gibson. Puckett v. Cox*, 456 F. 2d 233 (1972) (6th Cir. USCA).

28. In his first amended verified complaint, the Plaintiff *pro se* alleges claims for violations of FDCPA and FCCPA by defendants.[17]

**The FDCPA 15 U.S.C. §1692 et. seq.**

---

[17] See DE 09.

29. Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f. The FDCPA applies to "debt collectors," as defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Title 15 U.S.C. 1692e generally prohibits the use of any false, deceptive, or misleading representations or means to collect a debt. 15 U.S.C. § 1692e. *See Acosta v. Campbell*, Court of Appeals, 11th Circuit 2009

**THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.**

30. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute, *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997): *see also Irwin v. Mascoti*, 112 F. Supp. 2d 937 (N.D. Cal. 2000): *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.*, 969 F. Supp. 609 (D. Nev. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax, A.R.S.*, 74 F. 3d 30, 33-34 (2' Cir. 1996).

**THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER DEBTORS.**

31. The FDCPA is a remedial statute. _Hamilton v. United Healthcare of Louisiana, Inc._, 310 F 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. _Clark v. Capital Credit & Collection Services, Inc._, 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." _Johnson v. Riddle_, 305 F. 3d 1107, 1117 (20th Cir. 2002).

**THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.**

32. The FDCPA is to be interpreted "under an unsophisticated or least sophisticated consumer standard." _Gonzales v. Kay_, 577 F.3d 600, 603 (5th Sir. 2009) (quoting _Gaswami v. Am. Collections Enter., Inc._, 377 F.3d 488, 495 (5th Cir. 2004); _Taylor v Perrin, Landry, deLaunay & Durand_, 103 F.3d 1232, 1236 (5th Cir. 1997). The court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." _Goswami v. Am. Collections Inter., Inc._, 377 F.3d at 495. The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." _Barany-Snyder v. Weiner_, 539 F.3d 327,332 (6th Cir. 2008) (citing IS U.S.C. § 1692(a)). Courts use the "least sophisticated consumer" standard, an objective test, when assessing whether particular conduct violates the FDCPA. _Harvey v. Great Seneca Fin. Corp._, 453 F.3d 324, 329 (6th Cir. 2006). The least sophisticated consumer test is objective and is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." _Kistner v. Law Offices of Michael P. Margelefsky, LLC_, 518 F. 3d 433, 438 (6th Cir. 2008) (quotations and citation omitted). Claims under the Fair Debt Collections Practices Act adhere to the unsophisticated consumer standard. See _Grammon v. GC Services Ltd. Partnership_, C.A. 7(111)1994, 27 F. 3d 1254, on remand 162 F. R. D. 313.

## THE FDCPA PROTECTS CONSUMERS FROM DEBT COLLECTOR MISCONDUCT

33. The "Act is primarily a consumer protection statute, and we have consistently interpreted the statute with that congressional object in mind." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2nd Cir. 2008).   The FDCPA is "an extraordinarily broad statute" and must be enforced "as Congress has written it." *Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992).  The FDCPA should be construed to accomplish the regulatory goals intended by Congress. *Ayala v. Dial Adjustment Bureau, Inc.*, 1986 U.S. Dist. LEXIS 30983 (D. Conn. Dec. 4, 1986). "The Sixth Circuit has described the statute as 'extraordinarily broad' and its terms must be literally enforced." *Deere v. Jvitch, Block & Rathbone L.L.P.*, 413 F. Supp. 2d 886 (S.D. Ohio 2006).

34. "The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).  "[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists." *Keele v. Wexler*, 149 F/3d 589. 594 (7th Cir. 1998).

35. A non-debtor who was subjected to abusive collection tactics may not maintain an action for violations of § 1692c(c), since that section is limited to violations directed at a "consumer" as defined in the Act, but may maintain an action for violation of §§ 1692d and 1692e, which have no such limitation and therefore apply to anyone who is the victim of prescribed misconduct. *Montgomery v. Huntington Bank & Silver Shadow Recovery, Inc.*, 346 F.3d 693 (6th Cir. 2003).

**FCCPA**

36. The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in exactly the same manner. FLA STAT. § 559.55(1); _LeBlanc v. Unifund CCR Partners_, 601 F.3d 1185, 1187 n.2 (11th Cir. 2010).

