**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

JOHN PINSON,

                Plaintiff,                          Case No. 9:13-cv-80720-KAM

_____/

v.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, a financial institution;
CPCC DELAWARE BUSINESS TRUST a/k/a
CPCC DELAWARE STATUTORY TRUST,
an unknown entity; and JPMORGAN CHASE
& CO., a publicly held company,

                Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED VERIFIED**
**COMPLAINT _WITH PREJUDICE_ AND MEMORANDUM OF LAW IN SUPPORT**

      The defendants, JPMorgan Chase Bank, National Association ("Chase Bank"), CPCC

Delaware Business Trust ("CPCC"), and JPMorgan Chase & Co ("JPMC"), file this Motion to

Dismiss Second Amended Verified Complaint _With Prejudice_ and Memorandum of Law in

Support, pursuant to Fed. R. Civ. P. 12(b), and state:

      1.      The latest complaint filed by the _pro se_ plaintiff John Pinson marks his third

attempt to state a claim for relief.  Like the two complaints that came before it, the Second

Amended Verified Complaint seeks relief under two counts: the first (count 1), for a violation of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the second (count 2),

for a violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.[1]

And, just as in those earlier complaints, his third attempt fails to state a cause of action against

any of the defendants.

---

[1] The plaintiff alleges to seek declaratory and injunctive relief in his preliminary statement (Sec. Am. Compl. ¶ 1),
but he does not specify such relief under either count.

<u>Facts</u>

2.      The alleged facts, as set forth in the court's March 26 order, are:

On April 13, 2012, Plaintiff sent a letter to Chase stating it was a "[q]ualified [w]ritten [r]equest as defined by the Real Estate Settlement Procedures Act ("RESPA") for information regarding the servicing of this mortgage loan." [Sec. Am. Compl. ¶ 26[2]; Apr. 13, 2012 letter from Pl. to Chase, Ex. A, DE 54[3].] On June 1, 2012, Chase sent a letter to Plaintiff stating, "Your loan was sold into a public security managed by CPCC Delaware Business Trust, and may include a member of investors." [Sec. Am. Compl. ¶ 28[4], June 1, 2012 letter from Chase to Pl., Ex. B, DE 54[5].] On July 23, 2012, Plaintiff sent CPCC a "dispute and debt validation letter" which requested a validation that Plaintiff had a contractual obligation to pay CPCC. [Sec. Am. Compl. ¶ 32[6]; July 23, 2012 letter from CPCC to Pl, Ex. C, DE 54[7].] On July 28, 2012, Barry A. Wolf came upon Plaintiff's property on the instruction of Defendant Watson, stating that Chase owned the debt and had authorized it to collect on Chase's behalf. [Sec. Am. Compl. ¶ 34[8].] Chase, however, did not own the debt and should not have authorized Watson to collect the debt. [Sec. Am. Compl. ¶ 35[9].] Chase knew that the assertion of ownership and authority to collect was false. [Sec. Am. Compl. ¶ 36[10].]

DE 49, Pg. 4.  In addition, the following facts are also alleged in the second amended complaint:

The plaintiff did not receive from the defendants any disclosure notice after Mr. Wolf's visit. Sec. Am. Compl. ¶ 37.  Mr. Wolf communicated to third parties of alleged debt (Sec. Am. Compl. ¶ 38).  On July 28, 2012, the plaintiff sent the Law Firm of Marshall Watson P.A. ("Watson") a "dispute and debt validation letter" identical to the one sent to CPCC. Sec. Am. Compl. ¶ 43; Jul. 28, 2012 letter from Pl. to Watson, Ex. D, DE 54.  On July 30, 2012, the plaintiff sent an identical letter to Chase.  Sec. Am. Compl. ¶ 44; Jul. 28, 2012 letter from Pl. to Chase, Ex. E, DE 54.  On August 9, 2012, Watson sent a responsive letter to the plaintiff Sec. Am. Compl. ¶ 45; Aug. 9, 2012 letter from Watson. To Pl., Ex F, DE 54.  On August 17, 2012, Chase sent a responsive letter to the plaintiff "asserting that Chase owned the debt." Sec. Am. Compl. ¶ 48; Aug. 17, 2012 letter from Chase to Pl., Ex. G , DE 54.  JPMC is the parent of CPCC and Chase. Sec. Am. Compl. ¶¶ 51 and 52.

