FILED by _____ D.C.

JUN 2 5 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.    9:13-cv-80720-KAM

**John Pinson,** *pro se*

      Plaintiff

vs

**JPMORGAN CHASE BANK, N.A., et. al.**

        Defendants/

## PLAINTIFF *PRO SE'S* RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED VERIFIED COMPLAINT WITH PREJUDICE AND MEMORANDUM OF LAW IN SUPPORT

**TO THE HONORABLE JUDGE OF THIS COURT:**

**COMES NOW** the Plaintiff John Pinson, *pro se*, who hereby submits his response in opposition to the Motion To Dismiss Second Amended Verified Complaint With Prejudice And Memorandum Of Law In Support (hereinafter "MTD2") pursuant to FRCP Rule 12(b)(6) filed by Defendants JPMorgan Chase Bank, N.A. (hereinafter "Chase"); CPCC Delaware Business Trust a/k/a CPCC Delaware Statutory Trust (hereinafter "CPCC"); and JPMorgan Chase & Co (hereinafter "JPMC"), and states as follows:

## STATEMENT OF FACTS

1.  On Aug. 27, 2013, Plaintiff filed amended verified complaint ("AVC") & appx [DE 06,6-1].

2.  On Sep. 19, 2013, the clerks office, for error, re-scanned the AVC as Docket Entry 9.

3.  On Oct. 13, 2013 Marshall Watson  ("MW") filed a Motion to Dismiss (MTD) [DE 17].

4.  On Oct. 24, 2013, Chase & CPCC filed a joint Motion to Dismiss (MTD) [DE 24].

5.  On Nov. 25, 2013, Plaintiff  filed a response [DE 26] in opposition to the MW MTD.

6.  On Dec. 12, 2013 Plaintiff files a response [DE 33] in opposition to the Chase CPCC MTD.

7.  On Jan. 6, 2014, Chase & CPCC filed a reply [DE 43] brief to Plaintiff's response.

8.  On Jan.9, 2014, Plaintiff filed a notice of dismissal [DE 46] on party MW only.

9. On Jan. 14, 2014, the Court issued an Order [DE 47] dismissing MW with prejudice.

10. On Mar. 24, 2014 the Court entered an Order [DE 49] Denying without prejudice the Chase CPCC MTD, and providing "Plaintiff may file a Second Amended Complaint" [DE 49].

11. On Apr. 22, 2014 Plaintiff filed a second amended verified complaint [DE 52] ("SAC").

12. On May 20, 2014, Chase, CPCC & JPMC filed a motion to dismiss [DE 58] SAC.

13. "This is an action brought for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.; and, for damages for violations of the Florida Consumer Collection Practices Act (FCCPA) FLA. STAT. §559 (Part VI); and for declaratory and injunctive relief." [DE 52 ¶1]

14. "Upon belief and information, Plaintiff *pro se* contends that many of these practices are widespread for some or all of the Defendants." [DE 52 ¶2] Florida Bar records show that the managing attorney of MW, attorney Marshall C. Watson had his law license Suspended - with Conditions on May 30, 2013, with a file reference number of 201151042[1] and found in Florida Supreme Court CASE NO.: SC12-2731[2]. It is Plaintiffs understanding that Watson's suspension was due to actions similar to those in his complaint.

15. Defendant Chase was the subject to an investigation by 49 States Attorney's General (Oklahoma opted out) and several Federal Agencies into, among other issues, its servicing practices which resulted "the largest consumer financial protection settlement in US history"[3], at that time. Specifically it stated "The agreement settles state and federal investigations finding that … mortgage servicers routinely signed foreclosure related documents … **without really knowing whether the facts they contained were correct**. Both of **these practices violate the law**."[4] Moreover it states, "This settlement does not seek to hold them responsible for all their wrongs over the years and the agreement and its release **preserve legal options for others to pursue**"[5], such as this Plaintiff. (emphasis added)

16. Additionally, on November 19, 2013, "[t]he Justice Department, along with federal and state partners, today announced a $13 billion settlement with JPMorgan - the largest settlement

---

[1] See http://www.floridabar.org/names.nsf/0/C2AF815DCA28947785256A83007987B8?OpenDocument
[2]
http://www.floridabar.org/DIVADM/ME/MPDisAct.nsf/DisActFS?OpenFrameSet&Frame=DisActToC&Src=%2F
DIVADM%2FME%2FMPDisAct.nsf%2FdaToc!OpenForm%26AutoFramed%26MFL%3DMarshall%2520Craig%
2520Watson%26ICN%3D201151042%26DAD%3DSuspended%2520-%2520with%2520Conditions
[3] See http://www.nationalmortgagesettlement.com/about
[4] See http://www.nationalmortgagesettlement.com/about
[5] See http://www.nationalmortgagesettlement.com/about

with a single entity in American history - to resolve federal and state civil claims"[6] wherein **"JPMorgan acknowledged it made serious misrepresentations to the public"[7]** and **"[t]he settlement does not absolve JPMorgan or its employees from facing any possible criminal charges."[8]** (emphasis added)

17. Chase indicated JPMC is its 100% owner in its FRCP Rule 7.1.

18. CPCC indicated that JPMC is its ultimate 100% owner in its FRCP Rule 7.1.

19. CPCC's chain ownership assertion is contrary to JPMC's S.E.C. 10-K representations.[9]

20. Moreover, in the Motion to Dismiss it refers to itself as CPCC Delaware Business Trust, yet that entity is not listed on Florida Division of Corporations website[10] as registered to do business in Florida, but CPCC Delaware Statutory Trust is listed. This opens an intriguing question, are these two the same entities and is CPCC Delaware Business Trust properly registered and duly authorized to transact business in Florida, and is this the reason CPCC has never responded to Plaintiff's written debt validation requests?

21. The facts set forth in the Courts March 26 Order relate only to the First Amended Complaint that subsequently was replaced by the SAC [DE 59].

22. The alleged facts are set forth by Plaintiff in the SAC ¶¶1-57 [DE 59].

23. Plaintiff *pro se* has made numerous efforts to ascertain the undisclosed identity of the alleged creditor and demanded proper validation under the FDCPA of any alleged debt, and defendants have not provided the same notwithstanding Plaintiffs written dispute.[11]

24. Chase, CPCC, and JPMC by and through their attorney(s) Marshall Watson/ Choice attempted to collect and take a legal action they were not legally entitled to take.

25. Plaintiff *pro se's* FDCPA and FCCPA claim is based on the **wrongful actions of defendant**, not whether or not a valid debt existed with defendants, which plaintiff denies.

26. The Plaintiff pro se denies having any contractual agreement for credit, loans or services relationship with the Defendants.

### STANDARD OF REVIEW

---

[6] See http://www.justice.gov/opa/pr/2013/November/13-ag-1237.html
[7] See http://www.justice.gov/opa/pr/2013/November/13-ag-1237.html
[8] See http://www.justice.gov/opa/pr/2013/November/13-ag-1237.html
[9] See https://www.sec.gov/edgar/searchedgar/companysearch.html
[10] See http://sunbiz.org/
[11] See DE 52 & 54 generally.

27. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," Id. At 555, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* At 570.

28. The complaint must only include "sufficient factual allegations to provide the grounds on which the claim rests". *Friends of Lake View School District v. Beebe*, 578 F.3d 753, 762 (8th Cir. 2009). While "mere labels and conclusions" will not satisfy a plaintiff's burden, there is no need for detailed factual allegation or specific facts that describe the evidence to be presented. Id. A plaintiff satisfies their burden if they allege facts sufficient to allow a court to infer "more than the mere possibility of misconduct". *Ashcroft v. Iqbal*, 129 W.Ct, 1937, 1950 (2009).

29. Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

## ARGUMENTS AND AUTHORITIES

30. When considering a defendant's motion to dismiss, a court must construe the factual allegations in the complaint in the light most favorable to the plaintiff. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). If the complaint provides fair notice of the claim and the factual allegations are sufficient to show that the right to relief is plausible, a court should deny the defendant's motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555-56; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

31. To bring these matters in controversy before the Court, the Plaintiff *pro se* did file his second amended verified complaint [DE 52] outlining statements of fact that point to documents that are appended [DE 54] to his verified complaint and which documents the defendant fails to allege as being untrue.

32. In their MTD2, the Defendants complain about substantive deficiencies in Plaintiff's SAC, but fails to refute or deny any of the appended documents as fact evidence.

