# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

## CASE NO.: 9:13-cv-80720-KAM

FILED BY _____ D.C.

DEC 3 1 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

John Pinson, *pro se*

     Plaintiff

vs

**JPMORGAN CHASE BANK, N.A., et. al.**

     Defendants/

## PLAINTIFFS' AMENDED MOTION TO COMPEL
## BETTER ANSWERS TO INTERROGATORIES, PRODUCTION OF DOCUMENTS
## OR, IN THE ALTERNATIVE, FOR AN *IN CAMERA* INSPECTION OF DOCUMENTS

Plaintiff moves for an order compelling Defendant JPMorgan Chase Bank NA ("Chase") to provide better answers to interrogatories, and produce documents withheld on the grounds of privilege or in the alternative for an *in camera* inspection of particular documents. Plaintiff also requests that the defendant be ordered to provide a privilege log for documents withheld on the grounds of privilege. Plaintiff requests that Chase be ordered to produce for *in camera* inspection all withheld documents related to Plaintiff requested discovery within ten (10) days of the entry of an Order on this motion.

## BACKGROUND

1. On October 2, 2014, the Court granted Plaintiff's Rule 56d motion and Ordered [DE 75] discovery. On October 21, Plaintiff served Interrogatories one thru fourteen and a Request for Production one thru twenty-one to Defendant Chase by hand delivery. On December 11, Defendant moved for Protective Order. On November 21, Plaintiff objected and requested a hearing. On November 26, the Court granted protective order, denied a hearing and ordered Defendant to answer within ten (10) days. Defendants were ordered to answer only two requests for production. On December 9, 2014, Plaintiff received the Defendant's answers, objections, and claims of privilege to the Plaintiff's discovery requests. The December 9 set did not include counsel signature on interrogatory objections; counsel signature arrived on December 11. Answers to interrogatories were found to be incomplete and inconclusive.

2. On December 9, 2014, Plaintiff e-mailed Defendant's counsel as to when he could view alleged originals. *See* attached "Exhibit A". Further, in the e-mail, Plaintiff stated the alleged

document produced appeared the same as what had already been disputed by Plaintiff's motion to strike and interrogatories were deficient and contained general objections. Plaintiff requested, if Defendant had any document that appeared different from those previously provided, to scan and e-mail a copy in advance of the viewing. Defendant did not email any other copy.

3.  On December 12, 2014, at 3 PM, Plaintiff viewed alleged original documents at Chase counsel's office. The only documents produced were an alleged mortgage and note; no other documents. The alleged original documents presented appeared distinctly different and included whiteout tape on each page covering portions of the documents and hand written notations that appear nowhere on any other alleged documents presented. Particularly, the mark Plaintiff questioned in the Court ordered interrogatory number 14 was covered-up with whiteout tape and loan numbers were covered-up, with no explanations why. *See* attached "Exhibit B". No explanation was offered to these questions of fact of these alleged documents being different, altered, and/or spoiled.

4.  In no way could the documents shown to Plaintiff be the alleged original note and mortgage as Plaintiff plainly observed multiple locations on the documents presented that were covered-up with whiteout tape. For defendant to state to this Court or any other person that it provided the original note for viewing to the Plaintiff is almost laughable. Plaintiff dictated extensive notes immediately upon leaving the viewing, and before leaving the building, regarding the alleged original note and mortgage so as to capture in great detail his observations while viewing the documents.

## MEMORANDUM OF LAW

5.  The district court has broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery. Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1306 (11th Cir. 2011). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir. 2005) (quoting Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1324 (11th Cir. 2005)).

6.  "The term relevance at the discovery stage is broadly construed to include information which is not admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence." Convertino v. United States Department of Justice, 565 F.Supp.2d 10, 12 (D.D.C. 2008). Courts have determined that "[a] showing of relevance can be viewed as a showing of need; for the purpose of prosecuting or defending a specific pending civil action, one is presumed to have no need of a matter not 'relevant to the subject matter involved in the pending action.' "Meijer, Inc. v. Warner Chilcott Holdings Co., III, Ltd., 245 F.R.D. 26, 29–30 (D.D.C. 2007).

7. Courts have observed that "[i]n accordance with these considerations, courts generally employ a balancing test, weighing the burdensomeness to the [party on which the discovery was served] against the [need of the party which served the discovery] for, and the relevance of, the information being sought." Flanagan v. Wyndham International Inc., 231 F.R.D. 98, 102–03 (D.D.C.2005).

8. **General Objections** – Defendants' general objections to both interrogatories and requests for production will not be addressed because they are inappropriate under the Federal Rules of Civil Procedure.[1]

9. Objections should be specific, not generalized. See Local Rule 26.1(g)(3)(A). As the party resisting discovery, Defendant has the burden to clarify and explain their objections to provide factual support for such objections. Doe v. Mercy Health Corporation, 1993 WL 377064 at 3 (E.D. Penn. 1993); Martin v. Eaton Publishing Co., 85 F.R.D. 312 (E.D. Pa. 1980); Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 297 (E.D. Pa. 1980). In order to

---

[1] See Obiajulu v. City of Rochester, Department of Law, 166 F.R.D. 293 (W.D.N.Y. 1996):

Such pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded. The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the discovery rules found in the Federal Rules of Civil Procedure.

Id. at 295 (citations omitted). Starlight Int'l, Inc. v. Herlihy, 181 F.R.D. 494, 497-98 (D. Kan. 1998) (A general preliminary objection to "to the extent it may apply to particular requests for discovery" is "worthless" and does not effectively assert an objection.); Chubb Integrated Systems v. Nat'l Bank of Washington, 103 F.R.D. 52, 59-60 (D.D.C. 1984) (A burdensome objection "must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden."); Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that [an] interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory.") Burus v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593-94 (W.D.N.Y. 1966) (blanket objections are insufficient).

adequately make this showing, Defendant must file affidavits or provide other evidence that demonstrates that an undue burden exists. See e.g. Chubb Integrated Systems v. National Bank of Washington, 103 F.R.D 52, 58 (D.D.C. 1984). Otherwise the Court cannot adequately rule on the validity of the objections. Id. at 58; accord Panola Land Buyers Ass's v. Shumann, 762 F.2.d 1550, 1559 (11th Cir. 1985) (holding that a party objecting to discovery must specifically show how each discovery request is overly broad and burdensome in order for the Court to understand why the discovery requests are objectionable). Defendant in this case has not specifically stated why the interrogatories and Requests for Productions are overly broad and burdensome, and therefore fails to comply with the Eleventh Circuit's mandate in *Panola*.

10. **Interrogatories**[2]

**Interrogatory No. 1**

in interrogatory No. 1 Plaintiff seeks:

Please identify and state the full name, present address, employer, title, and occupation of all persons providing information and documents responsive to these discovery requests.

**ANSWER 1:**

Chase responds that the individual responding to these interrogatories is Joseph G Devine, Jr., Title: Legal Specialist Officer, JPMorgan Chase Bank, National Association, with the assistance of counsel. Mr. Devine may only be contacted through counsel of record.

**Plaintiff's Discussion:** There was no reason given for the omission of information from the responsive answer.

The information requested on the persons answering discovery on behalf of the Defendant is relevant as they are attesting to the factual representations contained in the answers. In interrogatory no. 1, Defendant failed to identify: Mr. Devine's address; Mr. Devine's employer; and, Mr. Devine's occupation. Mr. Devine's address is relevant in order to properly notice him for deposition. This is especially so because his jurat was signed in Kings County, New York, but his Linked-in profile states he works in Iselin, New Jersey. Knowing Mr. Devine's employer is of paramount importance, because if he is not an employee of Chase, which appears to be the case from his Linked-in profile, then he cannot answer interrogatories or discovery for Chase or his answers would be invalid.  Knowing Mr.

---

[2] Attached are copies of Defendant Chase's answers to interrogatories as "Exhibit C".

Devine's occupation is relevant and would provide a better understanding of the scope of his employment and ability to answer discovery. Further, it is unknown the extent to which Chase's counsel prepared the answers to interrogatories or if Mr. Devine merely robosigned the jurat form without inquiry into or review of the relevant information. For these reasons Plaintiff seeks better answers to interrogatory no. 1.

**Interrogatory No. 9**

in interrogatory No. 9 Plaintiff seeks:

Identify all entities that have held any type of ownership interest in the loan, note and/or mortgage since its origination; the date of assignment to each such entity; the prices paid for each assignment, and the documents that evidence the entity's legal title to the loan, note, and/or mortgage. State whether any entity identified in response to interrogatory number <<previous>> "pre-approved" the subject mortgage loan before it closed, and describe any such pre-approval process.

