UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80720-CIV-MARRA

JOHN PINSON,

Plaintiff,

vs.

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, a financial institution,
CPCC DELAWARE BUSINESS TRUST,
a/k/a CPCC DELAWARE STATUTORY
TRUST, JPMORGAN CHASE & CO.,
a publicly held company,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants' Motion to Dismiss Second Amended Verified Complaint with Prejudice (DE 58); Plaintiff's Motion to Strike (DE 63); Plaintiff's Motion to Strike (DE 68) and Plaintiff's Motion to Strike DE 109-1 (DE 114).  On March 16, 2014, the Court held a hearing on the motions.  The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I.  Background

On April 22, 2014, pro se Plaintiff John Pinson ("Pinson") filed a two-count Second Amended Complaint ("SAC") against Defendants JPMorgan Chase Bank, N.A., ("Chase"), CPCC Delaware Business Trust ("CPCC") and JPMorgan Chase & Co. ("JPMC") (collectively, "Defendants") for violations of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (count one) and Florida Consumer Collection Practices Act ("FCCPA"), Florida Statutes §

559.55 (count two).  (DE 52.)  The SAC alleges the following:

On April 13, 2012, Plaintiff sent a letter to Chase, stating it was a "[q]ualified [w]ritten [r]equest as defined by the Real Estate Settlement Procedures Act ("RESPA") for information regarding the servicing of this mortgage loan."  (SAC ¶ 26; Apr. 13, 2012 letter from Pl. to Chase, Ex. A, DE 54.)  On June 1, 2012, Chase sent a letter to Plaintiff stating, "Your loan was sold into a public security managed by CPCC Delaware Business Trust, and may include a member of investors."  (SAC ¶ 28; June 1, 2012 letter from Chase to Pl., Ex. B, DE 54.)  On July 23, 2012, Plaintiff sent CPCC a "dispute and debt validation letter" which requested a validation that Plaintiff had a contractual obligation to pay CPCC.  (SAC ¶ 32; July 23, 2012 letter from CPCC to Pl., Ex. C, DE 54.)  On July 28, 2012, Barry A. Wolf came upon Plaintiff's property on the instruction of the Law Firm of Marshall Watson P.A.[1] ("Watson"), stating that Chase owned the debt and had authorized it to collect on Chase's behalf.  (SAC ¶ 34.)  Chase did not own the debt and should not have authorized Watson to collect the debt.  (SAC ¶ 35.)  Chase knew that the assertion of ownership and authority to collect was false.  (SAC ¶ 36.)

Plaintiff did not receive from Defendants any disclosure notice after Wolf's visit.  (SAC ¶ 37.)  Mr. Wolf communicated to third parties about the alleged debt.  (SAC ¶ 38.)  On July 28, 2012, Plaintiff sent Watson a "dispute and debt validation letter" identical to the one sent to CPCC.  (SAC ¶ 43.)  On July 30, 2012, Plaintiff sent a "dispute and debt validation letter" to Chase.  (SAC ¶ 44; July 28, 2012 letter from Pl. to Chase, Ex. E, DE 54.)  On August 9, 2012, Watson sent a letter to Plaintiff, asserting Chase owned the debt and had authorized him to collect on their behalf.  (SAC ¶ 45; Aug. 9, 2012 letter from Watson, Ex. F, DE 54.)  On August

---

[1] Watson was dismissed from the case on January 14, 2014.  (DE 47.)

17, 2012, Chase sent Plaintiff a letter "asserting that Chase owned the debt." (SAC ¶ 48; Aug. 17, 2012 letter from Chase to Pl, Ex. G, DE 54.)  JPMC is the parent of CPCC and Chase. (SAC ¶¶ 51-52, 55.)  CPCC and JPMC "directly" or "indirectly" engaged in the collection of an alleged debt for a third party. (SAC ¶¶ 53-54.)