37. The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "... debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. _See LeBlanc v. Unifund CCR Partners_, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

### Count I - Plaintiff's FDCPA Claim

38. In Count I of the complaint, Plaintiff _pro se_ alleges a claim for violations of the FDCPA. The Plaintiff _pro se_ must prove the following essential elements to support a claim for 15 U.S.C. §1692 against each defendant: (1) the plaintiff has been the object of debt-collection activity arising from an alleged consumer debt; (2) the defendant is a debt collector under 15 U.S.C. § 1692a(6); and (3) the defendant has violated, through acts or omissions, §1692 of the FDCPA. The complaint provides defendant with fair notice of the claim. _See Brooks_, 578 F.3d at 581. Plaintiff _pro se's_ verified complaint provides more than labels and conclusions and is more than a formulaic recitation of the elements of an FDCPA claim, and further the verified complaint offers appended documents as fact further evidencing his claim.

39. In support of his claim for FDCPA violations, Plaintiff *pro se* made the following factual allegations for each element: (1) That Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7)[18], and that Plaintiff *pro se* was threatened in a written communication[19] by Defendants with a collection action[20] wherein defendants stated "THIS IS AN ATTEMPT TO COLLECT A DEBT"[21], and further, "IMPORTANT NOTE: FEDERAL LAW REQUIRES US TO NOTIFY YOU THAT THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT"[22]; (2) Defendant Marshall Watson/ Choice is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6)[23], and is clearly and unambiguously stated by defendant Marshall Watson/ Choice that "WE ARE A DEBT COLLECTOR"[24] (defendant Chase also states in a written communication "We are a debt collector"[25]); the defendant has violated, through acts or omissions, §1692 of the FDCPA. "Defendants' violations include, but are not limited to, the following:"[26]

40. <u>Violation of 15 U.S.C. §1692g</u>: "Pinson did not receive from Defendants the required FDCPA 15 U.S.C. §1692g disclosure notice within five day of Wolf's visit, or at any time thereafter"[27]. Even as of this date the Plaintiff *pro se* has failed to receive a Validation Rights Notice under 15 U.S.C. §1692g from and named Defendant. This was a violation in that Defendant failed to provide consumer Pinson with a written 30-day notice of validation rights and the right to dispute the debt.

---

[18] See DE 09 ¶ 11, 38.
[19] See DE 09 ¶ 20.
[20] See DE 06-1 pages 12-18, 20-21.
[21] See DE 06-1 pages 13, 16
[22] See DE 06-1 pages 15 ¶ 1.
[23] See DE 09 ¶ 13, 16-18, 39.
[24] See DE 06-1 pages 13, 16
[25] See DE 06-1 page 21.
[26] See DE 09 ¶ 40.
[27] See DE 09 ¶ 26.

41. "Section 1692g of the FDCPA requires that a debt collector send a validation notice to the debtor, informing the debtor that he or she has thirty days to dispute the debt and to request the name and address of the original creditor." *Elliot v. GC Servs., LP*, No. 8:10-cv-1976-T-24TBM, 2011 WL 5975671, at *4 (M.D. Fla. Nov. 28, 2011). The courts have determined that the notice must be provided in a manner that effectively communicates its contents to the least sophisticated of consumers. *See Ellis v. Solomon & Solomon, PC.*, 591 F.3d 130 (2d Cir. 2010). ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."); *Sims v. GC Servs. L.P.*, 445 F.3d 959 (7th Cir. 2006). (The unsophisticated consumer standard applied. Since the FDCPA is a strict liability law, the good or bad intent of the debt collector is immaterial.); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982). (Applies unsophisticated consumer standard. Also, a consumer need not dispute the validity of a debt to recover for a failure to provide a proper notice of validation rights provided by § 1692g.).

42. <u>Violation of 15 U.S.C. §1692f(6)</u>: In a written communication defendant stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[28], yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase did not own the alleged debt and defendants do not refute that fact. This was a violation in that Defendant threatened to unlawfully take consumer Pinson's property, and "was a false assertion of a legal right to collect"[29].

---

[28] See DE 06-1 page 15 ¶ 2.
[29] See DE 09 ¶ 25, 31, 34.