---

[2] Replacing Am. Compl. ¶ 19.
[3] Replacing DE 6-1.
[4] Replacing Am. Compl. ¶ 21.
[5] Replacing DE 6-1.
[6] Replacing Am. Compl. ¶ 22.
[7] Replacing DE 6-1.
[8] Replacing Am. Compl. ¶ 23.
[9] Replacing Am. Compl. ¶ 24.
[10] Replacing Am. Compl. ¶ 25.

3.      The plaintiff did not allege what debt Mr. Wolf asserted Chase owned when he allegedly came to his property, but, assuming that the plaintiff references only one debt throughout his pleading, Chase's August 17, 2012 letter sets forth the authorization for Chase to act for CPCC as the servicer of the debt. See ¶ 6, *supra.*

4.      The plaintiff has alleged that Watson's August 9, 2012 letter asserted that "Chase owned the debt and had authorized Watson to collect on [its] behalf," and that that assertion was false since Chase did not own the debt. Sec. Am. Compl. ¶¶ 45-46.  The letter, however, does not state that Chase owned the debt or that Chase authorized Watson to collect.  It provides that Chase is the "original creditor" and enclosed a reinstatement quote and payoff quote.  As set forth in paragraph 6 *supra,* Chase was the original mortgagee and the mortgage servicer, authorized to act for the debt.  Additionally, the letter (and enclosures) do not actually name the party represented by Watson.[11]  Ex. F, DE 54.

5.      The plaintiff has also alleged that Chase's August 17, 2012 letter asserted that "Chase owned the debt," and that the assertion was false. Sec. Am. Compl. ¶¶ 48-49.  The letter, however, does not state that Chase owns the debt.  It provides that "[o]ur understanding is that this loan is a valid and enforceable financial obligation with Chase" and that Chase is an investor on the loan. Ex. G. DE 54.  This is not a false representation, as Chase is the servicer of the debt.

6.      What is clear from the exhibits is that Chase is the servicer of the debt, that Chase was authorized to act, and that Chase responded to inquiries made by the plaintiff.  *See* Ex. B, DE 54 (Chase identifying the debt as account no. ending 0759; identifying the loan as being sold into a public security managed by CPCC; and identifying Chase as the servicer, authorized by the security to handle any related concerns on behalf of the security); Ex. G, DE 54 (Chase

---

[11] The letter provides that Watson represents "the Plaintiff in the above referenced case," but no plaintiff is identified anywhere in the letter.   The inference is that no foreclosure case had yet been filed.

providing details about the amounts due, naming itself as an investor for the loan, and enclosing a transaction history, note and security agreement); *see also* Ex. A, DE 54 (plaintiff requesting information from Chase "regarding the servicing of this mortgage loan."). All of the correspondence from Chase came in responsive to requests by the plaintiff.

<u>Substantive Deficiencies</u>

7. A review of the second amended complaint reveals that the plaintiff did not implement all of the suggestions offered by the court in its March 26, 2014 Order [DE 49].

8. First, the plaintiff has incorporated the irrelevant allegations of the first count into the second count. *See* Sec. Am. Compl. ¶ 58.

9. Second, the plaintiff has not set forth *any* allegations about what CPCC or the newly-added defendant JPMC did to violate the law: in fact, the second amended complaint does not allege *any* acts by these two entities. The plaintiff, in conclusory fashion, alleges that CPCC and JPMC were "'indirectly' engaged in the collection of an alleged debt for a third party." Sec. Am. Compl. ¶¶ 53-55. But the only factual allegations about CPCC show that it did not act, but was the object of communications. *See.* Sec. Am. Compl. ¶ 28 (CPCC identified by Chase, in response to a letter from the plaintiff, as the manager of a public security that owns the plaintiff's loan), ¶¶ 30-31 (Chase "communicated an alleged involvement of CPCC so that it appears Chase was prompted to act by CPCC), ¶¶ 32-33 and 57 (the plaintiff then sent correspondence to CPCC and did not receive a response). And there are no factual allegations about JPMC other than that it is the "parent company" of Chase and CPCC. *See* Sec. Am. Compl. ¶¶ 15, 51-52.