<u>Alleged Substantive Deficiencies</u>

**A. Defendants Allege incorporation of irrelevant allegations of count I. into count II.**

33. First, Defendants allege "plaintiff has incorporated the irrelevant allegations of first count into the second count" *See* MTD2 ¶8. Defendants allege "irrelevant allegations" but Plaintiff *pro se* argues this is baseless as Defendants identify SAC ¶58, but fail to state how it might be irrelevant since it incorporated relevant factual information into the count. Moreover, since the FCCPA mirrors the FDCPA, and since the Plaintiff's FCCPA claims mirror plaintiff's FDCPA claims, it is relevant that the FCCPA allegations and factual allegations were restated under FDCPA in full.

34. The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "... debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 (11th Cir. 2010).

**B. Defendants Allege failure to set forth exactly what CPCC or JPMC did in violation.**

35. Second, Defendants complain that "Plaintiff has not set forth any allegations about what CPCC or ... JPMC did in violation of the law" See MTD2 ¶9. Defendants fail to recognize Plaintiffs facts at SAC ¶¶23-57. Specifically Plaintiff has identified the relation between Defendants at SAC ¶¶51-55. Plaintiff has clearly identified Defendants as "debt collectors" *see* SAC ¶¶12-22. "At all times material to the allegations of this Complaint, Defendants were acting as debt collectors with respect to collection of Plaintiff's alleged debt but nonexistent debt with Defendants" [SAC ¶22]. These statements are not mere legal conclusions; they are specific factual allegations, but Plaintiff seeks discovery to plead with greater specificity on the corporate Defendants actions.

36. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir.2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the `grounds' of his `entitle[ment] to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citations omitted)). "Furthermore, the plaintiff's factual allegations, when assumed to be true, `must be enough to raise a right to relief above the speculative level.'" *Id*. (same).

37. Here, consumer Plaintiff was the object of collection activities including the receipt of communications  "in connection with the collection of any debt". Plaintiff has not argued that the communications received were limited to those filed as exhibits to his complaint or to the facts related to those actions of Wolf and MW. "The communications in question here are all related to the collection of a consumer debt" [SAC ¶27]. "Defendants are "debt collectors" as defined in the FDCPA" [SAC ¶21]. "CHASE communicated an alleged involvement of CPCC such that it appears CHASE was prompted to act by CPCC" [SAC ¶31]. Plaintiff has in fact received other communications from "JPMorganChase & Co. JPMorgan Chase Bank, N.A." that state explicitly "WE ARE DEBT COLLECTORS", and that some or all defendants would already possess. It is reasonable to conclude that Defendants were acting within the scope of their corporate structure and relationships, when "directly or 'indirectly' engaged in the collection of an alleged debt for a third party" [SAC ¶55] the "public security managed by CPCC Delaware Business Trust" [SAC ¶28] which "CHASE failed to identify" [SAC ¶29] specifically, despite Plaintiffs repeated efforts including, but not limited to, his Qualified Written Requests and Demands for Debt Validation.

38. It is axiomatic that a corporation like Chase, CPCC, and JPMC cannot act other than through their officers, employees, and agents. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir.1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents....").

39. However, at the pleading stage, the Plaintiff could not possibly have had access to the inside CPCC and JPMC information necessary to prove conclusively—or even plead with greater specificity—the factual basis for holding CPCC and JPMC liable for conduct in violation of FDCPA and FCCPA. That is why Courts allow for discovery. At the pleading stage, the Court assess only whether Plaintiff's allegations are "enough to raise a right to relief above the speculative level." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir.2008) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964-65). Giving Plaintiff, which is at a

clear informational disadvantage, some benefit of the doubt to go along with the specific facts he has pled, its allegation that Wolf and MW were acting on behalf of CPCC and JPMC through Chase, reaches at least above the speculative level. *See United Technologies Corp. v. Mazer*, 556 F. 3d 1260 (11th Cir. 2009).

40. After conducting scheduling conference and discovery conference, the *pro se* Plaintiff did take steps to signal to the district court his need for discovery by, on Dec 23, 2013, filing his unilateral scheduling report, proposed discovery plan and protective order [DE 39] and then filing, on Dec 27, 2013, his motion to approve scheduling report, proposed discovery plan and protective order [DE 40], but the motion was denied without prejudice [DE 41] by the court on Jan 3, 2014.

**C. Defendant are unclear what specific acts by the defendants plaintiff challenges.**

41. Plaintiff has pled specific facts in his second amended verified complaint [DE 52] and in the appended documents [DE 54]. He has cited the statutory violations in each count. As stated above, these statements are not mere legal conclusions; they are specific factual allegations, but Plaintiff seeks discovery to plead with greater specificity on the corporate Defendants actions. Nevertheless, Plaintiff will discuss specifics below of Defendants violations of FDCPA and FCCPA, after he refutes defendants frivolous assertions: of no collection activity; that *res judicata* applies; Plaintiff not object of collection activity of consumer debt; Chase, CPCC, and JPMC are not "debt collectors".

42. The plaintiff has met the elements to state a cause of action against any of the defendants. Accordingly, the Defendants motion to dismiss the SAC should be denied.

43. Plaintiff's verified complaint[DE 01] was amended as a matter of course before any Defendant was served. Thereafter Plaintiff faced a Motion to Dismiss from Defendants on his First Amended Complaint [DE 09]. The Court denied Defendants motion to dismiss first amended complaint, and provided for Plaintiff to file a second amended complaint. Plaintiff filed a second amended verified complaint [DE 52] and now faces Defendants motion to dismiss SAC. Plaintiff notes that neither motions to dismiss filed by Defendants raise the same issues. Plaintiff's amendments served to better plead his case; not to cause delay or prejudice any party. Therefore, if the Court determines Plaintiff *pro se* has failed to state a claim, in the interest of justice, Plaintiff pro se asks the Court to grant leave and sufficient time to amend his complaint.

**D. Interpretation of exhibits are subject to the Least Sophisticated Consumer Standard and disagreements in interpretation are fact matters for fact finder.**

44. As referenced in MTD2 page 6 ¶3 Defendants assert "the well-pleaded factual allegations are set forth in paragraph 4 above, as contradicted by the language in the exhibits, set forth in paragraphs 3-6 above". Plaintiff disputes Defendants conclusions drawn by re-writing Plaintiff's complaint, and unsupported inferences drawn from the exhibits that require facts not in evidence to validate. "At all times material to the allegations of this Complaint, Defendants were acting as debt collectors with respect to collection of Plaintiff's alleged debt but nonexistent debt with Defendants" [DE 52 ¶22]. "The communications in question here are all related to the collection of a consumer debt" [DE 52 ¶27]. "Alleged debt is not in question here. But the fact as to how it was or was not validated and wrongful actions of the Defendants in an attempts to collect the alleged debt, violated rights of the Plaintiff and the laws..." [DE 52 ¶25]

45. Plaintiff also disputes conclusions and inferences drawn from the exhibits. Specifically, Defendant alleges JPMorgan Chase Bank, N.A. as servicer; whereas, The June 1, 2012 letter states "Chase" not JPMorgan Chase Bank, N.A., and, Chase Home Finance, LLC was the original servicer and Plaintiff has received no notice of transfer of servicing rights, thus JPMorgan Chase Bank, N.A. could not be the servicer. Defendants have not produced a loan servicing agreement between CPCC and Chase.

46. Further, Defendant alleges JPMorgan Chase Bank, N.A. as "original mortgagee", whereas, JPMorgan Chase Bank, N.A. is the originator, and, it is undisputed the "loan" was sold to a public security, but a question remains as to when this sale occurred, thus JPMorgan Chase Bank, N.A. would have no rights as a creditor, original or otherwise, the "loan" having been sold into a public security and the unidentified security would be the "loan" creditor. Defendants have provided no information related to loan sale terms or date or identity of public security.

47. Additionally, to the extent that Defendants allege the August 17, 2012 letter sets forth the authorization for Chase to act for CPCC as the servicer of the "debt", the letter states "loan" not debt or mortgage, and, Chase Home Finance, LLC was the original servicer and Plaintiff has received no notice of transfer of servicing rights, thus JPMorgan Chase Bank, N.A. could

not be the servicer. Defendants have not produced a loan servicing agreement between CPCC and Chase authorizing Chase to act for CPCC.

48. Finally, Plaintiff has received multiple communications from Defendants identifying multiple "investors" in the loan, not just one, but the unidentified public security would be the loan creditor not the investors individually. If the loan was sold to the public security, what was sold the note or the mortgage or the note and the mortgage? How could the loan be "a valid and enforceable financial obligation with Chase" where it is undisputed the loan was sold to a public security? If loan was sold to a public security, then only the public security could enforce the loan.