The protective order [DE 83] required Defendant to only answer the first sentence:

Identify all entities that have held any type of ownership interest in the loan, note and/or mortgage since its origination; the date of assignment to each such entity; the prices paid for each assignment, and the documents that evidence the entity's legal title to the loan, note, and/or mortgage.

**ANSWER 9:**

Chase objects to this interrogatory as it is outside of the scope of permissible discovery, irrelevant to the limited issue of the authenticity of the mortgage and whether Chase was the original lender, vague, ambiguous, overbroad, and unduly burdensome. Subject to these objections and the general objections, the only portion of this interrogatory that falls within the scope of permissible discovery is the identification of the original owner of the Note – Chase. The documents that identify Chase as the original lender are the Note dated December 23, 2005, and the Mortgage dated December 23, 2005, which secures the Note. Subject to these objections and the general objections, Chase will make the original Note and original Mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

**Plaintiff's Discussion:** Chase erroneously argues interrogatory no. 9 is outside the scope of permissible discovery where they were specifically ordered [DE 83] to answer the first sentence of no. 9. Chase fails to show exactly how the interrogatory no. 9 is irrelevant. Plaintiff asserts that it is relevant as to the chain of custody of ownership applied to a timeline. Because the first sentence is a specific question, it cannot be vague or ambiguous. Because the chain of ownership needs to be established it is not overbroad. Chase fails to

show how it is unduly burdensome and has provided no affidavit of undue burden. No affidavits attesting to authenticity were filed by Chase. Chase does not and cannot show how it was the original owner of the alleged Note, because as stated by Chase representative Benny Milan "the investors in the public security were overseas in China and Europe and the loan was securitized into the public security before its closing and funding, and that Chase facilitated the securitization."[3] For these reasons Plaintiff seeks better answers to interrogatory no. 9.

**Interrogatory No. 14**

in interrogatory No. 14 Plaintiff seeks:

Identify the mark which may be found on the first page upper left of both on the Docket Entry 58-1 Exhibit A and Docket Entry 64 (reproduced below), and describe completely what it is, what both the barcode and the number stands for, when exactly it was affixed to the document, and identify what documents, files or databases it connects to or points to, their locations and who controls and has access to them.



**ANSWER 14:**

Chase objects to this interrogatory as it is outside the scope of permissible discovery, appears to seek confidential and proprietary information, and is irrelevant. The identification mark is wholly irrelevant to the authenticity of the authenticity of the Mortgage or whether Chase was the original lender. Additionally, the request is vague, ambiguous, overbroad, and unduly burdensome, and seeks the disclosure of confidential, privileged, and proprietary information. Subject to these objections and general objections, the Mortgage, dated December 23, 2005, is executed by Plaintiff in favor of Chase, and the mark is contained on a sticker that was placed on the original Mortgage. Chase will make the original Mortgage available to view at the offices of Chase's counsel at a mutually agreeable time.

**Plaintiff's Discussion:** Chase erroneously argues interrogatory no. 14 is outside the scope of permissible discovery where they were specifically ordered [DE 83] to answer no. 14. Chase argues that interrogatory no. 14 seeks confidential and proprietary information, where Plaintiff early on drafted and offered a joint stipulated protective order in anticipation of instances just like this one, but Chase refused to entertain the benefits of a joint stipulated protective order. *See* DE 39. Chase contends no. 14 is irrelevant but fails to show exactly how. No. 14 is relevant to Plaintiff's arguments of the loan being a pre-sold table funded

---

[3] *See* attached "Exhibit D", Affidavit of John Pinson ¶14.

loan, one funded by investors. Plaintiff asserts that this interrogatory is relevant as to the chain of custody of ownership applied to a timeline. Because the interrogatory is a specific question, it cannot be vague or ambiguous. Because the chain of ownership needs to be established it is not overbroad. Chase fails to show how it is unduly burdensome and has provided no affidavit of undue burden. No affidavits attesting to authenticity were filed by Chase.

Chase indicated the mark is contained on a sticker that was placed on the alleged mortgage, but fails to answer exactly when it was placed on it, by whom it was placed, for what purpose it was placed, and what information it points to; questions all relevant to Plaintiff's arguments.

Further, Chase cannot explain why the mark is covered up with whiteout tape on the alleged original copy presented to Plaintiff and viewed by him on December 12, 2014, at 3 PM in the offices of Chase's counsel in Ft. Lauderdale, spoiling the alleged document. For these reasons Plaintiff seeks better answers to interrogatory no. 14.

11. In order to receive the protection of attorney-client privilege, a communication must, *inter-alia*, be made for the purpose of securing primarily either (i) an opinion on law, (ii) legal services, or (iii) assistance in some legal proceeding. The privilege does not extend to the provision of business or other non-legal advice simply because a lawyer happens to be involved. Communications with a lawyer that relate primarily to non-legal purposes, for example, business, technical or corporate public relations purposes are not privileged.

12. The party asserting a privilege has the burden of establishing the privilege. The Federal Rules of Civil Procedure require that a party's claim of privilege shall be made expressly and "supported by a description of the nature of documents ... that is sufficient to enable the demanding party to contest the claim." Here, the Defendant has not even tried to establish the privilege and did state "there is no privilege log". *See* attached "Exhibit E".

Local Rule 26.1g(C) states:

> This rule requires preparation of a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection

13. Why would a Defendant claim privilege and objections after being granted the protective order they desired?  The only logical explanation is to delay or avoid discovery!

14. **<u>Requests for Production</u>**[4]

**Request for Production No. 2:**

     in request for production No. 2 Plaintiff seeks:

Any and all documents, not covered by another section of this request, that were purportedly signed by John Pinson which otherwise relate or refer to the transactions between the CHASE and Plaintiff.

**Response:**

Chase objects to this request as outside of the scope of permissible discovery. Further, this request is vague with respect to the terms "which otherwise relate or refer to the transactions between the CHASE and Plaintiff." Subject to and without waiving these objections and the general objections, Chase will produce copies of the Note and Mortgage signed by Plaintiff, which show that Chase was the original lender. Chase will make the original note and original mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

**Plaintiff's Discussion:** Chase erroneously argues request for production no. 2 is outside the scope of permissible discovery where they were specifically ordered [DE 83] to answer no. 2. Defendants erroneously contend this request is vague, but Plaintiff argues it is specific to all documents he signed related to the transaction and this would include, among other things, any application for credit and other federally mandatory disclosures.

    In General Objection no. 3 Chase claims "any other applicable privilege" but provides no basis for this claim of privilege. Plaintiff requested a privilege log from Chase's counsel and was told "there is no privilege log"; this appears to be inconsistent to the FRCP and Local Rules.

    On December 12, 2014, at 3 PM, Plaintiff viewed alleged documents at Chase counsel's office. The only documents produced were an alleged mortgage and note; no other documents. The alleged documents presented appear distinctly different and include whiteout tape on each page covering portions of the documents and hand written notations that appear nowhere on any other alleged documents presented. Particularly, the mark Plaintiff questioned in, the Court ordered, interrogatory number 14 was covered-up with whiteout tape and loan numbers were covered up, with no explanations why. No explanation was offered to these questions of fact of these alleged documents being different, altered, and/or spoiled.

---

[4] Attached are copies of Defendant Chase's answers to requests for production as "Exhibit F".

In no way could the documents shown to Plaintiff be the alleged original note and mortgage as Plaintiff plainly observed multiple locations on the documents presented that were covered-up with whiteout tape. For defendant to state to this Court or any other person that it provided the original note for viewing to the Plaintiff is almost laughable. Plaintiff dictated extensive notes immediately upon leaving the viewing, and before leaving the building, regarding the alleged original note and mortgage so as to capture in great detail his observations while viewing the documents. For these reasons, Plaintiff seeks all documents requested in request for production no. 2 and the privilege log for documents withheld on the claims of privilege.

**Request for Production No. 5:**

in request for production No. 5 Plaintiff seeks:

Any agreement(s) that concerned, related to, encompassed, referred to or included the Plaintiffs loan, note and/or mortgage, including but not limited to any warehouse lines of credit, any bulk sales, any repurchase agreements, any investment agreements, any securitization agreements, any credit agreements, and/or any loan sale agreements.