Defendants move to dismiss the SAC because it fails to allege any acts committed by CPCC or JPMC and it does not clearly allege what acts it is challenging.  Additionally, Defendants contend they are not debt collectors as defined under the FDCPA.  As part of its motion to dismiss, Defendants provided the Court with a certified copy of the mortgage between Plaintiff and Chase.  Consequently, the Court converted the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. (DE 71.)  The Court also granted Plaintiff's motion to conduct discovery on the limited issue of the authenticity of the mortgage and whether Chase was the original lender. (DE 75.)

Prior to the Court converting the motion, Plaintiff sought to strike the exhibit containing the mortgage.[2] (DE 63, 68.)  After the motion was converted, Defendants supplied the Court with an affidavit from Eric DeL'etoile, an attorney at Albertelli Law in the foreclosure department. (DE 125-1)  Mr. DeL'etoile states that his law firm received the original note and mortgage between Chase and Plaintiff and attached copies of the original note and mortgage to his affidavit.[3] (DeL'Etoile Aff. ¶ 4; Copies of Mortgage and Note, attached to DeL'Etoile Aff.)  The

---

[2]  A certified copy of the mortgage can be found at docket entry 64.

[3] Plaintiff moves to strike the DeL'Etoile affidavit, on the basis that the documents are not properly authenticated and that the affidavit is invalid.  (DE 114.)  However, Defendant has filed a corrected version of the affidavit that remedies any deficiencies with the original affidavit. (DE 125-1.)

3

documents reflect a $202,000 mortgage, signed by "John Pinson" and dated December 23, 2005. (Copies of Mortgage and Note.)

Plaintiff provides the Court with his affidavit which states that "[n]o affidavit is on record attesting to the authenticity of the alleged mortgage" or the "accuracy" of the mortgage (Pl. Aff. ¶¶ 12-13, DE 107.) Plaintiff also states that he did not sign the document that Defendants filed and the mortgage filed with the county clerk inaccurately reflects their agreement. (Id. at ¶¶ 15-17.)

At the March 16, 2014 hearing, when asked for clarification about his affidavit and the copy of the mortgage documents filed, Plaintiff stated the signature on the mortgage document, "looks like my signature . . . but I can't say it is my signature." To clarify, the Court asked him ". . . you can't say whether this is or this is not the document signed, you just don't know?" To which Plaintiff replied, "I don't know, sir." Lastly, Plaintiff acknowledged that he signed a document around December 23, 2005 that provided him a $202,000 mortgage.

## II. Legal Standard

### A. Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### B. Summary Judgment

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the

nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion

A.  The Note and Mortgage

The Court must address a threshold issue in this case; namely, whether the copy of the note and mortgage are admissible.  Chase has supplied the Court with what it asserts is the original note and mortgage and has represented to the Court that it has not been altered or spoiled.   Plaintiff disputes that the mortgage has not been altered or spoiled.

The certified copy of the mortgage indicates that Chase was the original lender of a loan

6

entered into with Plaintiff for $202,000 on December 23, 2014.  The certified copy of the mortgage is self-authenticating pursuant to Rule 902(4) of the Federal Rules of Evidence.  See In re Sagamore Partners, Ltd., No. 11–37867–BKC–AJC, 2012 WL 3564014,  at * 6 n.28 (S.D. Fla. Aug. 17, 2012) (promissory notes and mortgages are self-authenticating).   A record of a document that establishes or affects an interest in property is admissible as an exception to the hearsay rule pursuant to Rule 803(14) of the Federal Rules of Evidence.  See United States v. Ruffin, 575 F.2d 346, 357 (2d Cir. 1978) (a mortgage falls under the hearsay exception in Rule 803(14)).  Further, providing a copy of a public record is an appropriate method to prove content pursuant to Rule 1005 of the Federal Rules of Evidence.  See Amoco Prod. Co. v. United States, 619 F.2d 1383 (10th Cir. 1980) (Rule 1005 encompasses mortgages and other documents filed in a county recorder's office).  Thus, the certified copy of the mortgage is admissible to prove the contents of the document.