43. <u>Violation of 15 U.S.C. §1692f(1)</u>: Even though the defendant's communication states "You

should verify … the amounts due and owing to ensure that these items are correct"[30], the

defendant threatens "Please be advised that the foreclosure action will continue until the total

reinstatement funds are received in compliance with this letter"[31]. These statements appear

contradictory, notwithstanding the fact that the County Court records show no foreclosure

action was pending at that time and no foreclosure action has been filed since that date, nor

could there be, as Chase did not own the alleged debt and defendants do not refute that fact.

This was a violation in that Defendants attempted to collect an amount it had no right to

collect because Defendants did not own the Alleged Debt, and Defendant states that he

disputed the Alleged Debt.

44. <u>Violation of 15 U.S.C. §1692e(14)</u>: Plaintiff *pro se* has received debt collection

communications from various entities such as but not limited to: "Chase"; Marshall C.

Watson PA"; Law Offices of Marshall C. Watson"; "Chase Home Finance"; "Bank One

Financial Services Inc"; "Chase Home Lending"; "Ocwen"; "Chase Home Finance LLC";

"JPMorgan Chase"; "JPM Chase"; "JPMorgan Chase Bank NA"; "Chase Mortgage

Banking"; "Chase Fulfillment"; "JP Morgan Chase & Company, Family of Companies",

regarding an un-validated alleged debt. This was a violation in that names other than the true

names of the debt collector were used.

45. <u>Violation of 15 U.S.C. §1692e(11)</u>: The initial communication from Defendant Marshall

Watson/ Choice was "On Saturday, July 28, 2012 …[when] Barry A. Wolf on instruction of

WATSON did … show written instructions from WATSON … asserting CHASE owned the

---

[30] See DE 06-1 page 14 ¶ 8.
[31] See DE 06-1 page 14 ¶ 5.

debt and had authorized WATSON to collect on their behalf."[32] At that time the Plaintiff was not notified Watson was a "debt collector" and that "any information obtained will be used for that purpose" even though Wolf attempted to obtain information on consumer[33] Plaintiff *pro se*. Further, the Defendant Marshall Watson/ Choice August 9, 2012 subsequent communication[34] fails to state it is a "communication from a debt collector". This was a violation in that Defendant failed to disclose it was a debt collector in the initial communication and failed to disclose it was a debt collector in subsequent communications.

46. Violation of 15 U.S.C. §1692e(10): "On Saturday, July 28, 2012 …[when] Barry A. Wolf on instruction of WATSON did … show written instructions from WATSON … asserting CHASE owned the debt and had authorized WATSON to collect on their behalf."[35] At that time the Plaintiff was not notified Watson was a "debt collector" and that "any information obtained will be used for that purpose" even though Wolf attempted to obtain information on the consumer. This was a violation in that Defendant used false representations and deceptive means in attempt to collect an Alleged Debt.

47. Additionally, Defendant Marshall Watson/ Choice asserted Plaintiff was in foreclosure more than once when there was no foreclosure action; this was a false representation or deceptive means to collect or attempt to collect any [alleged] debt. In a written communication defendant stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[36] , yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase did not own the alleged debt and defendants do

---

[32] See DE 09 ¶ 23.
[33] See DE 09 ¶ 23.
[34] See DE 06-1 page 12.
[35] See DE 09 ¶ 23.
[36] See DE 06 page 15 ¶ 2.

not refute that fact. This was a violation in that Defendant used false representations and deceptive means in attempt to collect an Alleged Debt.

48. Further, Defendant Chase, in a August 17, 2012 communication stated "this loan is a valid legally enforceable financial obligation with Chase"[37], notwithstanding the fact that on June 1, 2012, Plaintiff *pro se* was notified "Your loan was sold into a public security" in response to Plaintiff's Qualified Written Request[38], a fact Defendants do not refute. This was a violation in that Defendant used false representations and deceptive means in attempt to collect an Alleged Debt.

49. Violation of 15 U.S.C. §1692e(8): Defendant Marshall Watson/ Choice failed to communicate to Chase that the debt was disputed by the consumer, and Chase threatened to report and reported information to the credit bureaus[39] even though the consumer disputed the alleged debt in writing. This was a violation in that defendant failed to report the debt was disputed.

50. Reporting to credit bureaus is a communication within the FDCPA. Allegation that collection agency falsely reported the balance of an account to a credit bureau survived motion to dismiss. *See Davis v. Trans Union, L.L.C.*, 526 F. Supp. 2d 577 (W.D. N.C. 2007).