10. Third, it remains unclear what specific acts by the defendants the plaintiff challenges.

11. Nevertheless, as will be demonstrated in the memorandum of law below, none of the actions identified in the complaint impose liability on any of the defendants for violations of

4

any of the provisions of the FDCPA or the FCCPA. The plaintiff cannot meet the elements to state a cause of action against any of the defendants under either statute. Accordingly, the second amended complaint should be dismissed pursuant to Rule 26(b)(6).

12.    The defendants request that the dismissal be ordered *with prejudice*. The plaintiff, having filed three complaints and having had an opportunity to set forth all of the facts to assert his claims, is unable to state a claim for relief under the facts in this case and should not receive yet another opportunity to amend.

### Memorandum of Law

#### I.    Legal Standard

The court set forth the legal standard for a motion to dismiss under Rule 12(b)(6) in its March 26 order. Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). For this pleading standard to be met, a pleading must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007); *Ascroft v. Iqbal,* 559 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

The court should take a two-step approach: first, it should disregard the allegations that are merely legal conclusions, which are not entitled to the assumption of truth, and next, it should identify the well-pleaded factual allegations, assume their truthfulness, and determine whether they plausibly state a claim upon which relief may be granted. *Id.* at 678-79. A well-pleaded factual allegation is one that offers more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id* at 678 (citations omitted). "Factual allegations

must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. The Eleventh Circuit further noted that courts may make reasonable inferences in a plaintiff's favor, but they are not required to draw the plaintiff's inference. *Sinaltrainal v. Coca–Cola,* 578 F.3d 1252, 1260 (11th Cir.2009) (quotations omitted).

In determining the well-pleaded factual allegations, where there is a contradiction between the general and conclusory allegations of the pleading and an exhibit, the exhibit governs. *Crenshaw v. Lister,* 556 F.3d 1283, 1292 (11th Cir. 2009) (*quoting Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007)).

Here, the well-pleaded factual allegations are set forth in paragraph 4 above, as contradicted by the language in the exhibits, set forth in paragraphs 3-6 above.

II.     No Violation of the FDCPA

Congress established the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692.  Prior to the passage of the FDCPA, Congress faced a national problem of third-party debt collectors employing abusive tactics against consumers, and the FDCPA was enacted as a remedy.  S. Rep. No. 95-382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696-97.  A single violation of the FDCPA is sufficient to subject a debt collector to liability.  15 U.S.C. § 1692k(a); *Lewis v. Marinosci Law Group, P.C.,* 2013 WL 5789183, *2 (S.D. Fla. 2013).  To prevail on a claim under the FDCPA, a plaintiff must establish three elements: (1) that the plaintiff been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. *Johnstone v. Aldridge Connors, LLP,* 2013 WL 6086049 (S.D. Fla. 2013); *Frazier v. Absolute Collection Serv., Inc.,* 767 F. Supp. 2d 1354, 1363 (N.D.

Ga. 2011); *McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008).  Each element is discussed in turn.

       A.     *Collection Activity Arising from a Consumer Debt.*

The first element of an FDCPA claim has two requirements.  First, there must be collection activity.  Second, this activity must relate to a consumer debt.  *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011).

      1.    *Collection Activity.*  "Collection activity" is not defined in the FDCPA.  *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1193 n.15 (11th Cir. 2010).  Certainly, the definition is broad.  *See Heintz v. Jenkins,* 514 U.S. 291, 293–96 (1995) (*quoting* BLACK'S LAW DICTIONARY 263 (6th ed.1990) which states that "To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings.").  However, there are limitations.  For example, the initiation of a foreclosure suit by a secured creditor is not a debt collection activity barred by the FDCPA, but instead, is considered "enforcement of a security interest" under 15 U.S.C. § 1692f(6).  *See e.g., Tonea v. Bank of Am., N.A.*, 2014 WL 1092348 (N.D. Ga. 2014); *Warren v. Countrywide Home Loans, Inc.*, 342 Fed.Appx. 458 (11th Cir. 2009); *see also Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356 (M.D. Fla. 2007) (initiation of foreclosure suit by a secured creditor is not a debt collection practice barred by the FCCPA), *aff'd*, 288 Fed. Appx. 571 (11th Cir. 2008).