49. The fact remains no public security has been identified, no loan servicing agreement has been shown, no transfer of servicing rights has been shown, no loan transfer date has been shown, no mortgage transfer has been shown

50. Defendant's conclusory assertions regarding interpretation of exhibits refer to facts-not-in-evidence. Where the parties reasonably disagree on the proper inferences that can be drawn from exhibits, resolution is for the trier of fact—not for the court. Thus, material facts are in dispute and these issues are best submitted to the finder of fact, the jury.

51. In determining the well-pleaded factual allegations, where there is a contradiction between the general and conclusory allegations of the pleading and an exhibit, the exhibit governs. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) *(quoting Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007))*.

52. "In *Jeter* we explained that where the parties reasonably disagree on the proper inferences that can be drawn from the debt collector's letter, resolution is for the trier of fact—not for the court on summary judgment. *See Jeter*, 760 F.2d at 1176. For these reasons, this issue is one best submitted to the finder of fact." *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 (11th Cir. 2010).

**THE PRO SE'S PLEADINGS**

53. Defendants allege Plaintiff *pro se* failed to state a claim and attempt to hold the Plaintiff *pro se's* complaint to the pleading standard of Bar licensed professional attorneys. Plaintiff *pro se* argues this is not the case.

54. "Following the simple guide of rule 8(f) that all pleadings shall be so construed as to do substantial justice"... "The federal rules reject the approach that pleading is a game of skill in

which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." The court also cited Rule 8(f) FRCP, which holds that all pleadings shall be construed to do substantial justice. *Conley v. Gibson*, 355 U.S. 41 at 48 (1957).

55. "Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519 (1972).

56. "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants. They should not raise barriers which prevent the achievement of that end. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the end of a just judgment." *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 (1938).

57. In his second amended verified complaint [DE 52], the Plaintiff *pro se* alleges claims for violations of FDCPA and FCCPA by defendants, and has listed factual allegations and appended fact evidence to the complaint which Defendants fail to refute the validity thereof.

58. An FDCPA claim has nothing to do with whether any underlying alleged debt is valid. An FDCPA claim concerns the methods of collecting the alleged debt. It does not arise out of any alleged transaction creating the alleged debt. *See Azar v. Hayter*, 874 F. Supp. 1314 (N.D. Fla. 1995).

59. The FDCPA and FCCPA violations alleged in the complaint are based on the Defendants' actions and or omissions and/or methods of attempting to collect on an alleged debt which is nonexistent with Defendants, and any alleged debt is not at issue here.

**The FDCPA 15 U.S.C. §1692 et. seq.**

60. Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f. The FDCPA applies to "debt collectors," as

defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Title 15 U.S.C. 1692e generally prohibits the use of any false, deceptive, or misleading representations or means to collect a debt. 15 U.S.C. § 1692e. *See Acosta v. Campbell*, Court of Appeals, 11th Circuit 2009

**THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.**

61. The FDCPA, 15 U.S.C. § 1692, et seq., is a strict liability statute, *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997): *see also Irwin v. Mascoti*, 112 F. Supp. 2d 937 (N.D. Cal. 2000): *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc*., 969 F. Supp. 609 (D. Nev. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax, A.R.S.*, 74 F. 3d 30, 33-34 (2' Cir. 1996).

**THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER DEBTORS.**

62. The FDCPA is a remedial statute. *Hamilton v. United Healthcare of Louisiana, Inc*., 310 F 3d 385, 392 (5th Cir. 2002). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc*., 460 F. 3d 1162, 1176 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F. 3d 1107, 1117 (20th Cir. 2002).

**THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.**

63. The FDCPA is to be interpreted "under an unsophisticated or least sophisticated consumer standard." *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Sir. 2009) (*quoting Gaswami v. Am. Collections Enter., Inc*., 377 F.3d 488, 495 (5th Cir. 2004); *Taylor v Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). The court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami v. Am. Collections Inter., Inc.*, 377 F.3d at 495. The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." *Barany-Snyder v. Weiner*, 539 F.3d 327,332 (6th Cir. 2008) (citing IS U.S.C. § 1692(a)). Courts use the "least sophisticated consumer"

standard, an objective test, when assessing whether particular conduct violates the FDCPA. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). The least sophisticated consumer test is objective and is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F. 3d 433, 438 (6th Cir. 2008) (quotations and citation omitted). Claims under the Fair Debt Collections Practices Act adhere to the unsophisticated consumer standard. See *Grammon v. GC Services Ltd. Partnership*, C.A. 7(111)1994, 27 F. 3d 1254, on remand 162 F. R. D. 313.

**THE FDCPA PROTECTS CONSUMERS FROM DEBT COLLECTOR MISCONDUCT**

64. The "Act is primarily a consumer protection statute, and we have consistently interpreted the statute with that congressional object in mind." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2nd Cir. 2008).   The FDCPA is "an extraordinarily broad statute" and must be enforced "as Congress has written it." *Frey v. Gangwish*, 970 F.2d 1516 (6th Cir. 1992).  The FDCPA should be construed to accomplish the regulatory goals intended by Congress. *Ayala v. Dial Adjustment Bureau, Inc.*, 1986 U.S. Dist. LEXIS 30983 (D. Conn. Dec. 4, 1986). "The Sixth Circuit has described the statute as 'extraordinarily broad' and its terms must be literally enforced." *Deere v. Jvitch, Block & Rathbone L.L.P.*, 413 F. Supp. 2d 886 (S.D. Ohio 2006).

65. "The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).  "[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists." *Keele v. Wexler*, 149 F/3d 589. 594 (7th Cir. 1998).

66. A non-debtor who was subjected to abusive collection tactics may not maintain an action for violations of § 1692c(c), since that section is limited to violations directed at a "consumer" as defined in the Act, but may maintain an action for violation of §§ 1692d and 1692e, which have no such limitation and therefore apply to anyone who is the victim of prescribed misconduct. *Montgomery v. Huntington Bank & Silver Shadow Recovery, Inc.*, 346 F.3d 693 (6th Cir. 2003).

**FCCPA**

67. The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in exactly the same manner. FLA STAT. § 559.55(1); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1187 n.2 (11th Cir. 2010).

68. The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "… debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

### Count I - Plaintiff's FDCPA Claim

69. In Count I of the complaint, Plaintiff *pro se* alleges a claim for violations of the FDCPA. The Plaintiff *pro se* must prove the following essential elements to support a claim for 15 U.S.C. §1692 against each defendant: (1) the plaintiff has been the object of debt-collection activity arising from an alleged consumer debt; (2) the defendant is a debt collector under 15 U.S.C. § 1692a(6); and (3) the defendant has violated, through acts or omissions, §1692 of the FDCPA. The complaint provides defendant with fair notice of the claim. *See Brooks*, 578 F.3d at 581. Plaintiff *pro se's* verified complaint provides more than labels and conclusions and is more than a formulaic recitation of the elements of an FDCPA claim, and further the verified complaint offers appended documents as fact further evidencing his claim.

70. In support of his claim for FDCPA violations, Plaintiff *pro se* made the following factual allegations for each element: (1) That Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7) [SAC ¶¶11, 59] and "[t]he communications in question here are all related to the collection of a consumer debt" [SAC ¶27], and that Plaintiff was the object of collection activities including the receipt of communications  "in connection with the collection of any debt", and that Plaintiff was threatened in written communications by Defendants, through MW, with a collection action[12]

---

[12] See DE 54 pages 12-18, 20-21.

wherein defendants stated "THIS IS AN ATTEMPT TO COLLECT A DEBT"[13], and further,
"IMPORTANT NOTE: FEDERAL LAW REQUIRES US TO NOTIFY YOU THAT THIS
COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT"[14]; (2) Defendants Chase,
CPCC, and JPMC are "debt collector[s]" as that term is defined by 15 U.S.C. § 1692a(6) and
Fla. Stat. § 559.55(6) [DE 52 ¶¶12-22, 60], and Defendant Chase also states in a written
communication "We are a debt collector"[15], Defendant Chase has indicated in writing that it
is acting on behalf of CPCC, and CPCC was acting directly or indirectly through Chase
[SAC ¶53], making CPCC a respondent superior and vicariously liable for actions of Chase,
and JPMC acted directly or indirectly [SAC ¶¶54, 55] and is vicariously liable [SAC ¶¶15,
51] and a respondent superior [SAC ¶¶16, 52]; (3) Defendants have violated, through acts or
omissions, §1692 the FDCPA. "Defendants' violations include, but are not limited to, the
following:" [DE 52 ¶61]

### COLLECTION ACTIVITY ARISING FROM A CONSUMER DEBT

71. In *Stricklin v. Jefferson Capital Systems, LLC*, Dist. Court, SD Illinois 2011,

> Neither the Eleventh Circuit nor any other circuit has established a bright-line rule for
> determining whether a communication from a debt collector was made in connection with
> the collection of any debt. Most district courts analyzing this issue rely on several
> decisions from the Seventh Circuit for guidance with respect to the relevant factors.
> *Parker v. Midland Credit Management, Inc.*, 874 F. Supp. 2d 1353 - MD Florida 2012.