**Response:**

Chase objects to this request as outside of the scope of permissible discovery. The Court's October 2, 2014 Order restricted discovery to "the limited issue of the authenticity of the mortgage and whether Chase was the original lender, as these are the only issues raised by the submission of the certified copy of the mortgage by Defendants." See DE 75, Pg. 2. Subject to and without waiving this objection and the general objections, Chase will produce copies of the Note and Mortgage signed by Plaintiff, which show that Chase was the original lender. Chase will make the original note and original mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

**Plaintiff's Discussion:** Chase erroneously argues request for production no. 5 is outside the scope of permissible discovery where they were specifically ordered [DE 83] to answer no. 5. Chase argues that producing an alleged original note and mortgage is all that is required, yet based on the facts in this case where Chase does not deny the fact that the loan was sold to a third party and Chase fails to address to whom the loan was sold and when the loan was sold. Chase has failed to provide any evidence whatsoever to account for where the alleged documents come from, where they have been, who they were obtained from, yet they claim privilege in their discovery answers. There is no statement from the alleged owner of the

alleged documents attesting to them in any manner. To the extent that Chase previously alleged the Note was lost or destroyed, Chase has not accounted for how it was recovered and the circumstances surrounding this loss and recovery.

In General Objection no. 3 Chase claims "any other applicable privilege" but provides no basis for this claim of privilege. Plaintiff requested a privilege log from Chase's counsel and was told "there is no privilege log"; this appears to be inconsistent with the FRCP and Local Rules.

On December 12, 2014, at 3 PM, Plaintiff viewed alleged documents at Chase counsel's office. The only documents produced were an alleged mortgage and note; no other documents. The alleged documents presented appear distinctly different and include whiteout tape on each page covering portions of the documents and hand written notations that appear nowhere on any other alleged documents presented. Particularly, the mark Plaintiff questioned in the Court ordered interrogatory number 14 was covered up with whiteout tape and loan numbers were covered up, with no explanations why. No explanation was offered to these questions of fact of these alleged documents being different, altered, and/or spoiled.

In no way could the documents shown to Plaintiff be the alleged original note and mortgage as Plaintiff plainly observed multiple locations on the documents presented that were covered up with whiteout tape. For defendant to state to this Court or any other person that it provided the original note for viewing to the Plaintiff is almost laughable. Plaintiff dictated extensive notes immediately upon leaving the viewing, and before leaving the building, regarding the alleged original note and mortgage so as to capture in great detail his observations while viewing the documents. For these reasons, Plaintiff seeks all documents requested in request for production no. 5 and the privilege log for documents withheld on the claims of privilege.

15. In Plaintiff's rule 56d motion and reply brief for discovery, he indicated the need for establishing a timeline related to alleged documents. Defendants do not deny stating "[y]our loan was sold into a public security" [DE 52 ¶28, appx B] yet no alonge appears on or is attached to any alleged documents. Any alonge would become part of the alleged document. Defendant has not accounted for where the alleged documents come from, where they have been, who they were obtained from, yet they claim privilege in their discovery answers.

There is no statement from the alleged owner of the alleged documents attesting to them in any manner. Courts have found that the mortgage industry actively manufactured documents to submit to courts i.e. by Lender Processing Services central to the robosigning scandal. Plaintiff's inquiry here is most certainly a legitimate request for documentation in light of the discovery of rampant manufacturing of false mortgage documentation, especially in Florida.

16. Plaintiff did request a copy of the privilege log and Defendant's counsel replied "there is no privilege log". *See* attached "Exhibit E". This appears contrary to the rules where privilege is claimed. Why have they produced multiple sets of alleged documents that appear to be different, altered, or spoiled?

17. Further, Mr. Joseph G. Devine, Jr., answering interrogatories for Defendant, appears to not work for Chase but to be a leased employee employed by a third party company, Tower Legal Solutions. *See* "Exhibit G". This renders any interrogatory responses invalid and worthless. Mr. Devine did not answer who he is employed by and does not show that he was appointed an officer of Defendant Chase by resolution of its Board of Directors.

18. The Federal Rules state in: FRCP Rule 33:

> 33(b) ANSWERS AND OBJECTIONS. Responding Party. The interrogatories must be answered: (B) if that party is a public or private corporation ... by any officer or agent, who must furnish the information available to the party.

19. Black's Law Dictionary Seventh Edition offers the following definitions:

> **Officer.** In corporate law, the term refers especially to a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as CEO, president, secretary, or treasurer.

> **Corporate Agent.** An agent authorized to act on behalf of a corporation; broadly, all employees and officers who have the power to bind the corporation.

20. Mr. Devine did not answer who he is employed by and does not show that he was appointed an officer of Defendant Chase by resolution of its Board of Directors or as an authorized agent of Chase. This renders any interrogatory responses invalid and worthless.

21. Plaintiff clearly set out six arguments for needing discovery which specifically identify the relevant information that Plaintiff seeks to obtain through discovery that would defeat the MSJ. See DE 74 ¶15-20. They are as follows:

In the first instance, Defendants argue Plaintiff has no need for the name of the public security that the loan was sold to. Plaintiff contends this is not so. Plaintiff contends that it is only the owner of the loan, the public security, that can testify to who the investors in the security are; "no owner of the loan security has identified specifically who the investors are who own the unnamed public security that owns the loan, and have produced no affidavit by a competent person duly authorized by the unnamed public security and attesting to the same."[5] It is only the owner of the loan, the public security, that can testify to the contractual delegation of its management; "Defendants have failed to show agreements authorizing CPCC to manage the unknown security that owns the loan and have produced no affidavit by a competent person duly authorized and attesting to the same."[6] It is only the owner of the loan, the public security, that can testify to the contractual delegation of servicing to Chase from CPCC; "Defendants have failed to show any agreement authorizing Chase to act on behalf of CPCC and have produced no affidavit by a competent person duly authorized and attesting to the same."[7] Here Defendants rely only on statements of council, mere hearsay and conjecture, and it is problematic that Defendants have provided no affidavits supporting their position and no competent evidence is found in the record supporting their position. Defendants refusal to identify the public security obfuscates the facts and hides the securitization mechanism behind a curtain. Thus, genuine dispute of material fact exists and discovery is warranted.

In the second instance, Defendants argue Plaintiff has no need of discovery into the exhibit and documents filed by Defendants and disputed by Plaintiff. Plaintiff contends this is not so. "Defendants have produced no affidavit, sworn and attested to by a responsible party legally authorized to act on behalf of the Defendants, that verifies or supports the exhibit or the document filed by Defendants in support of their motion to dismiss."[8] "Plaintiff objects to the exhibit and document as hearsay."[9] Arguendo if it is the original document, then Plaintiff states that changes, additions or modifications were made to the document after execution and before recordation, and thus these improper changes could render the document void. Specifically the "Plaintiff states he did not sign any document with this mark on it which may be found on the first page upper left of both on the Exhibit and certified copy of the document:



this number on the left side "4261886+1" is unknown to Plaintiff."[10] It is generally known that private label registration systems similar to MERS exist and that a fact question remains as to what this mark is and is it a registration system mark. Arguendo if the mark was affixed to the document after execution then the document has been altered, and further, if the mark was affixed to the document after execution and before recordation the inference arises that the loan was securitized and since this document

---

[5] *See* attached "Exhibit D", Affidavit of John Pinson ¶8
[6] *See* attached "Exhibit D", Affidavit of John Pinson ¶9.
[7] *See* attached "Exhibit D", Affidavit of John Pinson ¶10.
[8] *See* attached "Exhibit D", Affidavit of John Pinson ¶11.
[9] *See* attached "Exhibit D", Affidavit of John Pinson ¶12.
[10] *See* attached "Exhibit D", Affidavit of John Pinson ¶13.

appears executed on December 23, 2005, and recorded on January 10, 2006, the events that transpired in the time in-between warrant discovery as the inference is that the loan was securitized and funded by the unknown investors in the unknown security that owns the loan. This goes back to need for discovery, best addressed to the public security, to determine when the loan was placed into the security and the timeline of events that transpired. There is a genuine dispute of material fact.

In a third instance, Defendants contend that Chase was the original creditor, but Plaintiff asserts, based on the above arguendo, that if the loan was securitized and funded by the investors in the security, then Chase was never the original creditor and as such Chase would not be excluded as a debt collector under §1692(a)(6)(f) or it's subdivisions. Moreover, arguendo if Defendants rely upon the exhibit and document Defendants filed into this action, which warranted the conversion of the 12(b)(6) motion into a summary judgment motion, then the Defendants are attempting to rely on a "security instrument" and §1692(a)(6) states in part that "for the purpose of section 1692f (6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests" and thus Defendants would be considered debt collectors under the FDCPA. As a side note, the FCCPA applies to both original creditors and third parties.

In a fourth instance. In a conversation at the time of application for loan modification, "Plaintiff was told by Chase representative Benny Milan verbally that the investors in the public security were overseas in China and Europe and the loan was securitized into the public security before its closing and funding, and that Chase facilitated the securitization."[11] Thus indicating Chase was not the original creditor or originator and contrary to Defendants position. This evidences a genuine dispute of material fact and warrants discovery.