In response, Plaintiff has failed to raise a genuine issue of material fact to invalidate this self-authenticating and admissible document.  Indeed, Plaintiff acknowledges that he signed a document around December 23, 2005 that provided him a $202,000 mortgage but would not state that the signature on the certified copy of the mortgage was definitely his signature, just that it "looks like [his] signature. " Additionally, Plaintiff could not state whether the document in evidence was the document he signed.  Plaintiff's equivocal statement that the signature on the certified copy of the mortgage "looks like" his, and his statement that he cannot say whether the signature on the document is or is not his signature, is insufficient to raise a genuine issue of material fact regarding authenticity of the mortgage document upon which Defendants rely for their defense. As such, the Court concludes that Defendant has demonstrated, as a matter of law,

7

that the mortgage submitted by them is the mortgage executed by Plaintiff.

### B.  FDCPA claim

The Court begins its analysis of the FDCPA claim by setting forth the elements of a prima case for a violation of the FDCPA. In order to prevail on a FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.  Sans v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009); Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002). "A debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Eke v. FirstBank Florida, 779 F. Supp .2d 1354, 1357 (S.D. Fla. 2011) (quoting Belin v. Litton Loan Servicing, LP, No. 8:06–cv–760–T–24 EAJ, 2006 WL 1992410, at *2 (M.D. Fla. Jul.14, 2006)); Deutsche Bank Nat. Trust Co. v. Foxx, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013).

Defendants assert that they are excluded from the definition of a "debt collector" pursuant to 15 U.S.C. § 1692a(6)(F)[4] because Chase was the "originating person" and the mortgage

---

[4] 15 U.S.C. § 1692a(6)(F) provides that the term "debt collector" does not include:

any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) *concerns a debt which was originated by such person*; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(F) (emphasis added).

8

servicer.  Centennial Bank v. Noah Group LLC, 755 F. Supp. 2d 1256, 1260 (S.D. Fla. 2010) (dismissing FDCPA claim because the bank is not a "'debt collector'-it arguably originated the debt as a merged entity with [the original lender]").  Here, Chase has filed a certified copy of the recorded mortgage which shows that Chase was the original lender.  As discussed supra, Plaintiff has not raised a genuine issue of material fact that challenges the record evidence that Chase was the original lender and therefore excluded from the definition of "debt collector."

With respect to JPMC, the SAC only alleges that it is the parent company of Chase and CPCC and it "directly or 'indirectly' engaged in the collection of an alleged debt for a third party." (SAC ¶ ¶ 51, 54-55.)  As for CPCC, the SAC alleges that it "directly or 'indirectly' engaged in the collection of an alleged debt for a third party." (SAC  ¶ 53.)  These facts do not provide a basis to piece the corporate veil of Chase or CPCC to establish liability for JPMC.  See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla. 1984).  Nor do the allegations show that JPMC and CPCC were personally involved in the debt collection or can be held vicariously liable under the FDCPA.  Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 108 (6th Cir.1996) (an entity  which does not meet the definition of  debt collector cannot be held vicariously liable for unlawful collection actions taken on its behalf by an entity which is a debt collector); Bent v. Smith, Dean & Assocs, Inc., No. 3:11–cv–66–J–TEM, 2011 WL 2746847, at * 3 (M.D. Fla. July 14, 2011) (same).

For these reasons, the Court finds that Plaintiff cannot state a claim against JPMC and CPCC and it would be futile to amend.  The Court also finds that summary judgment is appropriate against Chase.  With the dismissal of the federal claim, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claim pursuant to

9

the FCCPA.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendants' Motion to Dismiss Second Amended Verified Complaint with Prejudice (DE 58), which was partially converted to summary judgment, is **GRANTED** with respect to the FDCPA claim. The FCCPA claim is **DISMISSED WITHOUT PREJUDICE.**

2) Plaintiff's Motion to Strike (DE 63) is **GRANTED** because the document at DE 58-1 is not a certified copy.

3) Plaintiff's Motion to Strike (DE 68) is **DENIED** because the document at DE 64 is a certified copy.

4) Plaintiff's Motion to Strike DE 109-1 (DE 114) is **DENIED AS MOOT.**

5) The Court will separately enter judgment for Defendants.

6) The Clerk shall close the case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of March, 2015.

_____
KENNETH A. MARRA
United States District Judge