51. Violation of 15 U.S.C. §1692e(2): In a written communication defendant stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[40] , yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase did not own the alleged debt and defendants do not refute that fact. Thus, as in

---

[37] See DE 06-1 page 20 ¶ 1.
[38] See DE 06-1 page 4 ¶ 2.
[39] See DE 06-1 page 21 last paragraph.
[40] See DE 06-1 page 15 ¶ 2.

other communications consumer received, the defendants falsely represented the character, amount or legal status of the [alleged] debt. This was a violation in that Defendant misrepresented the character, amount, and legal status of the debt, by stating that a foreclosure action had been filed when none had, and that Chase was owed an alleged debt when Chase did not own the alleged debt and did not have a legal right to collect.

52. Violation of 15 U.S.C. §1692d: In a written communication defendant stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[41] , yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase did not own the alleged debt and defendants do not refute that fact. Plaintiff received multiple communications stating a foreclosure action had been commenced against him, where the fact is that none was filed, and thus this action, as others, naturally harassed, oppressed and abused the Plaintiff, and this unfair and deceptive conduct was unnecessary on the part of Defendants. This was a violation in that Defendant stated that a foreclosure action had been filed when none had, and that Chase was owed an alleged debt when Chase did not own the alleged debt and did not have a legal right to collect, thus harassing, oppressing and abusing Pinson.

53. Congress included this general proscription in recognition of its inability to foresee every conceivable abusive debt collection method. According to the Senate report: "this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."[42] Consequently, a collector might violate the general proscription

---

[41] See DE 06-1 page 15 ¶ 2.
[42] See S. Rep. No. 382, 95th Con g., 1st Sess. 4, at 4, reprinted at 1977 U.S.C.C.A.N. 1695, 1696

even though its conduct falls outside the specific listed activities.[43] *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051 (C.D. Cal. 2009); *Bank v. Pentagroup Fin., L.L.C.*, 2009 WL 1606420 (E.D.N.Y. June 9, 2009); *Cirkot v. Diversified Sys., Inc.*, 839 F. Supp. 941 (D. Conn. 1993); *Grassley v. Debt Collectors, Inc.*, 1992 U.S. Dist. LEXIS 22782 (D. Or. Dec. 4, 1992); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 981 (N.D. Ill. 1979); *Henderson v. Credit Bureau, Inc.*, 1989 U.S. Dist. LEXIS 19138 (W.D.N.Y. July 13, 1989); *Riley v. Giguiere*, 631 F. Supp. 2d 1295 (E.D. Cal. 2009).

54. The term "harass" is not defined in the Act, but examples of actionable harassment are provided by the prohibitions in the subsections of 15 U.S.C. § 1692d.[44] In the absence of specific statutory definition, a word should be accorded its ordinary meaning, as given in the dictionary. Thus, the term "oppress" means "to ... persecute by unjust ... use of force or authority ... weigh heavily upon,"[45] and the term "abuse" means "to use wrongly or improperly ... to hurt or injure by maltreatment."[46] The breadth of these terms indicates that Congress intended broad prohibitions against improper debt collection conduct.

55. In *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) the Eleventh Circuit addressed the standard of analysis for claims under section 1692d, and used "a susceptible

---

[43] H.R. Rep. No. 1202, 94th Cong., 2d Sess. 7 (1976); H.R. Rep. No. 131, 95th Cong., 1st Sess. 13 (1977) ("[t]his section provides a general rule prohibiting any debt collector from harassing or intimidating any person in connection with the collection of any debt or the threat or attempt to do so. Six examples of what constitutes harassment or intimidation are enumerated. These examples do not limit the general application of this rule against harassment or intimidation."); FTC Official Staff Commentary § 806-1.

[44] 122 Cong. Rec. H7792 (daily ed. July 28, 1976) (remarks of Rep. Wylie) ("[w]e have talked about threats and harassment in the bill. They are not necessarily words of vagueness. All we have to do is go to the dictionary to find out that 'harass' means to worry and impede by repeated •raids; exhaust, fatigue, to annoy continuously. Harass is to harass in a manner to injure, grieve or afflict; to cause to suffer because of belief; to annoy with persistent or urgent approaches, to pester"); Rozga, FTC Informal Staff Letter (Sept. 5, 1978); Kolarov, FTC Informal Staff Letter (Dec. 6, 1977).

[45] American Heritage Dictionary 872 (2d College Ed. 1982).