Using the definition provided by Black's Law Dictionary, the actions alleged here do not qualify as "collection activity."  Even assuming the veracity of the allegation about Watson going to the plaintiff's house to "collect consumer information," that is neither an effort to otain payment by solicitation nor by legal action.  Sec. Am. Compl. ¶ 34.  There is no allegation that this activity was done in connection with any legal action.  The three pieces of correspondence received by the plaintiff from Watson and Chase came in response to information requests by

him. There are no allegations that CPCC and JPMC did anything at all. <u>Simply, the factual</u> <u>allegations do not show any attempt to obtain payment or liquidation of a debt, either by personal</u> <u>solicitation or legal proceedings.</u>

Even if the actions could fall within that definition, any claim against the defendants based on the actions of Watson is barred by the principles of *res judicata*, because the claims against Watson have been dismissed *with prejudice*. *Notice of Dismissal* entered on January 9, 2014, DE 46; *Order* entered on January 14, 2014, DE 47. *See Astron Indus. Assoc., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir. 1968) ("[A] stipulation of dismissal with prejudice ... normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.").[12] *Res judicata* typically precludes not only the specific claims brought in a complaint, but any other claims that stem "out of the same nucleus of operative fact, or is based upon the same factual predicate." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir.1999) (quotation marks and citation omitted). However, where the stipulation is based on a settlement, the effect of the *res judicata* is modified based on the terms of the settlement. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) (holding that "where the parties stipulate to having a case dismissed, a somewhat modified form of *res judicata* applies to the written settlement agreement upon which such dismissal is predicated, if one exists"; if none exists, traditional *res judicata* principles apply). Here, there is no indication that the parties entered into a settlement agreement that would modify the effect of the *res judicata*, but even if there was one, the release or dismissal of the claims against Watson must preclude the plaintiff from asserting those same claims against any of the other defendants under any theory of liability.

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2.    *Aimed at Collecting a Consumer Debt.*  The collection activity must be aimed at collecting a consumer debt.  *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011).  A debt is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction ... [that is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).  In other words, debt under the FDCPA is limited to a "consumer debt." *Heintz*, 514 U.S. at 293.

There are no allegations in the complaint that set forth that the defendants' actions were aimed at collecting a consumer debt.  The plaintiff refers to the debt in some of the allegations. *See* Sec. Am. Compl. ¶¶ 3, 4, and 36 (referring to "alleged but nonexistent debt"), ¶¶ 25, 38, 53, 54, and 55 (referring to "alleged debt"), ¶¶ 26, 46, 48, and 49 (referring to "debt"); ¶ 28 (referring to "loan"), but does not set forth that the obligation at issue is a consumer debt.

For these reasons, the plaintiff has failed to meet the first element of an FDCPA claim that he has been the object of collection activity arising from a consumer debt.

B.    *Debt Collector*

The second element of a claim under the FDCPA is that the defendant qualifies as a "debt collector."  A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1364 (N.D. Ga. 2011).  However, the term has a broad carve out.  It excludes any person "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (i) is incidental to a bona fide fiduciary obligation . . . (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F).

9

Accordingly, a debt collector is not "the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Eke v. FirstBank Florida*, 779 F. Supp. 2d 1354, 1357 (S.D. Fla. 2011) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (*quoting* S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698)); *see also, Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1308 (S.D. Fla. 2009) (dismissing the FDCPA claim *with prejudice* where the complaint indicated that JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC were the creditor and mortgage servicer, respectively, and, thus, were specifically excluded under the FDCPA); *Locke v. Wells Fargo Home Mortg.*, 2010 WL 4941456, at *2 (S.D. Fla. 2010) (dismissing FDCPA claim *with prejudice* and holding that "[s]ince Wells Fargo was the mortgage company servicing the Plaintiff's mortgage, it cannot be liable as a 'debt collector' under section 1692"); *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (dismissing FDCPA claim *with prejudice* because the complaint establishes that neither defendants are "debt collectors."