> … the absence of a demand for payment is not dispositive of whether the debt collector
> made the communication in connection to debt collection. *See Horkey v. J.V.D.B. &
> Assoc., Inc.*, 333 F.3d 769 (7th Cir. 2003). … In concluding the FDCPA applied to the
> phone call, the court looked to its intent. Although the caller made no demand for
> payment, the debt collector specifically intended the call to induce the debtor to settle her
> debt; thus, it triggered the FDCPA. *Id.* at 774.

> The Seventh Circuit further refined the relevant inquiry in *Ruth v. Triumph P'ships*, 577
> F.3d 790 (7th Cir. 2009). … *Ruth* illustrates the relationship among the parties is also a
> factor determinative of whether a communication falls within the scope of the FDCPA.
> … Therefore, the question is whether an unsophisticated, but reasonable consumer would
> believe the debt collector sent the communication in connection with the collection of a
> debt. *Id.* at 798.

---

[13] See DE 54 pages 13, 16
[14] See DE 54 pages 15 ¶ 1.
[15] See DE 54 page 21.

Most recently, in <u>Gburek v. Litton Loan Servicing LP, 614 F.3d 380 (7th Cir. 2010)</u>, the Seventh Circuit stressed again that a demand for payment is not in itself determinative of whether a debt collector made a communication in connection to debt collection. The debtor at issue was in default on her mortgage loan. The loan servicer sent her three letters offering to discuss "foreclosure alternatives" and asking for financial information to initiate this process. In reversing the district court's grant of the loan servicer defendant's motion to dismiss, the <u>Gburek</u> Court determined a loan servicer made numerous communications with a debtor in connection with debt collection, as it intended the communications to cause the debtor to settle or discuss the debt. <u>Id.</u> at 384-86 (<u>citing Horkey</u>, 333 F.3d at 772-74; <u>Ruth</u>, 577 F.3d at 798-99). Thus, the Seventh Circuit has clearly emphasized the relationship of the parties, the intent of the communication, as well as demand for payment, determine whether a communication falls within the scope of the FDCPA.
<u>Stricklin v. Jefferson Capital Systems, LLC</u>, Dist. Court, SD Illinois 2011

72. Thus, Plaintiff has reasonably pled he was the object of collection activities including the receipt of communications  "in connection with the collection of any debt".

**RES JUDICATA DOES NOT APPLY HERE**

73. Defendants erroneously argue that *Res Judicata* applies; Plaintiff contends it does not as Defendants fail to present any valid argument of issue preclusion or claims preclusion.

74. Defendants cite: <u>Astron Indus. Assoc., Inc. v. Chrysler Motors Corp.</u>; <u>Ragsdale v. Rubbermaid, Inc.</u>; and, <u>Norfolk S. Corp. v. Chevron, US.A., Inc</u>., and in each of these cases the parties entered into a "stipulation of dismissal", whereas in the instant matter Plaintiff and MW did not have a "stipulation", and thus the cases are not analogous. Further, in each case cited, *res judicata* applied to subsequent cases filed, whereas in the instant matter there is no previous case, thus *res judicata* does not apply as there is but only one case here.

75. Res judicata, or claim preclusion, bars a plaintiff from bringing before the court claims that were or could have been resolved in an earlier proceeding. <u>Ragsdale v. Rubbermaid, 193 F.3d 1235, 1238 (11th Cir. 1999)</u>. Claim preclusion applies as between two cases if: (1) a final judgment is entered on the merits in the first case; (2) the judgment is rendered by a court of competent jurisdiction; (3) the cases' parties are identical (or privies of those parties); and (4) the claim for relief (f/k/a cause of action) is the same in both cases. <u>Griswold v. County of Hillsborough, 598 F.3d 1289, 1292 (11th Cir. 2010)</u>. A cause of action is the same if it involves "the same nucleus of operative facts, or is based on the same factual predicate, as a former action." <u>Ragsdale, 193 F.3d at 1239</u>. Where claim preclusion applies, it

bars all claims that were or could have been raised in the prior litigation. *Griswold*, 598 F.3d at 1293.

**COMMUNICATIONS AIMED AT COLLECTING A CONSUMER DEBT**

76. Defendant erroneously argues that "[t]here are no allegations in the complaint that set forth that the defendants' actions were aimed at collecting a consumer debt" [DE 58 pg.9 ¶2], whereas the complaint states: "Defendants regularly collects or attempts to collect debts from consumers" [SAC ¶19] and "[a]t all times material to the allegations of this Complaint, Defendants were acting as debt collectors with respect to collection of Plaintiff's alleged debt but nonexistent debt with Defendants" [SAC ¶22] and "The communications in question here are all related to the collection of a consumer debt" [SAC ¶27] and "Defendants continue to attempt to enforce and collect an alleged non-existent debt with Defendants" [SAC ¶57] indicating communications are not limited to those appended to the SAC, thus Plaintiff has set forth allegations that communications are all related to the collection of a consumer debt.

77. In *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 - Dist. Ct., SD NY 2006

> In West v. Nationwide Credit, 998 F.Supp. 642, 644 (W.D.N.C.1998), the … West court noted that "[i]n interpreting the meaning of a statute, it is well settled that `[t]he "plain meaning" of statutory language controls its construction,'" and went on to examine the dictionary definitions of "regarding." Id. (quoting *657 Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir.1995)). In particular, the court noted: "Webster's Ninth New Collegiate Dictionary (1st ed.1983) defines the term `regard' as, inter alia, `to relate to,' while it provides the following definition of the term `regarding': `with respect to: concerning.'" Id. "Based on these definitions, the court believes the ordinary meaning of the term `regarding' is consistent with the broader interpretation advocated by Plaintiff."

> Thus, given the choice of language by Congress, the FDCPA should be interpreted to cover communications that convey, directly or indirectly, any information relating to a debt, and not just when the debt collector discloses specific information about the particular debt being collected. Indeed, a narrow reading of the term "communication" to exclude instances such as the present case where no specific information about a debt is explicitly conveyed could create a significant loophole in the FDCPA, allowing debtors to circumvent the § 1692e(11) disclosure requirement, and other provisions of the FDCPA that have a threshold "communication" requirement, merely by not conveying specific information about the debt. … Such a reading is inconsistent with Congress's intent to protect consumers from "serious and widespread" debt collection abuses. *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 - Dist. Ct., SD NY 2006

**DEFENDANTS ARE DEBT COLLECTORS**

78. Here, Plaintiff has pled properly that Defendants are debt collectors. *See supra* ¶70.

79. Defendants attempt to assert that they <u>may</u> fall under the exclusions of 15 U.S.C. §1692a(6)(F). Plaintiff argues this is not the case and disputes the same and demands strict proof thereof.

80. As discussed *supra* at ¶¶44-52, the original servicer is Chase Home Finance, LLC and Plaintiff has received no notice of transfer of servicing rights to any other entity as servicer, thus JPMorgan Chase Bank, N.A. could not be the servicer.

81. It is undisputed that the loan was sold to a public security. It is also undisputed that the public security was not identified by any Defendant. It is unknown when the loan was sold to the unidentified public security. It is unknown what was sold to the unidentified public security, the note or the mortgage or the note and mortgage? This inquiry is relevant and necessary here.

82. It is undisputed that the communications sent to Plaintiff allege a debt to be in default and it is undisputed that the debt was sold to a unidentified public security, therefore it is relevant to inquire as to the date of the loan sale to determine if the exclusion in 15 U.S.C. §1692a(6)(F)(iii) might apply. This fact could be determined through discovery, yet given the undisputed fact that the loan was sold into an unidentified public security, it is thus plausible that none of the defendants were "the consumer's creditor" as only the public security would be considered the consumer's creditor.

83. It is undisputed that the loan was sold to an unidentified public security, therefore it is plausible that the exclusion in 15 U.S.C. §1692a(6)(F)(ii) would not apply, as therefor Defendants would not be "the consumer's creditor".