In a fifth instance, Defendants have asserted that JPMorgan Chase Bank NA was the original servicer and "Plaintiff states that Chase Home Finance LLC was the servicer."[12] This fact is in dispute. To support his contention Plaintiff appends communications received from Chase Home Finance LLC evidencing his contention. *see* Exhibit "B" & "C".[13] "Plaintiff received no notice of transfer of servicer."[14] A genuine issue of material fact exists and discovery is warranted into what transpired and when.

In a sixth instance, the Appendix to His SAC Plaintiff included the Qualified Written Request ("QWR") [DE 54 app A] he sent to Chase. The in the QWR he indicated that "Plaintiff was told he needed to become delinquent in order to apply for any loan modification."[15] The appended statements noted above from Chase Home Finance LLC indicate arrearages. The appended letter from Watson dated June 24, 2011, which is an attempt to collect, indicated Watson "represents BANK ONE FINANCIAL SERVICES,

---

[11] *See* attached "Exhibit D", Affidavit of John Pinson ¶14.
[12] *See* attached "Exhibit D", Affidavit of John Pinson ¶15.
[13] *See* DE 74 Exhibits B & C.
[14] *See* attached "Exhibit D", Affidavit of John Pinson ¶16.
[15] *See* attached "Exhibit D", Affidavit of John Pinson ¶17.

INC, CHASE HOME FINANCE, the holder of the mortgage" and the file number is "11-13285". *see* Exhibit "D". The number "11-13285" is hand written at the bottom right of the first page of Defendants Exhibit to its Motion to Dismiss. *See* DE 58-1. This indicated Chase Home Finance LLC was servicer, and if arguendo JPMorgan Chase Bank NA became servicer at later date they were a subsequent servicer, notwithstanding the fact that "Plaintiff never received any transfer of servicer notice"[16], and this warrants discovery to determine facts. It is unknown what role Bank One played and this warrants discovery also. Regardless, Defendants have made representations to the court which are contrary to these exhibits provided by Plaintiff which creating a genuine issue of material fact and warrants discovery.

*See* DE 74 ¶15-20.

22. The Plaintiff is at a total loss as to why the Defendant's council seeks to cause delay. Defendant was fully apprised as to why Plaintiff was requesting discovery. There are three attorneys on that work on behalf of the Defendant. The disturbing part is that in both the Interrogatories and the Request for Production, the Defendant moved for the protective order to answer specific discovery requests, and then after receiving the order it desired, Defendant avoids substantive answers and proceeds to answer with unfounded objections, general objections and claims of privilege instead of providing the ordered answers to the discovery.

23. Moreover, if Defendants sought to only be required to produce the alleged note and mortgage, then why did they not select requests for productions numbers: 12 "Make available for viewing the original of the loan document (i.e. Note) executed by the plaintiff together with any endorsements and/or allonges" and 13 "Make available for viewing the original of the security instrument (i.e. Mortgage) executed by the plaintiff together with any endorsements and/or allonges". Instead they selected numbers 2 "Any and all documents, not covered by another section of this request, that were purportedly signed by John Pinson which otherwise relate or refer to the transactions between the CHASE and Plaintiff" and number 5 "Any agreement(s) that concerned, related to, encompassed, referred to or included the Plaintiff's loan, note and/or mortgage, including but not limited to any warehouse lines of credit, any bulk sales, any repurchase agreements, any investment agreements, any securitization agreements, any credit agreements, and/or any loan sale agreements", yet only produce a spoiled and whiteout laden alleged note and mortgage and

---

[16] *See* attached "Exhibit D", Affidavit of John Pinson ¶18.

claim privilege and objections.  Defendant did not produce any other documents in the two requests.

24. Finally, if the Court intended to only have Defendants produce the alleged note and mortgage, then why did it not say so in its Order [DE 75]. Instead the order states "the Court will permit discovery into the limited **issue** of the authenticity of the mortgage and whether Chase was the original lender" [DE 75 pg. 2]. The order clearly states "into the limited **issue**" indicating other relevant information; information Defendants have either failed to produce, have claimed privilege on, or do not have. Plaintiff's requests are for relevant information which could lead to the discovery of admissible evidence material to the issues in this case.

## CONCLUSION

25. "Plaintiff was told by Chase representative Benny Milan verbally that the investors in the public security were overseas in China and Europe and the loan was securitized into the public security before its closing and funding, and that Chase facilitated the securitization." (affd ¶14) Through the Court ordered discovery (DE 75) Plaintiff is trying to get all the pieces of the puzzle to substantiate statements made by Milan to him. Therefore, discovery is not a wild fishing trip! Plaintiff has a very reasonable cause to seek those specific answers and documents that would document everything in the statements Milan made to Plaintiff. In this instance, to determine if Chase was a facilitator of the transaction or the actual lender.

26. These questions are not something conjured up in Plaintiff's mind but something said directly to him by Chase representative Benny Milan. This is the reason Plaintiff seeks the relevant discoverable information.

27. Plaintiff is merely attempting to determine whether Chase acted as a facilitator of transactions or was an actual lender. Without adequate discovery to determine the exact facts, surrounding these matters, which are based on the questions arising directly from statements from Chase representative Benny Milan, plaintiff cannot reasonably be expected to argue what facts are and are not genuinely disputed in good faith. There is good reason for the plaintiff to seek adequate discovery. Adequate discovery affords a safety net for parties that need to gather facts essential to resist a motion for summary judgment, and the Court should not allow defendants to shroud the truth behind the curtain of securitization.

## CERTIFICATE OF GOOD FAITH

Pursuant to Local Rule 7.1(a)(3), Plaintiff pro se hereby certifies that on December 9, 2014, he conferred with counsel for the Defendant by electronic mail, and that on December 10, 2014, counsel for the Defendant stated he is opposed to the relief requested.

### REQUESTED RELEIF

WHEREFORE, the Plaintiff pro se, John Pinson, respectfully moves this Honorable Court to issue an Order:

    1) granting his motion to Compel;

    2) provide better answers to Interrogatories No's. 1, 9, & 14;

    3) order Chase to provide immediately copies of the complete information requested by the Plaintiff's Request for Production No's. 2 & 5;

    4) order Chase to immediately provide a privilege log for the remaining documents that it has withheld under claim of privilege.

    5) The Plaintiff also requests that the Court order Chase to produce, within ten (10) days of its order, a privilege log for the documents Chase claimed to be privileged as this will show whether Chase intended to delay discovery.

In the alternative to requests 4 & 5 above, Chase should provide the contested documents to the court for *in camera* review. In this case, where the volume of documents currently contested is not large and the defendant has not carried its burden of establishing privilege, *in camera* review to determine whether the documents are in fact privileged is appropriate. *See*, e.g., In re Fish and Neave, 519 F.2d 116, 118 (8th Cir. 1975); Continental Coatings, 50 F.R.D. at 384; 5 Moore ¶45.05(2), at 1723-24. (documents which are claimed to be privileged should normally be produced for inspection by the judge in camera.").


Dated: December 30, 2014          Respectfully Submitted,

                          John Pinson, *pro se*
                          526 Westwood Road
                          West Palm Beach, Florida 33401
                          561-329-2524
                          john@pinson.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed with the Clerk of the Court, and is served by CM/ECF upon entry into the docket on all counsel, by the mandatory CM/ECF system, on the Service List below.

Signed December 30, 2014

John Pinson

### Service List

Thomas H Loffredo, Esq.
tom.loffredo@gray-robinson.com
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1000
Ft. Lauderdale, FL 33301
Phone: (954) 761-8111
Fax: (954) 761-8112
Attorney for Defendants:
JPMorgan Chase Bank, N.A.;
CPCC Delaware Business Trust,
a/k/a CPCC Delaware Statutory Trust;
JPMorgan Chase & Co.

Michael D. Lessne, Esq.
Michael.lessne@gray-robinson.com
Gray Robinson, P.A.
401 E. Las Olas Blvd., Ste. 1000
Ft. Lauderdale, FL 33301
Phone: (954) 761-8111
Fax: (954) 761-8112
Attorney for Defendants:
JPMorgan Chase Bank, N.A.;
CPCC Delaware Business Trust,
a/k/a CPCC Delaware Statutory Trust;
JPMorgan Chase & Co.

Attached:
Exhibits A-G
pages total 34

# Exhibit "A"



## John D Pinson

**From:**           John D Pinson <john@pinson.com>
**Sent:**           Tuesday, December 09, 2014 11:55 AM
**To:**           'Michael D. Lessne, CPA'
**Cc:**           'Tom Loffredo'; 'Jackie Johnson'
**Subject:**       RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Scheduling to
                   View Original Note and Original Mortgage

**Importance:**   High

Mr. Lessne,

Yes, you must be busy, but I need to move this case forward.