[46] American Heritage Dictionary 872 (2d College Ed. 1982).

consumer" standard as analogous to the "least sophisticated consumer" standard used under section 1692e.

> Whether a consumer is more or less likely to be harassed, oppressed, or abused by certain debt collection practices does not relate solely to the consumer's relative sophistication; rather, such susceptibility might be affected by other circumstances of the consumer or by the relationship between the consumer and the debt collection agency. For example, a very intelligent and sophisticated consumer might well be susceptible to harassment, oppression, or abuse because he is poor (i.e., has limited access to the legal system), is on probation, or is otherwise at the mercy of a power relationship .... Thus, we hold that claims under section 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse.
>
> _Jeter v. Credit Bureau, Inc._, 760 F.2d 1168, 1179 (11 th Cir. 1985).

56. The phrase "conduct the natural consequence of which is to harass" requires that courts should use objective standards in determining whether this provision has been violated. _Jeter v. Credit Bureau, Inc._, 760 F.2d 1168 (II th Cir. 1985); _Rutyna v. Collection Accounts Terminal, Inc._, 478 F. Supp. 980, 982 (N.D. Ill. 1979) The debt collector's intent may be inferred from his misconduct. _See Brandt v. I.C. Sys., Inc_., 2010 WL 582051 (M.D. Fla. Feb. 19, 2010) ("Intent may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt, or during a time of day which the debtor had informed the debt collector was inconvenient."); _Krapf v. Collectors Training Inst. of Ill., Inc_., 2010 WL 584020 (W.D.N.Y. Feb. 16, 2010)

57. Insofar as Plaintiff stated "Defendants' violations include, but are not limited to", the plaintiff also alleges:

58. <u>Violation of 15 U.S.C. §1692e(5)</u>: Marshall Watson/ Choice failed to conduct a reasonable investigation with regard to Plaintiff's written dispute and demand for validation[47]. Since Defendants failed to comply with Fla. Stat. §559.715 and threatened a lawsuit, and falsly represented it had filed a lawsuit, with an improper party, Defendants did take an[] action that cannot legally be taken thus violating 15 U.S.C. §1692e(5). *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010. This was a violation in that Marshall Watson/ Choice did make threat to take any action that cannot legally be taken or that is not intended to be taken.

59. These factual allegations show a right to relief that is plausible. That is, when the factual allegations are assumed to be true, they show a right to relief that is more than mere speculation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009); *see Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *Brooks*, 578 F.3d at 581.

**Count II - Plaintiff's FCCPA Claim**

60. In Count II of the complaint, plaintiff alleges a claim for violations of FCCPA. The elements of a FCCPA claim are (1) the plaintiff has been the object of debt-collection activity arising from an alleged consumer debt; (2) the defendant is a debt collector under Fla. Stat. § 559.55(6); and (3) the defendant has violated, through acts or omissions, Fla. Stat. § 559.72 of the FCCPA. The complaint provides defendant with fair notice of the claim. *See Brooks*, 578 F.3d at 581. Plaintiff *pro se's* verified complaint provides more than labels and conclusions and is more than a formulaic recitation of the elements of an FCCPA claim, and

---

[47] See DE 06-1 page 6.

further the verified complaint offers appended documents as fact further evidencing his claim.

61. In support of his claim for FCCPA, plaintiff made the following factual allegations for each element: (1) That Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7)[48], and that Plaintiff *pro se* was threatened in a written communication[49] by Defendants with a collection action[50] wherein defendants stated "THIS IS AN ATTEMPT TO COLLECT A DEBT"[51], and further, "IMPORTANT NOTE: FEDERAL LAW REQUIRES US TO NOTIFY YOU THAT THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT"[52]; (2) Defendant Marshall Watson/ Choice is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6)[53], and is clearly and unambiguously stated by defendant Marshall Watson/ Choice that "WE ARE A DEBT COLLECTOR"[54] (defendant Chase also states in a written communication "We are a debt collector"[55]); the defendant has violated, through acts or omissions, Fla. Stat. § 559.72 of the FCCPA.