    1.    *Chase is not a "debt collector."*  In this case, Chase is excluded from the definition of a "debt collector." Even if the plaintiff adequately alleged that the debt is a "consumer debt," and he has not, Chase is immune from liability for two reasons. First, Chase was the "originating person." The August 9, 2012 letter from Watson refers to Chase as the "original creditor." *See* Ex. F, DE 54. The mortgage, which was enclosed with the August 17, 2012 letter from Chase (but not attached to the complaint), is between the plaintiff (as the borrower) and Chase (as the lender). The recorded copy of the mortgage is attached as <u>Exhibit A</u> to this motion, and the court may consider the mortgage without converting this motion into a motion for summary judgment. *See, e.g., Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (district court may take judicial notice of public records and consider

them on a motion to dismiss). Second, the exhibits to the complaint establish that Chase is the mortgage servicing company for the debt. *See* ¶ 6 *infra*. For these reasons, Chase should be dismissed as a party-defendant.

    2.    *JPMC is not a "debt collector."* Without regard to Chase's status as a debt collector, JPMC is excluded from the term's definition. The plaintiff makes no allegations about any actions taken by JPMC and seeks to hold JPMC liable solely on the basis that it is a parent company. Sec. Am. Compl. ¶¶ 51-52. This is improper.

    In order to impose liability on a parent, the plaintiff would have to (a) pierce the corporate veil or show that JPMC is vicariously liable or liable as the respondeat superior or (b) show that JPMC was personally involved in the debt collection. *Compare White v. Goodman,* 200 F.3d 1016 (7th Cir. 2000) (J. Posner characterizing the joinder of shareholder of the defendant as "frivolous" and deserving of sanctions for what "amount[ed] to malicious prosecution" and holding that the shareholder of a debt collector cannot be held personally liable without piercing the corporate veil) and *Petit v. Retrieval Masters Creditors Bureau, Inc*, 211 F.3d 1057, 1059 (7th Cir. 2000) (holding that a shareholder's level of control is irrelevant to the determination of personal liability and noting that the FCCPA has vicarious or *respondeat superior* liability) *with, e.g., Som v. Daniels Law Offices, P.C.*, 573 F. Supp. 2d 349, 356 (D. Mass. 2008) (holding stakeholder liable for FDCPA violations based on personal involvement) and *Musso v. Seiders*, 194 F.R.D 43, 46-47 (D. Conn. 1999) (holding that a defendant could be liable without veil piercing if he was personally involved). Here, vicarious or *respondeat superior* liability is inapplicable; it applies only to hold an employer/principal liable for the acts of its employee/agent within the scope of the employee/agent's employment. *See, e.g., United Technologies Corp. v. Mazer,* 556 F. 3d 1260, 1271 (11th Cir. 2009) (applying Florida law); *see also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (limiting vicarious

or *respondeat superior* liability to an entity that is also a "debt collector" within the meaning of the statute).

Since the plaintiff has not set forth any factual allegations about JPMC other than that it is a parent of Chase and CPCC, JPMC cannot be held liable for any of the facts alleged in the complaint, even if they were actionable. This is because the plaintiff has set forth no facts (a) that establish a basis to pierce Chase's or CPCC's corporate veil,[13] (b) that could establish vicarious or *respondeat superior* liability, or (c) show any personal involvement by JPMC. Accordingly, JPMC should be dismissed as a party-defendant.

> 3. *CPCC is not a "debt collector."* Likewise, CPCC cannot fall within the definition of a debt collector because the plaintiff has not alleged any facts (a) that establish a basis for alter ego liability, (b) that could establish vicarious or *respondeat superior* liability, or (c) show any personal involvement by CPCC. Instead, the exhibits show that Chase, as the servicer, has responded to the requests by the plaintiff. Though the plaintiff has conclusorily alleged that CPCC "directly or 'indirectly' engaged in the collection of an alleged debt for a third party" (Sec. Am. Compl. ¶ 53), he has failed to allege any facts in support. Accordingly, CPCC should be dismissed as a party-defendant.

> C.    *Prohibited Acts.*

Count One of the complaint seeks relief for 13 alleged violations of the FDCPA. *See* Sec. Am. Compl. ¶¶ 61-73. Each violation is a formulaic recitation of the statute. As shown below, the plaintiff has failed to set forth well-pleaded allegations in support of these alleged violations, but the court need not even undertake this analysis since the plaintiff has failed to meet the other elements for a violation of the FDCPA.