84. If the mortgage was sold without the note, then the security instrument becomes a nullity and Defendants assertion of "a valid and enforceable financial obligation with Chase" [MTD2 ¶5] was false, and the "assertion was false, in that CHASE did not own the debt" [SAC ¶¶46, 49]. The buyer would have to enter an agreement with the servicer or appoint and enter an agreement with new servicer, and notify the borrower of the transfer. Plaintiff has received no such notice. Cf. In *re Foreclosure Cases*, <u>521 F. Supp. 2d 650, 653 (S.D. Ohio 2007)</u> (finding that one who did not acquire the note which the mortgage secured is not entitled to enforce the lien of the mortgage). In *re VEAL*, <u>Bankr. Appellate Panel, (9th Circuit 2011)</u> (if

the deed of trust was assigned without the note, then the assignee, "having no interest in the underlying debt or obligation, has a worthless piece of paper.")

85. It is undisputed that the loan was sold to an unidentified public security. If the note and mortgage were sold to an unidentified public security, then Defendants assertion of "a valid and enforceable financial obligation with Chase" [MTD2 ¶5] was false, and the "assertion was false, in that CHASE did not own the debt" [SAC ¶¶46, 49]. The buyer would have to enter an agreement with the servicer or appoint and enter an agreement with new servicer, and notify the borrower of the transfer. Plaintiff has received no such notice.

86. If the note was sold it would follow as in *supra* at ¶81, unless the buyer (the unidentified public security) was limited to taking only the note. In *re VEAL*, Bankr. Appellate Panel, (9th Circuit 2011) (When a note is split from a deed of trust the note becomes, as a practical matter, unsecured.")

87. *Carpenter v. Longan*, 83 U.S. 271, 274-75 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")

**CPCC IS A DEBT COLLECTOR**

88. Plaintiff has pled properly and sufficiently that CPCC is a debt collectors. See supra ¶70

89. It is undisputed that the loan was sold to an unidentified public security. It is undisputed that CPCC manages the security. Even if JPMorgan Chase Bank, N.A. was servicer, which Plaintiff disputes, then CPCC would be neither a creditor or a servicer, and to prove a bona fide fiduciary obligation would require such documents to be produced to evidence the relationship in order to invoke 15 U.S.C. §1692a(6)(F)(ii) exclusion, and no such bona fide fiduciary obligation has been produced.

90. Thus it is plausible that CPCC "directly or "indirectly" engaged in the collection of an alleged debt for a third party" through Chase as Plaintiff indicated in his SAC. See SAC ¶53.

**JPMC IS A DEBT COLLECTOR**

91. Plaintiff has pled properly and sufficiently that JPMC is a debt collector. See supra ¶70

92. Defendant argues Plaintiff has only alleged JPMC is a parent company, and Plaintiff counters this is not the case. This was discussed *supra* at ¶¶35-40.

93. The cases Defendants cite in support are not analogous to the instant matter. In *White v. Goodman*, a case centering around flat rating letters by a law firm, the individual party is a

shareholder lawyer owning less that 100% of stock. In *Petit v. Retrieval Masters Credit Bureay Inc*, the case centers around misleading name of defendant and fails to use the least sophisticated consumer standard, the individual party is the company president a partial shareholder. In *United Technologies Corp v. Mazer*, the case is for criminal theft of blueprints by the partial owner/president of a corporation who acted outside the scope of his employment.

94. JPMC, as 100% owner of both CPCC and Chase, does exercise control and influence over CPCC and Chase. It is axiomatic that a corporation like Chase, CPCC, and JPMC cannot act other than through their officers, employees, and agents. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir.1985) ("The rule is well established that a corporation is an artificial entity that can act only through agents....").

95. Thus it is plausible that JPMC exercises control or influence over CPCC and Chase to the extent that JPMC "directly or "indirectly" engaged in the collection of an alleged debt for a third party through its subsidiaries" Chase and or CPCC as Plaintiff indicated in his SAC. *See* SAC ¶¶54, 55. *Newman v. CheckRite Cal., Inc.*, 912 F. Supp. 1354, 1372 (E.D. Cal. 1995) (holding actor could be liable for any debts he attempted to collect directly or indirectly in violation of FDCPA)

96. Plaintiff also pled JPMC has vicarious liability and is a respondent superior. *See* SAC ¶¶15, 16, 51, 52, and has indicated JPMC personally involved [SAC ¶¶54, 55], and this can be a fact matter for the fact finder. *Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 617–22 (D. Utah 2005) (finding that indirect participation by oversight of debt collection corporation raised factual question regarding whether defendants were personally liable for FDCPA violations as "debt collectors"); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436, 437–38 (6th Cir. 2008) (holding sole member of limited liability corporation individually liable for FDCPA violation as a "debt collector"); *Brumbelow*, 372 F. Supp. 2d at 621 (finding that individuals with supervisory authority over corporations and involvement in procedures can be liable, regardless of lack of personal knowledge about particular debt collection).

97. Defendants argue that veil piercing is required for vicarious liability and respondent superior liability; Plaintiff argues this is not the case. *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1070–73 (E.D. Cal. 2008) (holding that shareholder, director, or officer meeting requirements

of "debt collector" can be liable for violations of FDCPA even if corporate veil is not pierced). Thus it is plausible that vicarious liability or respondent superior liability can be attributed to JPMC as Plaintiff argues *supra* at ¶¶35-40.

**CHASE IS A DEBT COLLECTOR**

98. Plaintiff has pled properly and sufficiently that Chase is a debt collector. *See* supra ¶70

99. Defendant Chase also states in a written communication "We are a debt collector", Defendant Chase has indicated in writing that it is acting on behalf of CPCC" *See supra* ¶70; SAC ¶21.

100.    Defendants argue that as a servicer Chase would not be a debt collector; Plaintiff argues this is not true as even if JPMorgan Chase Bank, N.A. was servicer, which Plaintiff disputes, the Eleventh Circuit held in a published opinion that "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." Reese, 678 F.3d at 1218; Birster, 481 F. App'x at 583 ("[A]n entity can both enforce a security interest and collect a debt.").

101.    *Bridge v. Ocwen Federal Bank, FSB*, 681 F. 3d 355 – (6th Cir. 2012), the Court reversed the district court's grant of the defendants' motion to dismiss plaintiffs' FDCPA claim. The Court held that the mortgage servicer and the purchaser of the mortgage were subject to the FDCPA (despite their arguments and the plaintiffs' allegations that the mortgage was not in default) because the mortgage servicer treated the mortgage as if it were in default and attempted to collect it as a defaulted debt.

102.    Defendants seek to admit into evidence an exhibit attached to the motion to dismiss and argue that the Court may consider the exhibit without converting the motion to dismiss into a motion for summary judgment and cite *Universal Express Inc v. U.S. S.E.C.*. Plaintiff objects to this exhibit being considered, deems it inappropriate, and argues the citation is read improperly, specifically in regard to public records. Plaintiff argues court documents are public records that could be considered, but county public records and the like are not authenticated the same as court documents, and therefore the court should disregard the exhibit.

103.    Generally, only the complaint, and any attachments thereto, are considered in deciding a motion to dismiss. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). A court may however take judicial notice of some facts

when considering a motion to dismiss. *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010). Documents from prior cases involving parties are "public records not subject to reasonable dispute because they [are] capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *Id.* (internal citations and quotations omitted); see also *Universal Express, Inc. v. U.S. SEC*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). No surprise results from a court considering court documents from earlier cases between the same parties. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999). Therefore, the court should disregard the exhibit attached to the motion to dismiss, or it must be converted to a motion for summary judgment.

104.    Plaintiff intends to file a separate motion to strike the exhibit for various grounds including the document not being properly authenticated and spoliation.

**PROHIBITED ACTS – VIOLATIONS OF FDCPA**

105.    Plaintiff has met the other elements for violations of FDCPA, he will now address the violations of statute:

106.    Violation of 15 U.S.C. §1692g: "Pinson did not receive from Defendants the required FDCPA 15 U.S.C. §1692g disclosure notice within five day of Wolf's visit, or at any time thereafter" [DE 52 ¶37]. At no time has Plaintiff received a 1692g validation rights notice from any of the Defendants.

107.    "Section 1692g of the FDCPA requires that a debt collector send a validation notice to the debtor, informing the debtor that he or she has thirty days to dispute the debt and to request the name and address of the original creditor." *Elliot v. GC Servs., LP*, No. 8:10-cv-1976-T-24TBM, 2011 WL 5975671, at *4 (M.D. Fla. Nov. 28, 2011). The courts have determined that the notice must be provided in a manner that effectively communicates its contents to the least sophisticated of consumers. *See Ellis v. Solomon & Solomon, PC.*, 591 F.3d 130 (2d Cir. 2010). ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."); *Sims v. GC Servs. L.P.*, 445 F.3d 959 (7th Cir. 2006). (The unsophisticated consumer standard applied. Since the FDCPA is a strict liability law, the good or bad intent of the debt collector is immaterial.); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775 (9th Cir. 1982). (Applies unsophisticated consumer standard.