Discovery was over December 6, but because it was a Saturday, as you say, it extended to Monday December 8, 2014. I expected to be able to view whatever documents you have for me to view when the Discovery was due, or the day after, which is Today, not next week. It was due then, you should have it now. You have a large firm, someone should have been available to show it to me yesterday when it was due, or today.

The responses contain blanket, non-specific objections which are contrary to Local Rule 26.1(g)(3)(A).

Part of what you attached to the Production responses appears to be the same as that which you filed with the Motion to Dismiss [DE 58-1], which I have already disputed and moved to strike. If you have other documents, please scan them and send as a pdf today or otherwise I will have to assume that you have nothing in hand today.

Further, as you have claimed privilege on all the requests for production and all of the interrogatories answered, please provide me with  copy of your privilege log today per Local Rule 26.1(g)(3)(B).

Please understand that if you can not comply with these specific request I will be forced to file a motion to compel or in-camera review.

Additionally, I will be at your office on Friday, December 12 in the afternoon at 1:30 p.m., as you have offered.

Finally, since do I intend to depose Mr. Joseph G. Devine, Jr., the respondent to the interrogatories,  I intend to file an enlargement of time for discovery. I note that you failed to provide an address for him as requested in Interrogatory #1.

Sincerely,

John Pinson
561-329-2524
john@pinson.com

---

**From:** Michael D. Lessne, CPA [mailto:Michael.Lessne@gray-robinson.com]
**Sent:** Monday, December 08, 2014 12:03 PM
**To:** John D Pinson
**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Scheduling to View Original Note and Original Mortgage

2/34

Mr. Pinson, I acknowledge your emails.  The dates you have proposed do not work for my schedule.  I will make myself available for you to view the original note and original mortgage in my office on Friday, December 12 in the afternoon after 1 p.m.; on Monday, December 15 in the morning between 8 a.m.- 11 a.m.; and Tuesday, December 16, in the afternoon after 1 p.m.  Please let me know which date is best or if you need me to propose additional dates for later on next week.

Thank you.

**Michael D. Lessne, CPA | Senior Associate**
**G R A Y | R O B I N S O N**

401 East Las Olas Blvd., Suite 1000 | Fort Lauderdale, Florida 33301
**T:** 954-761-8111 | **F:** 954-761-8112
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

**From:** John D Pinson [mailto:john@pinson.com]
**Sent:** Monday, December 08, 2014 11:26 AM
**To:** Michael D. Lessne, CPA
**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Responses to Discovery Requests
**Importance:** High

2nd. Request!

Please advise!

**From:** John D Pinson [mailto:john@pinson.com]
**Sent:** Sunday, December 07, 2014 11:44 PM
**To:** 'Michael D. Lessne, CPA'
**Cc:** 'Tom Loffredo'; 'Jackie Johnson'
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Responses to Discovery Requests
**Importance:** High

Mr. Lessne,

Based on your communication, I want to view whatever documents that you have to show me.

I may be able to come to your office in Ft. Lauderdale tomorrow, Monday, between 2 and 3:30 PM, but I would prefer to come on Tuesday, December 9, 2014, and should be available between 10 AM and 3:30 PM.

Please advise!

Sincerely,

John Pinson
561-329-2524
john@pinson.com

**From:** Michael D. Lessne, CPA [mailto:Michael.Lessne@gray-robinson.com]
**Sent:** Friday, December 05, 2014 3:17 PM
**To:** John D Pinson



**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Responses to Discovery Requests
**Importance:** High

Dear Mr. Pinson,

Attached please find copies of (a) JPMorgan Chase Bank, N.A.'s response to your Request for Production (limited to the responses required by the Court's Order Granting Defendants' Motion for Protective Order [DE 83]) and the responsive documents and (b) JPMorgan Chase Bank, N.A.'s answer to your interrogatories (as limited by DE 83). The answer to interrogatories are being shipped overnight to my office, and I will send you the original answer when I receive it on Monday.

Thank you.

Sincerely,

**Michael D. Lessne, CPA | Senior Associate**
**G R A Y | R O B I N S O N**

401 East Las Olas Blvd., Suite 1000 | Fort Lauderdale, Florida 33301
**T:** 954-761-8111 | **F:** 954-761-8112
<u>E-mail</u> | <u>Website</u> | <u>Bio</u> | <u>vCard</u>

**<u>Facebook</u> | <u>LinkedIn</u> | <u>Twitter</u>**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Please be advised that this law firm may be acting as a debt collector and is attempting to collect a debt and any information provided will be used for that purpose.



# Exhibit "B"



```
CFN 20060018292
OR BK 19781 PG 0360
RECORDED 01/10/2006 15:29:02
Palm Beach County, Florida
AMT 202,000.00
Deed Doc 707.00
Intang 404.00
Sharon R. Bock, CLERK & COMPTROLLER
Pgs 0360 - 365; (6pgs)
```

**WHEN RECORDED MAIL TO:**
JPMorgan Chase Bank, N.A.
Retail Loan Servicing KY2-1606
P.O. Box 11606
Lexington, KY 40576-1606

PINSON, JOHN                                           '59
DEED OF TRUST / MORTGAGE

This Mortgage prepared by:

Name: BURNADETTE RAMIREZ, DOC PREP SPECIALIST
Company: JPMorgan Chase Bank, N.A.
Address: 1820 E SKY HARBOR CIRCLE SOUTH , PHOENIX , AZ 850034

## MORTGAGE

**MAXIMUM LIEN.** The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $202,000.00, plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.

**THIS MORTGAGE** dated December 23, 2005, is made and executed between JOHN D PINSON, A SINGLE MAN, whose address is 526 WESTWOOD ROAD, WEST PALM BEACH, FL 33401 (referred to below as "Grantor") and JPMorgan Chase Bank, NA, whose address is 1111 Polaris Parkway, Columbus, OH 43240 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the **"Real Property"**) located in PALM BEACH County, State of Florida:

LOT 6 AND 7, BLOCK 8, SUNSHINE PARK ADDITION NO. 2, AMENDED PLAT, ACCORDING TO THAT CERTAIN PLAT AS RECORDED IN PLAT BOOK 13, PAGE 76, PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA. 74-43-28-08-008-0060.

**The Real Property or its address is commonly known as 526 WESTWOOD ROAD, WEST PALM BEACH, FL 33401. The Real Property tax identification number is 74-43-28-08-008-0060.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $202,000.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Grantor's interest in any or all of the Property is foreclosed, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

6/34

**MORTGAGE**
(Continued)

Loan No: ⸻                                                                              Page 2

---

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and permissible fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Property also will secure payment of these amounts. The rights provided for in


7/34

| Loan No: | **MORTGAGE**<br>(Continued) | Page 3 |
|---|---|---|

this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall assemble the Personal Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance,



Loan No: _____

**MORTGAGE**
(Continued)

Page 4

or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or Grantor fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** To the extent not prohibited by applicable law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights, shall become a part of the loan payable on demand, and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate the automatic stay or injunction) and appeals, to the extent permitted by applicable law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telecopsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender. Notwithstanding the foregoing, the address for notice for Lender is:  JPMorgan Chase Bank, N.A., P.O. Box 901008, Fort Worth, TX 76101-2008.

**IDENTITY OF LENDER.** Lender is JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, with its main offices located in Columbus, Ohio.

**NON-WAIVER.** A waiver by any party of a breach of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision.

**SUPPLEMENT TO PERSONAL PROPERTY DEFINITION.** It is the intention of Lender only to take a security interest in and retain a lien on that personal property considered fixtures under the Uniform Commercial Code as adopted in the jurisdiction where this Mortgage is filed of record as same may be amended from time to time or such other statute of such jurisdiction that defines property affixed to real estate and no other personal property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable federal or state law.



Loan No: _____

# MORTGAGE
(Continued)

Page 5

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This agreement will be governed by and interpreted in accordance with federal law and the laws of the State of Florida except for matters related to: (1) interest and the exportation of interest, which will be governed by and interpreted in accordance with federal law (including, but not limited to, statutes, regulations, interpretations, and opinions) and the laws of the State of Ohio; and (2) the validity and enforcement of Lender's security interest in the Property, which will be governed by the laws of the State where the Property is located. However, if there ever is a question about whether any provision of the agreement is valid or enforceable, the provision that is questioned will be governed by whichever of the governing state or federal laws that would find the provision to be valid and enforceable. The loan transaction which is evidenced by this and other related documents has been approved, made and funded, and all necessary documents have been accepted by Lender in the State of Ohio.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means JOHN D PINSON, and all other persons and entities signing the Note.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means JOHN D PINSON.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. However, the term "Indebtedness" is subject to the limitations identified in the Maximum Lien section of this Mortgage.