62. The Plaintiff's FCCPA claims mirror plaintiff's FDCPA claims, the FDCPA allegations and factual allegations were restated under FCCPA in full. "Plaintiff alleges and the information in paragraphs 1 through 49."[56]

---

[48] See DE 09 ¶ 11, 38.
[49] See DE 09 ¶ 20.
[50] See DE 06-1 pages 12-18, 20-21.
[51] See DE 06-1 pages 13, 16
[52] See DE 06-1 pages 15 ¶ 1.
[53] See DE 09 ¶ 13, 16-18, 39.
[54] See DE 06-1 pages 13, 16
[55] See DE 06-1 page 21.
[56] See DE 09 ¶ 50.

63. Additionally, since plaintiff's FCCPA claims mirror plaintiff's FDCPA claims and "The

FDCPA is a federal law and accordingly state law defenses are not relevant here." *Hamid v.*

*Stock & Grimes, LLP*, No. 11-2349, 2012 WL 2740869, at 2, F. Supp. 2d (E.D. Pa. 2012).

64. The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is

preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in

exactly the same manner. FLA. STAT. § 559.55(1); *LeBlanc v. Unifund CCR Partners*, 601

F.3d 1185, 1187 n.2 (11th Cir. 2010).

65. Unlike the FDCPA, the FCCPA applies to anyone attempting to collect a debt, not just those

defined as "debt collectors." However, the FCCPA narrows liability by adding a requirement

for knowledge of falsity as to claims made. FLA. STAT. § 559.72(9); see also *McCorriston*

*v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) ("Plaintiff must prove, as part

of the prima facie case alleging a violation of the FCCPA, that Defendants had actual

knowledge that their claim of a right to enforce the debt" does not exist.).

66. Here Defendant Marshall Watson/ Choice complains Plaintiff's allegation "improperly lumps

together both Defendants"[57], and that plaintiff has not alleged that Defendant Marshall

Watson/ Choice had "actual knowledge" that the alleged debt was not legitimate. Defendant

Marshall Watson/ Choice was placed on notice that the alleged debt was disputed by Plaintiff

when "On July 28, 2012, Pinson sent WATSON a dispute and debt validation letter via US

Mail Certified # 7009 2820 0001 6165 9048 Return Receipt Requested."[58] The dispute letter

triggers a requirement to conduct a reasonable investigation into the disputed facts.

67. In response to Plaintiff's debt validation letter, Defendant Marshall Watson/ Choice, instead

of providing Plaintiff proper validation under the FDCPA, sent Plaintiff threatening

---

[57] See DE 14, Page 7, ¶ 1.
[58] See DE 09 ¶ 27, and DE 06-1 page 8.

communications[59] representing that it had filed a foreclosure action against Plaintiff where none had been filed, thus Defendant Marshall Watson/ Choice misrepresented that a legal action had already been taken that in fact had not, nor could not because Chase did not own the alleged debt.

68. The Florida Bar Rules of Professional Conduct states in: Rule 4-8.4(c) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

69. Since FDCPA prohibits actions and unfair practices that may not involve communicating directly with the consumer, *pro se* allegations that co-defendant was debt collector's servicing agent and that co-defendant debt collector is vicariously liable for its servicing agent's acts under the doctrine of respondent superior, survives motion to dismiss. *See Gathing v. Mortgage Elec. Registration Sys., Inc*., 2010 WL 889945 (W.D. Mich. Mar. 10, 2010).

70. In Chase's motion to dismiss, Chase alleges "the 'Loan'[…] is owned by a public security managed by CPCC."[60] If Chase does not own the alleged debt, it lacks standing to collect on the alleged debt. Chase has failed to identify the alleged owner of the alleged debt, thus the alleged owner of the alleged debt is unidentified. Further, the Chase motion to dismiss states "Chase is the servicer of the [] loan"[61]. These statements affirm the contents of the letter Plaintiff has included as page 4[62] in the appendix to his amended verified complaint[63].

71. Fla. Stat. §559.715 requires in part that "the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before

---

[59] See DE 06-1 pages 12-18.
[60] See DE 17 ¶ 1.
[61] See DE 17 ¶ 1.
[62] See DE 06-1 page 4.
[63] See DE 09 ¶ 21.

any action to collect the debt."[64] Plaintiff received no notice from any assignee, and alleged

assignee is unknown to Plaintiff. "On July 23, 2012, Pinson sent CPCC a dispute and debt

validation letter via US Mail Certified # 7011 2970 0002 4191 6770 Return Receipt

Requested"[65] in attempts to identify the alleged entity that referred to by Chase as purchasing

the alleged debt. As of this date CPCC has never responded[66] to repeated requests. Further,

"On April 13, 2012, Plaintiff sent a letter to CHASE, questioning the debt and CHASE's

authority to collect"[67] in the form of a qualified written request questioning ownership of the

alleged debt and Chase has never identified the owner of the alleged debt.