---

[13] *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984) (requiring a showing of "improper conduct" by the stockholder in the use of the two corporations, to pierce the corporate veil in Florida; reviewing the history of alter ego cases).

1.      *15 U.S.C. § 1692b(2).*   The plaintiff makes the general allegation that the defendants violated section 1692(b)(2) by contacting a third party and stating that the plaintiff owes a debt.   Sec. Am. Compl. ¶ 62.   However, the plaintiff does not set forth any factual allegations in support of that claim.   Instead, he states only that Wolf "intentionally and/or negligently and/or willfully communicated to third parties of alleged debt."   The plaintiff does not provide any information about the nature of the communication, the object of the communication, or the timing of the communication.   This conclusory allegation is insufficient under *Twombly* and *Iqbal* to show a violation of section 1692(b)(2).   In addition, the claim is barred by *res judicata* because it is wholly based on the actions of Wolf.   *See* Section II(A)(1), *infra*.   For these reasons, the plaintiff's claim based on section 1692(b)(2) fails.

2.      *15 U.S.C. § 1692c(B).*   The plaintiff also generally alleges that the defendants violated section 1692(c)(B) "by communicating with anyone except consumer, consumer's attorney, or credit bureau concerning the alleged debt."   Sec. Am. Compl. ¶ 63.   This too is devoid of any factual support and insufficient under *Twombly* and *Iqbal* to show a violation of section 1692(c)(B).   The plaintiff does not allege any factual allegations that show communications with anyone other than the plaintiff.   Accordingly, the plaintiff's claim based on section 1692(c)(B) fails.

3.      *15 U.S.C. § 1692d.*   The plaintiff generally alleges that the defendants violated section 1692(d) by "engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person."   Sec. Am. Compl. ¶ 64.   The statute specifies without limit the conduct that constitutes a violation: (1) the use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person; (2) the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader; (3) the publication of a list of consumers who allegedly refuse to pay debts, except to a consumer

reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title; (4) the advertisement for sale of any debt to coerce payment of the debt; (5) causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; and (6) except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity. 15 U.S.C.A. § 1692d.  As with the other sections, the well-pleaded factual allegations in the complaint do not allege with any plausibility any violation of section 1692(d), and therefore, the plaintiff's claim based on this section fails.

4. *15 U.S.C. § 1692e(2).*  The plaintiff generally alleges that the defendants violated section 1692(e)(2) by falsely representing the character, amount, or legal status of any debt.  Sec. Am. Compl. ¶ 65.   However, the well-pleaded allegations that support this conclusion are rebutted by the exhibits attached to the complaint, as provided in paragraphs 3-6 above.  There are no additional allegations that set forth any false representation of the character, amount, or legal status of the debt by any measure, even the "least sophisticated debtor." *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir.1985) (applying "least sophisticated debtor standard by evaluating "the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls."); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) ('The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.").  Accordingly, the plaintiff's claim based on section 1692(e)(2) fails.

5. *15 U.S.C. § 1692e(5).*  The plaintiff generally alleges that the defendants violated section 1692(e)(5) by threatening to take action that cannot legally be taken or that is not intended to be taken.  Sec. Am. Compl. ¶ 66.  However, the plaintiff's claim based on this

14

section fails, too, because the second amended complaint does not set forth any specific allegations, well-pleaded or otherwise, in support.

6.    *15 U.S.C. § 1692e(8).*  The plaintiff generally alleges that the defendants violated section 1692e(8) by communicating or threating to communicate credit information that is false or that the defendants should have known was false. Sec. Am. Compl. ¶ 67. Here, too, the plaintiff's claim fails because the second amended complaint sets forth no well-pleaded allegations that the defendants communicated any personal credit information.