Also, a consumer need not dispute the validity of a debt to recover for a failure to provide a proper notice of validation rights provided by § 1692g.).

108.   Violation of 15 U.S.C. §1692f(6): In a written communication MW stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[16], yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase or CPCC did not own the alleged debt and defendants do not refute that fact. This was a violation in that Defendants, through MW, threatened to unlawfully take consumer Pinson's property, and "was a false assertion of a legal right to collect" [DE 52 ¶¶35, 47, 49]. As counsel, MW was acting for and directed by Chase, JPMC, and CPCC.

109.   Violation of 15 U.S.C. §1692f(1): The defendant, through MW, threatens "Please be advised that the foreclosure action will continue until the total reinstatement funds are received in compliance with this letter"[17]. These statements appear contradictory, notwithstanding the fact that the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase nor CPCC did not own the alleged debt and defendants do not refute that fact. This was a violation in that Defendants attempted to collect an amount it had no right to collect because Defendants did not own the Alleged Debt, and Defendant states that he disputed the Alleged Debt. As counsel, MW was acting for and directed by Chase, JPMC, and CPCC.

110.   Violation of 15 U.S.C. §1692e(14): Plaintiff *pro se* has received debt collection communications from various entities such as but not limited to: "Chase"; "Chase Home Finance"; "Bank One Financial Services Inc"; "Chase Home Lending"; "Ocwen"; "Chase Home Finance LLC"; "JPMorgan Chase"; "JPM Chase"; "JPMorgan Chase Bank NA"; "Chase Mortgage Banking"; "Chase Fulfillment"; "JP Morgan Chase & Company, Family of Companies", regarding an un-validated alleged debt. This was a violation in that names other than the true names of the debt collector were used.

111.   Violation of 15 U.S.C. §1692e(11): The initial communication from MW on behalf of and directed by Chase, JPMC, and CPCC was "On Saturday, July 28, 2012 …[when] Barry

---

[16] See DE 54 page 15 ¶ 2.
[17] See DE 54 page 14 ¶ 5.

A. Wolf on instruction of WATSON did ... show written instructions from WATSON ... asserting CHASE owned the debt and had authorized WATSON to collect on their behalf." [DE 52 ¶34] At that time the Plaintiff was not notified Chase, JPMC, or CPCC was a "debt collector" and that "any information obtained will be used for that purpose" even though Wolf attempted to obtain information on consumer [DE 52 ¶34]. Further, the MW August 9, 2012, communication[18] fails to state it is a "communication from a debt collector". This was a violation in that MW failed to disclose it was a debt collector in the initial communication and failed to disclose it was a debt collector in subsequent communications and as counsel, MW was acting for and directed by Chase, JPMC, and CPCC.

112.    Violation of 15 U.S.C. §1692e(10): "On Saturday, July 28, 2012 ...[when] Barry A. Wolf on instruction of WATSON did ... show written instructions from WATSON ... asserting CHASE owned the debt and had authorized WATSON to collect on their behalf." [DE 52 ¶34] At that time the Plaintiff was not notified Watson was a "debt collector" and that "any information obtained will be used for that purpose" even though Wolf attempted to obtain information on the consumer. This was a violation in that MW used false representations and deceptive means in attempt to collect an Alleged Debt and information on consumer and as counsel, MW was acting for and directed by Chase, JPMC, and CPCC.

113.    Additionally, Defendants, through MW, asserted Plaintiff was in foreclosure when there was no foreclosure action; this was a false representation or deceptive means to collect or attempt to collect any [alleged] debt. In a written communication defendant stated "THIS FIRM REPRESENTS THE PLAINTIFF [chase] IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[19] , yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase or CPCC did not own the alleged debt and defendants do not refute that fact. This was a violation in that MW used false representations and deceptive means in attempt to collect an Alleged Debt, as counsel, MW was acting for and directed by Chase, JPMC, and CPCC.Further, Defendant Chase, in a August 17, 2012 communication stated "this loan is a valid legally enforceable financial obligation with Chase"[20], notwithstanding the fact that on June 1, 2012, Plaintiff *pro se* was notified "Your loan was sold into a public

---

[18] See DE 54 page 12.
[19] See DE 54 page 15 ¶ 2.
[20] See DE 06-1 page 20 ¶ 1.

security managed by CPCC" in response to Plaintiff's Qualified Written Request[21], a fact Defendants do not refute. This was a violation in that Defendant used false representations and deceptive means in attempt to collect an Alleged Debt. Chase was acting on behalf of CPCC.

114.   Violation of 15 U.S.C. §1692e(8): Defendants threatened to report and reported information to the credit bureaus[22] even though the consumer disputed the alleged debt in writing. This was a violation in that defendant failed to report the debt was disputed.

115.   Reporting to credit bureaus is a communication within the FDCPA. Allegation that collection agency falsely reported the balance of an account to a credit bureau survived motion to dismiss. *See Davis v. Trans Union, L.L.C., 526 F. Supp. 2d 577 (W.D. N.C. 2007).*

116.   Violation of 15 U.S.C. §1692e(2): In a written communication defendants, through MW, stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[23] , yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase, JPMC, or CPCC did not own the alleged debt and defendants do not refute that fact. Thus, as in other communications consumer received, the defendants falsely represented the character, amount or legal status of the [alleged] debt. This was a violation in that Defendant misrepresented the character, amount, and legal status of the debt, by stating that a foreclosure action had been filed when none had, and that Chase, JPMC, or CPCC was owed an alleged debt when Chase, JPMC, or CPCC did not own the alleged debt and did not have a legal right to collect. As counsel, MW was acting for and directed by Chase, JPMC, and CPCC.

117.   Violation of 15 U.S.C. §1692d: In a written communication defendant stated "THIS FIRM REPRESENTS THE PLAINTIFF IN A FORECLOSURE ACTION THAT HAS BEEN FILED AGAINST YOU"[24] , yet the County Court records show no foreclosure action was pending at that time and no foreclosure action has been filed since that date, nor could there be, as Chase, JPMC, or CPCC did not own the alleged debt and defendants do not refute that fact. Plaintiff received multiple communications stating a foreclosure action had

---

[21] See DE 06-1 page 4 ¶ 2.
[22] See DE 54 page 21 last paragraph.
[23] See DE 54 page 15 ¶ 2.
[24] See DE 54 page 15 ¶ 2.

been commenced against him, where the fact is that none was filed, and thus this action, as others, naturally harassed, oppressed and abused the Plaintiff, and this unfair and deceptive conduct was unnecessary on the part of Defendants. This was a violation in that Defendant stated that a foreclosure action had been filed when none had, and that Chase, JPMC, or CPCC was owed an alleged debt when Chase, JPMC, or CPCC did not own the alleged debt and did not have a legal right to collect, thus harassing, oppressing and abusing Pinson. As counsel, MW was acting for and directed by Chase, JPMC, and CPCC. Congress included this general proscription in recognition of its inability to foresee every conceivable abusive debt collection method. According to the Senate report: "this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."[25] Consequently, a collector might violate the general proscription even though its conduct falls outside the specific listed activities.[26] *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051 (C.D. Cal. 2009); *Bank v. Pentagroup Fin., L.L.C.*, 2009 WL 1606420 (E.D.N.Y. June 9, 2009); *Cirkot v. Diversified Sys., Inc.*, 839 F. Supp. 941 (D. Conn. 1993); *Grassley v. Debt Collectors, Inc.*, 1992 U.S. Dist. LEXIS 22782 (D. Or. Dec. 4, 1992); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 981 (N.D. Ill. 1979); *Henderson v. Credit Bureau, Inc.*, 1989 U.S. Dist. LEXIS 19138 (W.D.N.Y. July 13, 1989); *Riley v. Giguiere*, 631 F. Supp. 2d 1295 (E.D. Cal. 2009).

118.    The term "harass" is not defined in the Act, but examples of actionable harassment are provided by the prohibitions in the subsections of 15 U.S.C. § 1692d.[27] In the absence of specific statutory definition, a word should be accorded its ordinary meaning, as given in the dictionary. Thus, the term "oppress" means "to ... persecute by unjust ... use of force or

---

[25] See S. Rep. No. 382, 95th Con g., 1st Sess. 4, at 4, reprinted at 1977 U.S.C.C.A.N. 1695, 1696

[26] H.R. Rep. No. 1202, 94th Cong., 2d Sess. 7 (1976); H.R. Rep. No. 131, 95th Cong., 1st Sess. 13 (1977) ("[t]his section provides a general rule prohibiting any debt collector from harassing or intimidating any person in connection with the collection of any debt or the threat or attempt to do so. Six examples of what constitutes harassment or intimidation are enumerated. These examples do not limit the general application of this rule against harassment or intimidation."); FTC Official Staff Commentary § 806-1.