**Lender.** The word "Lender" means JPMorgan Chase Bank, NA, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 23, 2005, **in the original principal amount of $202,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The final maturity date of the Note is January 1, 2036.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.



Loan No: _____   **MORTGAGE**
(Continued)   Page 6

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
JOHN D PINSON, Individually

WITNESSES:

X _____   Jay Crew

X _____   Kenneth R Mursel

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Florida_        )
                          ) SS
COUNTY OF _Palm Beach_    )

The foregoing instrument was acknowledged before me this _23rd_ day of _December_ , 20 _05_
by JOHN D PINSON, who is personally known to me or who has produced _Drivers License_ as identification and did
/ did not take an oath.

_____
(Signature of Person Taking Acknowledgment)

_Jason H. Bonner_
(Name of Acknowledger Typed, Printed or Stamped)

_Private Banker_
(Title or Rank)

_____
(Serial Number, if any)

JASON H BONNER
Comm# DD0468613
Expires 9/6/2009
Bonded thru (800)432-4254
Florida Notary Assn., Inc.

LASER PRO Lending, Ver. 5.19.40.06, Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - FL/GA K:\CFI\LPL\G03\PROFILE\PL\G03.FC  TR-4459 PR-9  FA-0J100011

11/34

# Exhibit "C"



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOHN PINSON,

                Plaintiff,                          Case No. 9:13-cv-80720-KAM

_____/

v.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, a financial institution;
CPCC DELAWARE BUSINESS TRUST a/k/a
CPCC DELAWARE STATUTORY TRUST,
an unknown entity; and JPMORGAN CHASE
& CO., a publicly held company,

                Defendants.

_____/

## DEFENDANT JPMORGAN CHASE BANK, NATIONAL ASSOCIATION'S ANSWER TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

    Defendant, JPMorgan Chase Bank, National Association ("Chase"), answers Plaintiff's First Set of Interrogatories propounded on October 21, 2014, as follows:

### General Objections

    1.      Chase objects to Plaintiff's First Set of Interrogatories to the extent that it requires Chase to respond beyond the scope of permissible discovery. The Court's October 2, 2014 Order restricted discovery to "the limited issue of the authenticity of the mortgage and whether Chase was the original lender, as these are the only issues raised by the submission of the certified copy of the mortgage by Defendants." *See* DE 75, Pg. 2. On November 26, 2014, the Court entered an Order Granting Defendants' Motion for Protective Order [DE 77], providing that Chase has 10 days from the entry of the Order (through December 8 as a result of December

1



6 being a Saturday) to respond to Interrogatory #1, the first sentence of Interrogatory #9, and Interrogatory #14.

2.      Chase objects to the extent that Plaintiff's Interrogatories seek the disclosure of attorney-client privileged communications, privileged work product or any other information or documents which are irrelevant, confidential, privileged or beyond the scope of information or documents reasonably calculated to lead to the discovery of admissible evidence.

3.      The answers to interrogatories set forth herein are based upon information known or believed by Chase at the time it prepared these responses. Chase reserves the right to amend its answers set forth herein as discovery proceeds in this matter.

4.      Chase specifically reserves the right to challenge the competency, relevancy, materiality, and admissibility of, or to object on any ground to the use of, information or identification of documents set forth herein in any subsequent proceeding, trial, or any other action.

## **Specific Objections and Responses**

**Interrogatory No. 1**: Please identify and state the full name, present address, employer, title, and occupation of all persons providing information and documents responsive to these discovery requests.

**Answer:** Chase responds that the individual responding to these interrogatories is Joseph G. Devine, Jr., Title: Legal Specialist Officer, JPMorgan Chase Bank, National Association, with the assistance of counsel. Mr. Devine may only be contacted through counsel of record.

**Interrogatory No. 9**: Identify all entities that have held any type of ownership interest in the loan, note and/or mortgage since its origination; the date of assignment to each such entity;



the prices paid for each assignment, and the documents that evidence the entity's legal title to the loan, note, and/or mortgage. State whether any entity identified in response to interrogatory number <<previous>> "pre-approved" the subject mortgage loan before it closed, and describe any such pre-approval process.

**Answer:** Chase objects to this interrogatory as it is outside of the scope of permissible discovery, irrelevant to the limited issue of the authenticity of the mortgage and whether Chase was the original lender, vague, ambiguous, overbroad, and unduly burdensome. Subject to these objections and the general objections, the only portion of this interrogatory that falls within the scope of permissible discovery is the identification of the original owner of the Note—Chase. The documents that identify Chase as the original lender are the Note dated December 23, 2005, and the Mortgage dated December 23, 2005, which secured the Note. Subject to these objections and the general objections, Chase will make the original Note and original Mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

**Interrogatory No. 14:** Identify the mark which may be found on the first page upper left of both on the Docket Entry 58-1 Exhibit A and Docket Entry 64 (reproduced below), and describe completely what it is, what both the barcode and the number stands for, when exactly it was affixed to the document, and identify what documents, files or databases it connects to or points to, their locations and who controls and has access to them.

4261886+1                00496490010759
PINSON, JOHN
DEED OF TRUST / MORTGAGE

3



**Answer:** Chase objects to this interrogatory as it is outside of the scope of permissible discovery, appears to seek confidential and proprietary information, and is irrelevant. The identified mark is wholly irrelevant to the authenticity of the Mortgage or whether Chase was the original lender. Additionally, the request is vague, ambiguous, overbroad, unduly burdensome, and seeks the disclosure of confidential, privileged, and proprietary information. Subject to these objections and the general objections, the Mortgage, dated December 23, 2005, is executed by Plaintiff in favor of Chase, and the mark is contained on a sticker that was placed on the original Mortgage. Chase will make the original Mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

## VERIFICATION

Based on my personal knowledge and/or the corporate sources of information available to me, I hereby swear and believe the facts set forth in the foregoing document are true to the best of my knowledge.

JPMorgan Chase Bank, National Association

Joseph G. Devine, Jr.
Title: Legal Specialist Officer
Date: _December 5, 2014_

STATE OF NEW YORK)
                              ss.
COUNTY OF KINGS)

SWORN TO and SUBSCRIBED before me by _Joseph G. Devine Jr._ on this _5th_ day of _December_, 2014.

_____
Notary Public

My Commission Expires: _6/4/2015_

ELIZABETH MARIE DREW
Notary Public, State of New York
No. 02DR6167863
Qualified in New York County
Commission Expires June 4, 2015

Personally Known ✓
OR Produced Identification ___
Type of Identification Produced ___

16/34

4

Dated: December 8th, 2014.

**GRAYROBINSON, P.A.**
401 E. Las Olas Blvd., Suite 1850
Fort Lauderdale, FL 33301
Telephone:   (954) 761-8111
Facsimile:   (954) 761-8112
*Counsel for Defendants*

_____
Thomas H. Loffredo
Fla. Bar No. 870323
Michael D. Lessne
Fla. Bar No. 73881
michael.lessne@gray-robinson.com
Camilla J. Cohen
Fla. Bar No. 106811
camilla.cohen@gray-robinson.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of Defendant JPMorgan Chase Bank, National Association's Answer to Plaintiff's First Set of Interrogatories was served by first class mail and email this 8th day of December, 2014 to:

John Pinson
526 Westwood Road
West Palm Beach, FL 33401
john@pinson.com

/s/ Michael D. Lessnee
Michael D. Lessne

\823538\5200 - # 3289019 v3

5



# Exhibit "D"



## AFFIDAVIT OF JOHN PINSON

NOW COMES the Affiant, John Pinson of Palm Beach County, Florida who is over the age of 21 years, competent to testify and has not been convicted of a felony or misdemeanor of moral turpitude or any felony criminal offense and declares as follows under penalty of perjury regarding Case No.: 9:13-cv-80720-KAM; John Pinson v. JPMorgan Chase Bank NA et al.:

1. Defendants have moved for summary judgment before any aspect of discovery has even commenced.

2. As of today, no depositions have been taken, defendants have not propounded any discovery, and plaintiff has been offered no opportunity for discovery, in fact, no scheduling order has been issued by this court and the parties have not agreed upon a scheduling report instead each filing unilateral reports.

3. Plaintiff states that he cannot reasonably be expected to argue what facts are and are not genuinely disputed in good faith without the benefit of discovery.

4. Plaintiff has been offered no opportunity for any discovery, and is not seeking additional discovery now.

5. Plaintiff cannot make a substantive response as required by Rule 56(e) without receiving Defendants' responses to discovery requests and having taken necessary deposition testimony.