72. Counsel preparing foreclosure documents have an obligation to make a reasonable inquiry to

ensure that factual contentions set forth in pleadings have evidentiary support.[68] This duty

applies to the lender's preparation of pleadings related to an affirmative action for judicial

foreclosure.

73. Servicers and their attorneys who misrepresent the authority to foreclose implicate not only

court rules such as Rule 11, but may also violate statutory prohibitions against unfair and

deceptive acts and improper debt collection practices.

74. The duty created under Rule 11 certainly encompasses investigation into the facts related to

current ownership of notes and mortgages, as these facts form the very basis for the

foreclosure proceeding. Courts have become increasingly vigilant in exercising their own

authority under Rule 11 to scrutinize mortgage servicers' filings for blatantly inconsistent

content related to the authority to foreclose. *Mainsource Bank v. Winafeld*, 2008 WL

4061415 (Ohio Ct. App. Sept. 2, 2008) (upholding imposition of Rule 11 sanctions against

---

[64] See http://www.flsenate.gov/Laws/Statutes/2012/559.715
[65] See DE 09 ¶ 22, and DE 06-1 page 6.
[66] See DE 09 ¶ 35.
[67] See DE 09 ¶ 19, and DE 06-1 page 2.
[68] See Fed. R. Civ. P. 11.

plaintiff who filed foreclosure action when it was not real party in interest). *See also Wells Fargo Bank v. Reyes*, 867 N.Y.S.2d 21 (N.Y. Sup. Ct. 2008) (scheduling hearing to consider sanctions for frivolous litigation conduct in bringing foreclosure action when public records indicated that mortgage had never been assigned to named plaintiff when action filed); *Countrywide Home Loans, Inc. v. Taylor*, 843 N.Y.S.2d 495 (N.Y. Sup. Ct. 2007) (sanctions appropriate if plaintiff continues to bring actions accompanied by similar defective documentation of standing).

75. Careless foreclosure practices undermine the functioning of the courts and harm property rights of homeowners, investors, and purchasers of properties at foreclosure sales. Although Rule 11 does not function primarily as a fees-shifting provision, it does authorize a court to order that the offending creditor pay the objecting homeowner's attorney fees. Fed. R. Civ. P. 11(c)(4). *See Kirk Capital Corp*, 16 F.3d 1485, 1490 (8th Cir. 1994); *In re Kunstler*, 914 F.2d 505, 522-523 (4th Cir. 1990); *White v. Gen. Motors Corp*. 675, 684 (10th Cir. 1990); *Fed. Home Loan Mortg. Corp. v. Raia*, 918 N.Y.S.2d 397 (table), 2010 WL 4750043 (N.Y. Dist. Ct. Nov. 23, 2010) (applying New York attorney disciplinary rules, court imposes sanctions against attorney who misrepresented plaintiffs standing to pursue post-sale holdover action against borrower; attorney fees of $14,532.50 ordered paid to Volunteer Lawyers Project).

76. Bankruptcy Rule 9011 incorporates Federal Rule of Civil Procedure 11 into bankruptcy proceedings. Thus, when servicers, lenders, and their attorneys file motions for relief from the bankruptcy stay and proofs of claim, they must comply with Rule 9011 's reasonable investigation requirement. The bankruptcy courts have been particularly active in enforcing Rule 9011 against servicers and lenders who brought matters before the courts without reasonable investigation of the creditor's standing. *In re Nosek*, 406 B.R. 434 (D. Mass.