7.    *15 U.S.C. § 1692e(10).*  The plaintiff generally alleges that the defendants violated section 1692e(10) by making false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer. Sec. Am. Compl. ¶ 68. The well-pleaded allegations do not plausibly state a claim under this section. Mr. Wolf's alleged attempts to obtain consumer information were not a result of false representations or deceptive means; the only inference that may drawn is that he was acting for Chase, as the servicer. Moreover, the claim is barred by *res judicata* because it is wholly based on the actions of Wolf. *See* Section II(A)(1), *infra*. Accordingly, this claim fails.

8.    *15 U.S.C. § 1692e(11).*  The plaintiff alleges that the defendants violated section 1692e(11) by failing "to disclose in the initial written communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." Sec. Am. Compl. ¶ 69. This claim also fails. All of the communications, as set forth in the exhibits, show that Watson and Chase were responding to written requests from the debtor and not attempting to collect a debt. Additionally, any claim based on Watson's actions is barred by *res judicata*. *See* Section II(A)(1), *infra*.

15

9.      *15 U.S.C. § 1692e(14).*  The plaintiff alleges that the defendants violated section 1692e(14) "by using a name other than the true name of the debt collector's business." Sec. Am. Compl. ¶ 70.  Even if the defendants were debt collectors (and as set forth *infra*, they aren't), this claim also fails because there are no allegations that any defendant used any name other than its own name.

10.     *15 U.S.C. § 1692f(1).*  The plaintiff generally alleges that the defendants violated section 1692f(1) "by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Sec. Am. Compl. ¶ 71.  Section 1692f provides that such an action by a debt collector constitutes an unfair or unconscionable means to collect the debt.  The second amended complaint, however, does not set forth any specific factual allegation that provides that any defendant attempted to collect any unauthorized amount from the borrower; the letter-exhibits are communications in response to requests from the plaintiff. The claim for a violation of section 1692f(1) therefore fails.

11.     *15 U.S.C. § 1692f(6).*  The plaintiff generally alleges that the defendants violated section 1692f(6) by taking or threatening to unlawfully repossess or disable the consumer's property. Sec. Am. Compl. ¶ 72.  However, the complaint is devoid of any factual allegations that support this conclusion; all of the letter-exhibits appended to the complaint are responses to requests by the plaintiff. Accordingly, this claim fails, as well.

12.     *15 U.S.C. § 1692g.*  The plaintiff generally alleges that the defendants violated section 1692(g) by failing to send the debtor the required validation notice. *See* Sec. Am. Compl. ¶ 73. This section applies only to a communication in connection with the collection of a debt.  None of the acts set forth in the complaint describe the collection of any debt, and this claim therefore fails.

16

13.   *15 U.S.C. § 1692g(b)*.  Finally, the plaintiff generally alleges that the defendants violated section 1692(g)(b) by failing to cease collection efforts until the debt was validated. Sec. Am. Compl. ¶ 74.  However, this also fails because there are no factual allegation that there were collection efforts.

D.   Summary

For the reasons described above, the plaintiff fails to set forth any claim for a violation of the FDCPA.  The controlling facts in the second amended complaint do not meet any of the elements of an FDCPA claim against the defendants.  The plaintiff cannot show that he was the object of a collection activity arising from a consumer debt, that the defendants qualify as "debt collectors," or that the defendants have engaged in any prohibited act.  Accordingly, Count One is ripe for dismissal *with prejudice*.

II.   No Violation of FCCPA

In Count Two, the plaintiff alleges that the defendants violated four sections of the FCCPA: sections 559.72(5), (7), (9), and (15), which provide that:

> In collecting consumer debts, no person shall: (5) Disclose to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false. (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family. (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist. (15) Refuse to provide adequate identification of herself or himself or her or his employer or other entity whom she or he represents if requested to do so by a debtor from whom she or he is collecting or attempting to collect a consumer debt.

Fla. Stat. § 559.72.  Section 559.77(1) provides for liability against a person for violating any of the provisions of section 559.72.  While the FCCPA differs from the FDCPA in certain ways, for

example, that the alleged violator does not have to be a debt collector, section 559.72 also requires prohibited actions be "in collecting consumer debts." In this case, the plaintiff has failed to state a cause of action under the FCCPA against any of the defendants for the reasons that follow.