[27] 122 Cong. Rec. H7792 (daily ed. July 28, 1976) (remarks of Rep. Wylie) ("[w]e have talked about threats and harassment in the bill. They are not necessarily words of vagueness. All we have to do is go to the dictionary to find out that 'harass' means to worry and impede by repeated •raids; exhaust, fatigue, to annoy continuously. Harass is to harass in a manner to injure, grieve or afflict; to cause to suffer because of belief; to annoy with persistent or urgent approaches, to pester"); Rozga, FTC Informal Staff Letter (Sept. 5, 1978); Kolarov, FTC Informal Staff Letter (Dec. 6, 1977).

authority ... weigh heavily upon,"[28] and the term "abuse" means "to use wrongly or improperly ... to hurt or injure by maltreatment."[29] The breadth of these terms indicates that Congress intended broad prohibitions against improper debt collection conduct.

119.    In *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) the Eleventh Circuit addressed the standard of analysis for claims under section 1692d, and used "a susceptible consumer" standard as analogous to the "least sophisticated consumer" standard used under section 1692e.

> Whether a consumer is more or less likely to be harassed, oppressed, or abused by certain debt collection practices does not relate solely to the consumer's relative sophistication; rather, such susceptibility might be affected by other circumstances of the consumer or by the relationship between the consumer and the debt collection agency. For example, a very intelligent and sophisticated consumer might well be susceptible to harassment, oppression, or abuse because he is poor (i.e., has limited access to the legal system), is on probation, or is otherwise at the mercy of a power relationship .... Thus, we hold that claims under section 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse.

> *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985).

120.    The phrase "conduct the natural consequence of which is to harass" requires that courts should use objective standards in determining whether this provision has been violated. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980, 982 (N.D. Ill. 1979) The debt collector's intent may be inferred from his misconduct. *See Brandt v. I.C. Sys., Inc.*, 2010 WL 582051 (M.D. Fla. Feb. 19, 2010) ("Intent may be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt, or during a time of day which the debtor had informed the debt collector was inconvenient."); *Krapf v. Collectors Training Inst. of Ill., Inc.*, 2010 WL 584020 (W.D.N.Y. Feb. 16, 2010).

---

[28] American Heritage Dictionary 872 (2d College Ed. 1982).
[29] American Heritage Dictionary 872 (2d College Ed. 1982).

121.    Insofar as Plaintiff stated "Defendants' violations include, but are not limited to", the
plaintiff also alleges:

122.    Violation of 15 U.S.C. §1692e(5): Chase, JPMC, and CPCC failed to conduct a
reasonable investigation with regard to Plaintiff's written dispute and demand for
validation[30]. Since Defendants failed to comply with Fla. Stat. §559.715 and threatened a
lawsuit, and falsly represented it had filed a lawsuit, with an improper party, Defendants did
take an[] action that cannot legally be taken thus violating 15 U.S.C. §1692e(5). *See LeBlanc
v. Unifund CCR Partners*, 601 F. 3d 1185 – (11th Cir. 2010). This was a violation in that
Chase, JPMC, and CPCC by and through counsel MW did make threat to take any action that
cannot legally be taken or that is not intended to be taken.

123.    These factual allegations show a right to relief that is plausible. That is, when the
factual allegations are assumed to be true, they show a right to relief that is more than mere
speculation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Fowler v.
UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009); *see Iqbal*, 556 U.S. at 678-79;
*Twombly*, 550 U.S. at 555-56; *Brooks*, 578 F.3d at 581.

**Count II - Plaintiff's FCCPA Claim**

124.    In Count II of the complaint, plaintiff alleges a claim for violations of FCCPA. The
elements of a FCCPA claim are (1) the plaintiff has been the object of debt-collection
activity arising from an alleged consumer debt; (2) the defendant is a debt collector under
Fla. Stat. § 559.55(6); and (3) the defendant has violated, through acts or omissions, Fla. Stat.
§ 559.72 of the FCCPA. The complaint provides defendant with fair notice of the claim. *See
Brooks*, 578 F.3d at 581. Plaintiff *pro se's* verified complaint provides more than labels and
conclusions and is more than a formulaic recitation of the elements of an FCCPA claim, and
further the verified complaint offers appended documents as fact further evidencing his
claim.

125.    In support of his claim for FCCPA, plaintiff made the following factual allegations for
each element: (1) That Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §
1692a(3), Fla. Stat. § 559.55(2) and Fla. Stat. § 501.203(7) [DE 52 ¶¶11, 76], and that

---

[30] See DE 54 page 6.

Plaintiff *pro se* was threatened in a written communication[31] by Defendants, through MW, with a collection action[32] wherein defendants stated "THIS IS AN ATTEMPT TO COLLECT A DEBT"[33], and further, "IMPORTANT NOTE: FEDERAL LAW REQUIRES US TO NOTIFY YOU THAT THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT"[34]; "The communications in question here are all related to the collection of a consumer debt"[DE 52 ¶27]; (2) Defendants are "debt collector(s)" as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6) [DE 52 ¶¶12-14, 18-21, 60, 76], and is clearly and unambiguously stated by Defendant Chase in a written communication "We are a debt collector"[35], and Defendant Chase has indicated in writing that it is acting on behalf of CPCC, and CPCC was acting through Chase, making CPCC a respondent superior; the defendant has violated, through acts or omissions, Fla. Stat. § 559.72 of the FCCPA.

126.    Plaintiff did aver he is a consumer [DE 52 ¶11]: "The communications in question here are all related to the collection of a consumer debt"[DE 52 ¶27]

127.    Res Judicata does not apply as argued by Plaintiff supra at ¶¶73-75.

128.    The Plaintiff's FCCPA claims mirror plaintiff's FDCPA claims, the FDCPA allegations and factual allegations were restated under FCCPA in full.  "Plaintiff alleges and the information in paragraphs 1 through 74." [DE 52 ¶75].

129.    Additionally, since plaintiff's FCCPA claims mirror plaintiff's FDCPA claims and "The FDCPA is a federal law and accordingly state law defenses are not relevant here." *Hamid v. Stock & Grimes, LLP*, No. 11-2349, 2012 WL 2740869, at 2, F. Supp. 2d (E.D. Pa. 2012).

130.    The FCCPA is Florida's counterpart to the FDCPA. It provides additional protections and is preempted to the extent that it conflicts with the FDCPA. Both statutes define "debt" in exactly the same manner. FLA STAT. § 559.55(1); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1187 n.2 (11th Cir. 2010).

131.    Unlike the FDCPA, the FCCPA applies to anyone attempting to collect a debt, not just those defined as "debt collectors." However, the FCCPA narrows liability by adding a requirement for knowledge of falsity as to claims made. FLA. STAT. § 559.72(9); see also

---

[31] See DE 09 ¶ 20.
[32] See DE 54 pages 12-18, 20-21.
[33] See DE 54 pages 13, 16
[34] See DE 54 pages 15 ¶ 1.
[35] See DE 54 page 21.

<u>McCorriston v. L.W.T., Inc.</u>, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008) ("Plaintiff must prove, as part of the prima facie case alleging a violation of the FCCPA, that Defendants had actual knowledge that their claim of a right to enforce the debt" does not exist.).

132. Defendant Chase and CPCC had "actual knowledge" that the alleged debt was not legitimate. Defendants were placed on notice that the alleged debt was disputed by Plaintiff when Pinson sent dispute and debt validation letters via US Mail as the dispute letter triggers a requirement to conduct a reasonable investigation into the disputed facts.

133. Defendant Chase was placed on notice that the alleged debt was disputed by Plaintiff when "On July 23, 2012, Pinson sent Chase a dispute and debt validation letter[36] via US Mail".

134. Defendant CPCC was placed on notice that the alleged debt was disputed by Plaintiff when "On July 23, 2012, Pinson sent CPCC a dispute and debt validation letter[37] via US Mail".

135. In response to Plaintiff's debt validation letters, Defendants, instead of providing Plaintiff proper validation under the FDCPA, sent Plaintiff threatening communications[38] representing that they had filed a foreclosure action against Plaintiff where none had been filed, thus Defendants misrepresented that a legal action had already been taken that in fact had not, nor could not because Chase or CPCC did not own the alleged debt. As counsel, Watson was acting on behalf of Chase and CPCC.