6. Due to an inadvertent error by the pro se Plaintiff, an affidavit was not attached to his 56(f) Motion.

7. Plaintiff filed his Rule 56(f) motion because the Rule places that responsibility squarely on the shoulders of the party opposing the motion.

8. no owner of the loan security has identified specifically who the investors are who own the unnamed public security that owns the loan, and have produced no affidavit by a competent person duly authorized by the unnamed public security and attesting to the same.

9. Defendants have failed to show agreements authorizing CPCC to manage the unknown security that owns the loan and have produced no affidavit by a competent person duly authorized and attesting to the same.

19/34

10. Defendants have failed to show any agreement authorizing Chase to act on behalf of CPCC and have produced no affidavit by a competent person duly authorized and attesting to the same.

11. Defendants have produced no affidavit, sworn and attested to by a responsible party legally authorized to act on behalf of the Defendants, that verifies or supports the exhibit or the document filed by Defendants in support of their motion to dismiss.

12. Plaintiff objects to the exhibit and document as hearsay.

13. Plaintiff states he did not sign any document with this mark on it which may be found on the first page upper left of both on the Exhibit and certified copy of the document: Plaintiff states he did not sign any document with this mark on it which may be found on the first page upper left of both on the Exhibit and certified copy of the document:



this number on the left side "4261886+1" is unknown to Plaintiff.

14. Plaintiff was told by Chase representative Benny Milan verbally that the investors in the public security were overseas in China and Europe and the loan was securitized into the public security before its closing and funding, and that Chase facilitated the securitization.

15. Plaintiff states that Chase Home Finance LLC was the servicer.

16. Plaintiff received no notice of transfer of servicer.

17. Plaintiff was told he needed to become delinquent in order to apply for any loan modification.

18. Plaintiff never received any transfer of servicer notice.

19. Defendants have not filed and answer to complaint or affirmative defenses. Defendants have not provided initial disclosures.

20. Defendants have not filed any affidavits.

21. Plaintiff merely seeks sufficient information to make proper factual representations to the Court.

22. Plaintiff seeks nothing more than a fair hearing and justice.



## NOTARY'S VERIFICATION

STATE OF FLORIDA                    §

COUNTY OF PALM BEACH         §

On this day personally came before me the above-named Affiant, who proved his identity to me to my satisfaction, and he acknowledged his signature on this Affidavit in my presence.

## AFFIRMATION

I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true and correct, and the basis of these beliefs is my own direct personal knowledge of the statements described herein.

Further the Affiant sayeth naught.

Signed in Palm Beach County, Florida

September 24, 2014

John Pinson

Name of Notary _____

Signature of Notary _____     seal

KAREN A. GUZZO
Notary Public - State of Florida
My Comm. Expires Sep 16, 2016
Commission # EE 829638
Bonded Through National Notary Assn.

Affidavit of John Pinson - Page 3 of 3

21/34

# Exhibit "E"



## John D Pinson

| | |
|---|---|
| **From:** | Michael D. Lessne, CPA <Michael.Lessne@gray-robinson.com> |
| **Sent:** | Wednesday, December 10, 2014 10:50 AM |
| **To:** | John D Pinson |
| **Cc:** | Tom Loffredo; Jackie Johnson |
| **Subject:** | RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Scheduling to View Original Note and Original Mortgage |

Mr. Pinson:

You are confirmed to come to my office on <u>Friday, December 12 @ 1:30 p.m.</u> to view the original note and mortgage. Copies of the original note and mortgage were previously provided to you as an attachment to my email of Friday, December 5. As the original note and mortgage are the only non- objectionable responsive documents and they are not being withheld on the basis of privilege, there is no privilege log. With respect to your intention to seek an enlargement of time for discovery, please note in any motion to the court that Chase opposes your request and any further discovery. The court permitted discovery limited to the issue of the authenticity of the mortgage and whether Chase was the original lender and you have received copies of the original note and mortgage and will have the opportunity to view them on Friday.

Thank you.

Sincerely,


**Michael D. Lessne, CPA | Senior Associate**
**G R A Y | R O B I N S O N**

401 East Las Olas Blvd., Suite 1000 | Fort Lauderdale, Florida 33301
**T:** 954-761-8111 | **F:** 954-761-8112
<u>E-mail</u> | <u>Website</u> | <u>Bio</u> | <u>vCard</u>


**<u>Facebook</u> | <u>LinkedIn</u> | <u>Twitter</u>**
**From:** John D Pinson [mailto:john@pinson.com]
**Sent:** Tuesday, December 09, 2014 11:55 AM
**To:** Michael D. Lessne, CPA
**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Scheduling to View Original Note and Original Mortgage
**Importance:** High

Mr. Lessne,

Yes, you must be busy, but I need to move this case forward.

Discovery was over December 6, but because it was a Saturday, as you say, it extended to Monday December 8, 2014. I expected to be able to view whatever documents you have for me to view when the Discovery was due, or the day after, which is Today, not next week. It was due then, you should have it now. You have a large firm, someone should have been available to show it to me yesterday when it was due, or today.



The responses contain blanket, non-specific objections which are contrary to Local Rule 26.1(g)(3)(A).

Part of what you attached to the Production responses appears to be the same as that which you filed with the Motion to Dismiss [DE 58-1], which I have already disputed and moved to strike. If you have other documents, please scan them and send as a pdf today or otherwise I will have to assume that you have nothing in hand today.

Further, as you have claimed privilege on all the requests for production and all of the interrogatories answered, please provide me with  copy of your privilege log today per Local Rule 26.1(g)(3)(B).

Please understand that if you can not comply with these specific request I will be forced to file a motion to compel or in-camera review.

Additionally, I will be at your office on Friday, December 12 in the afternoon at 1:30 p.m., as you have offered.

Finally, since do I intend to depose Mr. Joseph G. Devine, Jr., the respondent to the interrogatories,  I intend to file an enlargement of time for discovery. I note that you failed to provide an address for him as requested in Interrogatory #1.

Sincerely,

John Pinson
561-329-2524
john@pinson.com

---

**From:** Michael D. Lessne, CPA [mailto:Michael.Lessne@gray-robinson.com]
**Sent:** Monday, December 08, 2014 12:03 PM
**To:** John D Pinson
**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Scheduling to View Original Note and Original Mortgage

Mr. Pinson, I acknowledge your emails.  The dates you have proposed do not work for my schedule.  I will make myself available for you to view the original note and original mortgage in my office on Friday, December 12 in the afternoon after 1 p.m.; on Monday, December 15 in the morning between 8 a.m.- 11 a.m.; and Tuesday, December 16, in the afternoon after 1 p.m.  Please let me know which date is best or if you need me to propose additional dates for later on next week.

Thank you.


**Michael D. Lessne, CPA | Senior Associate**
**G R A Y | R O B I N S O N**

401 East Las Olas Blvd., Suite 1000 | Fort Lauderdale, Florida 33301
**T:** 954-761-8111 | **F:** 954-761-8112
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**
**From:** John D Pinson [mailto:john@pinson.com]
**Sent:** Monday, December 08, 2014 11:26 AM
**To:** Michael D. Lessne, CPA
**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Responses to Discovery Requests
**Importance:** High

2

24/34

2nd. Request!

Please advise!

---

**From:** John D Pinson [mailto:john@pinson.com]
**Sent:** Sunday, December 07, 2014 11:44 PM
**To:** 'Michael D. Lessne, CPA'
**Cc:** 'Tom Loffredo'; 'Jackie Johnson'
**Subject:** RE: Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Responses to Discovery Requests
**Importance:** High

Mr. Lessne,

Based on your communication, I want to view whatever documents that you have to show me.

I may be able to come to your office in Ft. Lauderdale tomorrow, Monday, between 2 and 3:30 PM, but I would prefer to come on Tuesday, December 9, 2014, and should be available between 10 AM and 3:30 PM.

Please advise!

Sincerely,

John Pinson
561-329-2524
john@pinson.com

**From:** Michael D. Lessne, CPA [mailto:Michael.Lessne@gray-robinson.com]
**Sent:** Friday, December 05, 2014 3:17 PM
**To:** John D Pinson
**Cc:** Tom Loffredo; Jackie Johnson
**Subject:** Pinson v. JP Morgan Chase Bank, NA - Case 9:13-cv-80720-KAM - Responses to Discovery Requests
**Importance:** High

Dear Mr. Pinson,

Attached please find copies of (a) JPMorgan Chase Bank, N.A.'s response to your Request for Production (limited to the responses required by the Court's Order Granting Defendants' Motion for Protective Order [DE 83]) and the responsive documents and (b) JPMorgan Chase Bank, N.A.'s answer to your interrogatories (as limited by DE 83).  The answer to interrogatories are being shipped overnight to my office, and I will send you the original answer when I receive it on Monday.