2009) (affirming imposition of sanctions of $250,000 on creditor for misrepresenting status of holder of note during protracted litigation), modified, 609 F.3d 6 (1st Cir. June 14, 2010) (Rule 9011 sanction reduced from $250,000 to $5000); *In re Arizmendi*, 2011 WL 2182364 (Bankr. S.D. Cal. May 26, 2011) (sanctions to issue after One West filed motion for stay relief erroneously stating it was creditor when it was a servicer, noting similar defective filings by same party); *In re Koontz*, 2010 WL 5625883 (Bankr. N.D. Ind. Sept. 30, 2010) (creditor and MERS misrepresented authority of signatory to assignment and failed to identify relevant holders of note and mortgage, ordering creditors to pay the attorney's fees of objector to proof of claim); *In re Lee*, 408 B.R. 893 (Bankr. C.D. Cal. 2009) (Rule 9011 sanctions imposed on creditor's attorney for failure to disclose transfer of ownership of note, failure to join true owner in motion for relief from bankruptcy stay, and for submitting copy of note with motion that was not true and correct copy of the original note). *See also In re Fitch*, 2009 WL 1514501 (N.D. Ohio May 28, 2009) (not reaching a sanctions ruling, but reprimanding attorney who signed false affidavits of authority to file motion for entity that never authorized the filing).

77. Defendant Marshall Watson/ Choice was on notice Plaintiff disputed the alleged debt and as a debt collector had a duty to investigate any claims. Defendant Marshall Watson/ Choice, the Council for Chase, failed to conduct a reasonable investigation and subsequently represented it had taken a legal action and filed a lawsuit against the Plaintiff, when Marshall Watson/ Choice did not have a right to take a legal action. If Defendant Marshall Watson/ Choice had properly investigated and conferred with its client Chase, then these acts may not have occurred.

78. Any person who violates the FCCPA is liable for actual damages and up to $1,000 in additional damages, if the court allows, unless "the violation was not intentional and resulted from a bona fide error." FLA. STAT. § 559.77(2)-(3). Unlike the FDCPA, the FCCPA permits awarding punitive damages. Id.

79. The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "... debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

80. Marshall Watson/ Choice failed to conduct a reasonable investigation with regard to Plaintiff's written dispute and demand for validation[69]. Since Defendants failed to comply with Fla. Stat. §559.715 and threatened a lawsuit, and falsly represented it had filed a lawsuit, with an improper party, Defendants did take an[] action that cannot legally be taken thus violating 15 U.S.C. §1692e(5). *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010, and in doing so violated FLA. STAT. § 559.72(9). This was a violation in that Defendant Marshall Watson/ Choice, being informed of a dispute, knowing the alleged debt was not legitimate did claim, attempt and threaten to enforce an alleged debt and assert the existence of some legal right when the right did not exist by sending a letter falsely stating a foreclosure action was filed.

---

[69] See DE 06-1 page 6.

81. These factual allegations show a right to relief that is plausible. That is, when the factual allegations are assumed to be true, they show a right to relief that is more than mere speculation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009); *see Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *Brooks*, 578 F.3d at 581.

## CONCLUSION

82. Plaintiff has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under the FDCPA and FCCPA at this stage. *See Ashcroft v. Iqbal*, 129 S.C. at 1950. Plaintiff has also alleged that he has been damaged by the Defendant Marshall Watson/ Choice, and other Defendants. Plaintiff *pro se's* claims should therefore survive dismissal.

**WHEREFORE**, Plaintiff *pro se* respectfully requests that this honorable Court enter an order denying Defendant Marshall Watson/ Choice Motion to Dismiss Pursuant to FRCP 12(b)(6). In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff *pro se* asks the Court to grant leave and sufficient time to amend his complaint.

Dated: November 25, 2013

Respectfully Submitted,

John Pinson, *pro se*
526 Westwood Road
West Palm Beach, Florida 33401
561-329-2524
john@pinson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, on the Service List below.

Signed November 25, 2013

_____

John Pinson

### Service List

Thomas H Loffredo, Esq.
tom.loffredo@gray-robinson.com
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1850
Ft. Lauderdale, FL 33131
Phone: (954) 761-8111
Fax: (954) 761-8112
Attorney for Defendant:
JPMorgan Chase Bank, N.A.


Patrick S. Scott, Esq.
patrick.scott@gray-robinson.com
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1850
Ft. Lauderdale, FL 33131
Phone: (954) 761-8111
Fax: (954) 761-8112
*Attorney for Defendant:*
CPCC Delaware Business Trust,
a/k/a CPCC Delaware Statutory Trust

Robert A. Bouvatte Jr., Esq.
rbouvatte@conroysimberg.com
Conroy, Simberg, P.A.
3440 Hollywood Blvd., Second Floor
Hollywood, FL 33021
Phone: (954) 961-1400
Fax: (954) 967-8577
Attorney for Defendant:
Law Office of Marshall Watson, P.A.,
a/k/a Choice Legal Group, P.A.