First, the well-pleaded facts set forth in paragraphs 3-6 of this motion establish that the defendants' actions were not actions to collect a debt; Mr. Wolf allegedly attempted to collect consumer information (Sec. Am. Compl. ¶ 34) and Watson and Chase merely responded to the plaintiff's requests for information (*See* Ex. B, E, and G, DE 52).

Second, the plaintiff has failed to allege that the debt is a "consumer debt" as defined in section 559.55(1) for the reasons provided in Section I(a)(2), *infra.*

Third, for the reasons discussed in Section II(A)(1) *infra* the plaintiff is barred by the principles of *res judicata* from bringing against the defendants any claims he may have had against Mr. Wolf and Watson.

Fourth, the plaintiff has alleged in his second amended complaint only conclusory allegations, unsupported by the well-pleaded facts, that fail to state a cause of action under the FCCPA. *See, e.g., Reese v. JPMorgan Chase & Co.,* 686 F. Supp. 2d 1291, 1310 (S.D. Fla. 2009) (dismissing FCCPA claims with prejudice where the amended complaint contained only conclusory allegations, not supported by the facts necessary to establish its claim). The second amended complaint does not state a cause of action for a violation of section 559.72(5) because it fails to allege that the defendants disclosed any information to anyone other than the plaintiff.

The alleged violations of section 559.72(7) fail as well, because the well-pleaded allegations do not show that the defendants willfully communicated with the plaintiff or any member of his family with any frequency as can reasonably be expected to harass them, or willfully engaged in other conduct which can reasonably be expected to abuse or harass them.

18

The cases that discuss section 559.72(7) involve multiple collection calls and collection letters. *See, e.g.*, *Story v. J.M. Fields, Inc.*, 343 So.2d 675 (Fla. 1st DCA 1977). The section requires willfulness. *Id.* As explained in *Story*:

> The standard that emerges from Section 559.72(7) therefore concerns the purpose as well as the frequency of the creditor's calls. Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation.

*Id.* at 677. The well-pleaded factual allegations fail to show any plausible claim for a violation of this section.

The alleged violation of section 559.72(9) also fail. As explained in *Reese v. JPMorgan Chase & Co.*:

> To plead a FCCPA claim under section 559.72(9), a party must allege 'knowledge or intent by the debt collectors in order to state a cause of action.' *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000). Simply pleading that Defendant had knowledge is not enough. Under Florida law, 'the use of the word 'knows' requires actual knowledge of the impropriety or overreach of a claim.' *In re Cooper*, 253 B.R. 286, 290 (N.D. Fla. 2000). A pleading must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action' will not survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

686 F. Supp. 2d 1291, 1309-10 (S.D. Fla. 2009). As in *Reese*, this claim for a violation of section 559.72(9) fails because the plaintiff has not pleaded any facts to demonstrate that the defendants had knowledge that they were pursuing a debt to which they were not legally entitled; in fact the exhibit-letters show that Chase had a right to act as the servicer.

Finally, the alleged violation of section 559.72(15) fails because the plaintiff has not alleged any facts to demonstrate that an employee of any named defendant refused to identify himself or herself upon request. The alleged facts reflect no efforts to collect anything other than

19

consumer information, and it is clear that Mr. Wolf identified himself. *See* Sec. Am. Compl. ¶ 34.

For these reasons, the plaintiff fails to set forth any claim for a violation of the FCCPA, and Count Two is ripe for dismissal *with prejudice*.

**WHEREFORE**, the Defendants request the entry of an order dismissing the second amended complaint *with prejudice*.

Dated: May 20, 2014.

> **GRAYROBINSON, P.A.**
> 401 E. Las Olas Blvd., Suite 1850
> Fort Lauderdale, FL 33301
> Telephone:   (954) 761-8111
> Facsimile:    (954) 761-8112
> *Counsel for Defendants*
>
> s/Thomas H. Loffredo
> Thomas H. Loffredo
> Florida Bar No.: 870323
> thomas.loffredo@gray-robinson.com
> Michael D. Lessne
> Fla. Bar No. 0073881
> michael.lessne@gray-robinson.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Notice was served electronically upon all parties that have registered for the CM/ECF service list this 20th day of May, 2013.

> s/Thomas H. Loffredo
> Thomas H. Loffredo
> Florida Bar No.: 870323

\823538\5200 - # 2964476 v3