136. Since FDCPA prohibits actions and unfair practices that may not involve communicating directly with the consumer, *pro se* alleges that Chase was debt collector's agent and that JPMC and CPCC are vicariously liable for its agent's acts and under the doctrine of respondent superior, and survives motion to dismiss. *See* <u>Gathing v. Mortgage Elec. Registration Sys., Inc.</u>, 2010 WL 889945 (W.D. Mich. Mar. 10, 2010).

137. It is undisputed that the loan was sold to a public security. Fla. Stat. §559.715 requires in part that "the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt."[39] Plaintiff received no notice from any assignee, and alleged assignee is unknown to

---

[36] See DE 54 generally.
[37] See DE 06-1 page 6.
[38] See DE 06-1 pages 12-18.
[39] See http://www.flsenate.gov/Laws/Statutes/2012/559.715

Plaintiff. "On July 23, 2012, Pinson sent CPCC a dispute and debt validation letter via US Mail Certified # 7011 2970 0002 4191 6770 Return Receipt Requested"[40] in attempts to identify the alleged entity that referred to by Chase as purchasing the alleged debt. As of this date CPCC has never responded [DE 52 ¶56] to requests. Further, "On April 13, 2012, Plaintiff sent a letter to CHASE, questioning the debt and CHASE's authority to collect" [DE 52 ¶26] in the form of a qualified written request questioning ownership of the alleged debt and Chase has never identified the owner of the alleged debt.

138.    Counsel preparing foreclosure documents have an obligation to make a reasonable inquiry to ensure that factual contentions set forth in pleadings have evidentiary support.[41] This duty applies to the lender's preparation of pleadings related to an affirmative action for judicial foreclosure.

139.    Servicers and their attorneys who misrepresent the authority to foreclose implicate not only court rules such as Rule 11, but may also violate statutory prohibitions against unfair and deceptive acts and improper debt collection practices.

140.    The duty created under Rule 11 certainly encompasses investigation into the facts related to current ownership of notes and mortgages, as these facts form the very basis for the foreclosure proceeding. Courts have become increasingly vigilant in exercising their own authority under Rule 11 to scrutinize mortgage servicers' filings for blatantly inconsistent content related to the authority to foreclose. *Mainsource Bank v. Winafeld*, 2008 WL 4061415 (Ohio Ct. App. Sept. 2, 2008) (upholding imposition of Rule 11 sanctions against plaintiff who filed foreclosure action when it was not real party in interest). *See also Wells Fargo Bank v. Reyes*, 867 N.Y.S.2d 21 (N.Y. Sup. Ct. 2008) (scheduling hearing to consider sanctions for frivolous litigation conduct in bringing foreclosure action when public records indicated that mortgage had never been assigned to named plaintiff when action filed); *Countrywide Home Loans, Inc. v. Taylor*, 843 N.Y.S.2d 495 (N.Y. Sup. Ct. 2007) (sanctions appropriate if plaintiff continues to bring actions accompanied by similar defective documentation of standing).

141.    Careless foreclosure practices undermine the functioning of the courts and harm property rights of homeowners, investors, and purchasers of properties at foreclosure sales. Although

---

[40] See DE 09 ¶ 22, and DE 06-1 page 6.
[41] See Fed. R. Civ. P. 11.

Rule 11 does not function primarily as a fees-shifting provision, it does authorize a court to order that the offending creditor pay the objecting homeowner's attorney fees. Fed. R. Civ. P. 11(c)(4). *See Kirk Capital Corp*, 16 F.3d 1485, 1490 (8th Cir. 1994); *In re Kunstler*, 914 F.2d 505, 522-523 (4th Cir. 1990); *White v. Gen. Motors Corp*. 675, 684 (10th Cir. 1990); *Fed. Home Loan Mortg. Corp. v. Raia*, 918 N.Y.S.2d 397 (table), 2010 WL 4750043 (N.Y. Dist. Ct. Nov. 23, 2010) (applying New York attorney disciplinary rules, court imposes sanctions against attorney who misrepresented plaintiffs standing to pursue post-sale holdover action against borrower; attorney fees of $14,532.50 ordered paid to Volunteer Lawyers Project).

142.    Defendants were on notice Plaintiff disputed the alleged debt and as debt collectors Defendants had a duty to investigate any claims. MW as Council for Chase and CPCC, failed to conduct a reasonable investigation and subsequently represented it had taken a legal action and filed a lawsuit against the Plaintiff, when MW, on behalf of Chase and CPCC did not have a right to take a legal action. If Defendants had properly investigated, then these acts may not have occurred.

143.    Any person who violates the FCCPA is liable for actual damages and up to $1,000 in additional damages, if the court allows, unless "the violation was not intentional and resulted from a bona fide error." FLA. STAT. § 559.77(2)-(3). Unlike the FDCPA, the FCCPA permits awarding punitive damages. Id.

144.    The FCCPA unequivocally states its goal—to provide the consumer with the most protection possible under either the state or federal statute. See FLA. STAT. § 559.552 ("In the event of any inconsistency. . . the provision which is more protective of the consumer or debtor shall prevail.") Further, the fact that the FCCPA deemed its remedies cumulative reveals that the Florida legislature contemplated dual enforcement—that a[] "... debt collector" could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010

145.    Defendants failed to conduct a reasonable investigation with regard to Plaintiff's written dispute and demand for validation[42]. Since Defendants failed to comply with Fla. Stat. §559.715 and threatened a lawsuit, and falsly represented it had filed a lawsuit, with an improper party, Defendants did take an[] action that cannot legally be taken thus violating 15

---

[42] See DE 06-1 page 6.

U.S.C. §1692e(5). *See LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 - Court of Appeals, 11th Circuit 2010, and in doing so violated FLA. STAT. § 559.72(9). This was a violation in that Defendants, being informed of a dispute, knowing the alleged debt was not legitimate did claim, attempt and threaten to enforce an alleged debt and assert the existence of some legal right when the right did not exist by sending a letter falsely stating a foreclosure action was filed.

146.    These factual allegations show a right to relief that is plausible. That is, when the factual allegations are assumed to be true, they show a right to relief that is more than mere speculation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211-12 (3d Cir. 2009); *see Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56; *Brooks*, 578 F.3d at 581.

147.    Further, Chase did state the alleged debt "was sold into a public security managed by CPCC Delaware Business Trust and may include a number of investors" therefore CPCC did not own the alleged debt and therefore as manager of the alleged security CPCC was acting through Chase.

148.    Further, any alleged debt is not in question here under a FDCPA and/or FCCPA claim(s).

## CONCLUSION

149.    The facts raised in the complaint are not mere speculation. In ruling on Defendant's motion to dismiss, the Court is required to construe the allegations in the pleadings liberally and draw all reasonable inferences in favor of the Plaintiff *pro se*.

150.    At this stage in the litigation the Plaintiff *pro se* does believe that additional violations exist, and they should be properly identified and determined through proper Discovery including ESI Discovery.

151.    Plaintiff *pro se* has shown a pattern of similar violations by Defendants as published by both the Supreme Court of Florida and the Justice Department of the United States of America.

152.    Plaintiff *pro se* has pleaded facts sufficient to allow a court, drawing on "judicial experience and common sense", to infer "more than the mere possibility of misconduct", which easily satisfies his burden of pleading under the FDCPA and FCCPA at this stage. *See*

*Ashcroft v. Iqbal*, 129 S.C. at 1950. Plaintiff has also alleged that he has been damaged by the Defendant Chase, JPMC, and CPCC. Plaintiff claims should therefore survive dismissal.

**WHEREFORE,** Plaintiff *pro se* respectfully requests that this honorable Court enter an order denying Defendants Chase, CPCC, and JPMC's Motion to Dismiss Pursuant to FRCP 12(b)(6). In the alternative, if the Court determines Plaintiff *pro se* has failed to state a claim, Plaintiff *pro se* asks the Court to grant leave and sufficient time to amend his complaint.

Dated: June 25, 2014

Respectfully Submitted,

John Pinson, *pro se*
526 Westwood Road
West Palm Beach, Florida 33401
561-329-2524
john@pinson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, on the Service List below.

Signed June 25, 2014

John Pinson

### Service List

Thomas H Loffredo, Esq.
tom.loffredo@gray-robinson.com
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1850
Ft. Lauderdale, FL 33131
Phone: (954) 761-8111
Fax: (954) 761-8112
*Attorney for Defendants:*
JPMorgan Chase Bank, N.A.;
JPMorgan Chase & Co.

Patrick S. Scott, Esq.
patrick.scott@gray-robinson.com
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1850
Ft. Lauderdale, FL 33131
Phone: (954) 761-8111
Fax: (954) 761-8112
*Attorney for Defendant:*
CPCC Delaware Business Trust,
a/k/a CPCC Delaware Statutory Trust