Thank you.

Sincerely,

**Michael D. Lessne, CPA | Senior Associate**
**G R A Y | R O B I N S O N**

401 East Las Olas Blvd., Suite 1000 | Fort Lauderdale, Florida 33301
**T:** 954-761-8111 | **F:** 954-761-8112
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**



This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Please be advised that this law firm may be acting as a debt collector and is attempting to collect a debt and any information provided will be used for that purpose.



# Exhibit "F"

27/34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOHN PINSON,

                Plaintiff,                               Case No. 9:13-cv-80720-KAM

_____/

v.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, a financial institution;
CPCC DELAWARE BUSINESS TRUST a/k/a
CPCC DELAWARE STATUTORY TRUST,
an unknown entity; and JPMORGAN CHASE
& CO., a publicly held company,

                Defendants.

_____/

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

      Defendant, JPMorgan Chase Bank, National Association ("Chase"), responds to Plaintiff's First Request for Production propounded on October 21, 2014, as follows:

### General Objections

      1.      Chase objects to Plaintiff's First Request for Production to the extent that the request requires Chase to respond beyond the scope of permissible discovery.  The Court's October 2, 2014 Order restricted discovery to "the limited issue of the authenticity of the mortgage and whether Chase was the original lender, as these are the only issues raised by the submission of the certified copy of the mortgage by Defendants." *See* DE 75, Pg. 2.  On November 26, 2014, the Court entered an Order Granting Defendants' Motion for Protective Order [DE 77], providing that Chase has 10 days from the entry of the Order (through December

1



8 as a result of December 6 being a Saturday) to respond to Request for Production #2 and 5 solely to the extent that they require production of the original note and mortgage.

2.      This response is based upon documents presently available to and located by Chase and is given without prejudice to Chase's right to produce additional documents at a later date.

3.      Chase objects to all requests to the extent they seek documents protected by the attorney/client privilege, the work product privilege or any other applicable privilege.

4.      Chase specifically reserves the right to challenge the competency, relevancy, materiality, and admissibility of, or to object on any ground to the use of, information or identification of documents set forth herein in any subsequent proceeding, trial, or any other action.

5.      Chase objects to Plaintiff's requests to the extent that any request implies that the documents attached to or referenced in that request have any meaning or significance other than what appears on the face of the document in that the documents speak for themselves.

### Specific Responses and Objections

**Request for Production No. 2**: Any and all documents, not covered by another section of this request, that were purportedly signed by John Pinson which otherwise relate or refer to the transactions between the CHASE and Plaintiff.

**Response:** Chase objects to this request as outside of the scope of permissible discovery. Further, this request is vague with respect to the terms "which otherwise relate or refer to the transactions between the CHASE and Plaintiff." Subject to and without waiving these objections and the general objections, Chase will produce copies of the Note and Mortgage signed by Plaintiff, which show that Chase was the original lender. Chase will make the original note and

2

29/34

original mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

**Request for Production No. 5**: Any agreement(s) that concerned, related to, encompassed, referred to or included the Plaintiff's loan, note and/or mortgage, including but not limited to any warehouse lines of credit, any bulk sales, any repurchase agreements, any investment agreements, any securitization agreements, any credit agreements, and/or any loan sale agreements.

**Response:** Chase objects to this request as outside of the scope of permissible discovery. The Court's October 2, 2014 Order restricted discovery to "the limited issue of the authenticity of the mortgage and whether Chase was the original lender, as these are the only issues raised by the submission of the certified copy of the mortgage by Defendants." *See* DE 75, Pg. 2. Subject to and without waiving this objection and the general objections, Chase will produce copies of the Note and Mortgage signed by Plaintiff, which show that Chase was the original lender. Chase will make the original note and original mortgage available to view at the offices of Chase's counsel at a mutually agreeable date and time.

Dated: December 5, 2014.

**GRAYROBINSON, P.A.**
401 E. Las Olas Blvd., Suite 1850
Fort Lauderdale, FL  33301
Telephone:   (954) 761-8111
Facsimile:   (954) 761-8112
*Counsel for JPMorgan Chase Bank, N.A.*

Thomas H. Loffredo
Fla. Bar No. 870323
Michael D. Lessne
Fla. Bar No. 73881
michael.lessne@gray-robinson.com

30/34

3

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was served on this 5th day of

December, 2014, by first class mail and email to:

John Pinson
526 Westwood Road
West Palm Beach, FL 33401
john@pinson.com

Michael D. Lessne

\823538\5200 - # 3242097 v3



4

# Exhibit "G"

32/34

Joseph Devine | LinkedIn



# Joseph Devine

**Legal Specialist Officer, Discovery Response Team, Mortgage Banking Law, JPMorgan Chase Bank, N.A.**

Staten Island, New York | Law Practice

Current      JPMorgan Chase, Tower Legal Solutions--JPMorgan Chase
Previous     Self-employed, The Hideout POA, Penn State University
Education    Pennsylvania State University, The Dickinson School of Law

| Connect | Send Joseph InMail ▾ | 92 connections |

www.linkedin.com/pub/joseph-devine/62/394/3b0

### People Similar to Joseph

  



**What Makes JPMorgan Chase Unique?**

Get the scoop directly from our employees.

| Learn More | | in Career Pages |

Follow JPMorgan Chase on LinkedIn

Background

 Experience

## Legal Specialist Officer
JPMorgan Chase
September 2013 – Present (1 year 4 months) | Iselin, New Jersey

## Contract Attorney
Tower Legal Solutions--JPMorgan Chase
July 2013 – Present (1 year 6 months) | Iselin, NJ



## Attorney
Self-employed
October 2011 – July 2013 (1 year 10 months) | Lake Ariel, PA

-Independent legal contractor, mostly for Wayne County, PA attorneys.
-Worked in several areas of law, including: legal research, personal injury, landlord-tenant, land contract, family law, incapacity, and criminal defense.
-Licensed in Pennsylvania and New Jersey.
-Passed February 2013 New York Bar Exam.

## Assistant Aquatics Coordinator, Head Lifeguard, Lifeguard
The Hideout POA
May 2002 – September 2011 (9 years 5 months) | Lake Ariel, PA

-Supervised approximately 25 lifeguards as Assistant Aquatics Coordinator.
-Ensured safety through training of lifeguards, enforcement of rules, and effective scanning.
-Lifeguard of the Month: August 2002, July 2005, August 2008.

## Auxiliary Police Officer
Penn State University
December 2007 – May 2011 (3 years 6 months) | University Park, PA

-Monitored campus residence halls to ensure security.
-Dispatched other auxiliary officers to unsecure locations.
-Worked with Penn State and State College police departments as additional monitor.
-Employee of the Month: April 2010.

## Legal Intern
Wayne County District Attorney's Office
June 2009 – August 2010 (1 year 3 months) | Honesdale, PA

-Legal intern at the Wayne County District Attorney's Office during Summer 2009, Winter 2009-10, and Summer 2010.
-Researched and prepared visuals for trials with the District Attorney and 3 Assistant District Attorneys.

### People Also Viewed

 **Mike Zeiler**
Legal Specialist at JPMorgan Chase

 **Erica L. Zong Evenson**
Associate at Morgan, Lewis & Bockius LLP

 **Leidy Maldonado**
Legal Specialist Officer at JPMorgan Chase

 **Allurie Kephart**
Attorney at Richards, Layton & Finger

 **Maria Miglino**
Legal Specialist Officer at JPMorgan Chase

 **Tal Brannan**
Procurement Manager at Parsons Corporation

 **David Cramer**
Associate Attorney at Martin Bischoff

**Bianca Yip**
Deputy District Attorney at Stanislaus County District Attorney

**Geralyn Boccher**
Vice President, Assistant General Counsel at JPMorgan Chase Bank, N.A.

**Daniel de Vries**
wantrepreneur



-Drafted and filed legal briefs with the Pennsylvania Court of Common Pleas and Superior Court.
-Performed legal research and drafted memoranda for a variety of criminal law and probation/parole issues.
Observed court proceedings, including a capital murder trial in 2010.

### Skills

Top Skills

| 1 | Legal Research |
| 1 | Courts |
| 1 | Trials |
| 1 | Civil Litigation |
| | Criminal Law |

Joseph also knows about...

| Family Law | Personal Injury | Criminal Defense | Real Estate | Westlaw | Police |

Help Center | About | Press | Blog | Careers | Advertising | Talent Solutions | Small Business | Mobile | Developers | Language | **Upgrade Your Account**

LinkedIn Corporation © 2014 | User Agreement | Privacy Policy | Community Guidelines | Cookie Policy | Copyright Policy | Send Feedback

