```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      WEST PALM BEACH DIVISION
                      CASE NO. 13-80720-CIV-MARRA

JOHN PINSON,


              Plaintiff,              WEST PALM BEACH, FLORIDA
         vs.
                                         MARCH 16, 2015
JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, et al.,
                                         PAGES 1 - 80
              Defendants.

_____/




          TRANSCRIPT OF MOTION FOR SUMMARY JUDGMENT
           BEFORE THE HONORABLE KENNETH A. MARRA
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:      JOHN PINSON, PRO SE
                        526 Westwood Road
                        West Palm Beach, Florida  33401




For the Defendants:     MICHAEL LESSNE, ESQ.
                        THOMAS LOFFREDO, ESQ.
                        GrayRobinson, P.A.
                        401 E. Las Olas Boulevard, Suite 1850
                        Fort Lauderdale, Florida


Reported By:            Diane M. Miller, RMR, CRR
                        Official United States Court Reporter
                        400 N. Miami Avenue, Room 11-2
                        Miami, FL  33128
                        (305)523-5251
                        diane_miller@flsd.uscourts.gov
```

Monday, March 16, 2015

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2            THE COURT:  Good morning.  Please be seated.
 3            We are here in the case of John Pinson versus JP
 4   Chase -- JPMorgan Chase, et al., case number
 5   13-80720-civ-Marra.
 6            May I have the parties or Counsel state their
 7   appearances, please.
 8            MR. LESSNE:  Good morning, Your Honor.
 9            May it please the Court, Michael Lessne of
10   GrayRobinson, for the Defendants, JPMorgan Chase Bank, N.A.,
11   CPCC Delaware Business Trust, and JPMorgan Chase & Co.
12            With me in the courtroom is Tom Loffredo of
13   GrayRobinson as well.
14            MR. LOFFREDO:  Good morning.
15            THE COURT:  Good morning.
16            MR. PINSON:  Good morning, Your Honor.  I'm John
17   Pinson, the Plaintiff, pro se.
18            THE COURT:  Good morning.
19            All right.  We are here on the motion to dismiss,
20   which has been indicated it should be considered a motion for
21   summary judgment.
22            We had some discovery that was permitted in order to
23   deal with it as a summary judgment motion, so are you ready to
24   proceed?
25            MR. LESSNE:  Thank you, Your Honor.  Yes, there is
```

Monday, March 16, 2015

```
1   the motion to dismiss.
2           I believe the Court also set motions to strike that
3   were filed by the Plaintiff --
4           THE COURT:  Okay, yes.
5           MR. LESSNE:  -- as well.
6           Your Honor, the motion to dismiss is DE58.  It is a
7   motion to dismiss that was converted in the two count complaint
8   for violations of the FDCPA, and the FCCPA, which Counsel went
9   into respectively.
10          The Court converted it so that it might consider a
11  certified copy of the mortgage between JPMorgan Chase Bank,
12  N.A., and the Plaintiff, Mr. Pinson.
13          The docket and its 21 -- 121 entries might suggest
14  that there are a number of complicated issues in this case, but
15  in truth, there are only a couple and they are very
16  straightforward.
17          Your Honor, the first issue is whether Chase is
18  excluded from the definition of a debt collector pursuant to
19  15 U.S.C. Section 1692(a)(6).
20          If Chase is not a debt collector -- and when I say
21  Chase, I refer to JPMorgan Chase Bank, N.A. -- then it would
22  not be subject to the FDCPA.
23          In addition, the Plaintiff seeks to impose liability
24  on the other Defendants solely by virtue of Chase's conduct, so
25  they, too, would not be subject to liability under the FDCPA,
```

```
1   if Chase is excluded from the definition.

2           The second issue is whether the factual allegations

3   state a claim for relief that is plausible on its face under

4   Twombly and Iqbal.

5           The Court does not have to reach this second issue

6   with respect to the FDCPA claim because there is no material

7   issue about Chase's exclusion from the definition of a debt

8   collector.

9           However, there is no similar exclusion under the

10  FCCPA, so it must undertake this analysis to see whether or not

11  the complaint states a claim that's facially plausible.

12          We will see that it does not.  Disregarding the legal

13  conclusions, the factual allegations do not show a violation of

14  either statute.

15          Starting with the first issue, the term debt

16  collector expressly excludes a debt which was originated by

17  such person.  That's 1692(a)(6)(f)(2).

18          As an initial matter, in order to plead adequately

19  under the FDCPA, a plaintiff must sufficiently allege that

20  Chase is a debt collector.  While the Plaintiff has pleaded in

21  the complaint that as a legal conclusion, he has not

22  sufficiently alleged facts that show that Chase is anything

23  more than the originating lender of his mortgage loan.

24          The documents that were attached to the complaint

25  reflect as much.  The Chase loan number is on the subject line
```

Monday, March 16, 2015

1  of most of Mr. Pinson's letters.  He refers to a Chase mortgage

2  in his April 13th, 2012 letter and the responses coming from

3  Chase and on Chase's behalf mention Chase.

4        In response to the complaint, the Defendants filed a

5  certified copy of the mortgage and upon filing it, after

6  consideration of several motions and responses in reply, the

7  Court converted the summary judgment motion into the -- the

8  motion to dismiss into a partial summary judgment motion.

9        But the question of the certified copy, there is

10  really no question about it.  On its face, it is a certified

11  copy of the mortgage and it's self-authenticating, pursuant to

12  Federal Rule of Evidence 90204.  It is admissible as a copy

13  pursuant to Federal Rule of Evidence 1005.  The mortgage itself

14  is self-authenticating pursuant to Federal Rule of Evidence

15  9028 since it is notarized.

16        The mortgage contains the loan number and just the

17  last four digits of that are 0759, for the record, and that

18  matches the loan number on the correspondence, both from

19  Mr. Pinson and to Mr. Pinson, that Mr. Pinson relies on in

20  support of his claim.

21        The mortgage is dated December 23rd, 2005.  It is

22  between JPMorgan Chase Bank, N.A. and John Pinson and it

23  secures a promissory note for a principal balance of $202,000

24  by granting a mortgage on Mr. Pinson's Palm Beach real estate.

25        THE COURT:  Can I interrupt you for a second?

Monday, March 16, 2015

```
1              MR. LESSNE:  Absolutely.

2              THE COURT:  Mr. Pinson had filed some -- an affidavit

3    in opposition, which I'll discuss with him when he presents his

4    argument.

5              But if an alleged debtor, pursuant to a note and

6    mortgage, claims under oath that, "I didn't sign that

7    document," does that create a question of fact as to whether or

8    not you're the debtor or not the debtor or whether you are

9    excluded as a debt collector?

10             MR. LESSNE:  Perhaps it would if he said that he

11   didn't sign the mortgage or the note.

12             THE COURT:  We will talk about that.  I'm just

13   talking in theory.  Whether he falls under that category or not

14   is a separate issue.

15             I'm just saying if -- let's assume it was pretty

16   clear and there was no dispute that a person in Mr. Pinson's

17   position said, I swear under oath that I didn't sign that

18   document; that's not the mortgage, I never signed it; I don't

19   have any relationship with your bank, that's a forgery, clear

20   as can be, would that create a factual question?

21             MR. LESSNE:  Well, I think you have to go take a step

22   back and look to see whether he has adequately pled, in this

23   instance, that Chase is not the original creditor.  And if you

24   look at the correspondence that are attached, you see all

25   kinds --
```

1           THE COURT:  Before we get to this case, I'm asking

2    you just hypothetically.

3           In a case where there is a plaintiff claiming or an

4    opposing party claiming that, I didn't sign this document,

5    assuming that everything else is alleged properly, does that

6    create a question of fact?

7           MR. LESSNE:  I think it might if there is a -- if

8    there is a question about the document itself, about whether or

9    not there is the existence of the document.

10          But with respect to a situation where there is the

11   existence of the document itself, and the sole purpose is to

12   see who are the two parties to the document, I don't think it

13   would.

14          This isn't about enforceability.  This is just about,

15   was there a document that shows and reflects the loan and who

16   are the parties to that document.

17          THE COURT:  And even if a person says, I'm not the

18   party to that document.  I mean, it has my name on it, it says

19   I signed it; the other side claims I signed it; they have a

20   witness who says they were there when I signed it, but I say I

21   wasn't there, I didn't sign it, you've got the wrong person,

22   it's a forgery, they are lying?

23          MR. LESSNE:  Maybe under those circumstances that you

24   are describing.  Those aren't the circumstances here.

25          THE COURT:  Okay.  All right.  So tell me why, on

1   this record, I should conclude, as a matter of law, that there

2   is no question of fact that this -- what you have attached and

3   submitted is the actual loan documentation between your client

4   and Mr. Pinson.

5          MR. LESSNE:  Starting with the authentication issue,

6   which I went over already, this is self-authenticating in all

7   respects, so if we -- I think that the Defendants have met

8   their initial burden.

9          So now going to see whether or not the Plaintiff has

10  countered that burden by showing a fact that's material, that

11  somehow might affect the outcome of the suit, the affidavit,

12  which is -- the one we are referring to is on Exhibit A to 107

13  on page --

14         THE COURT:  I'm sorry, I don't mean to interrupt you

15  again.

16         MR. LESSNE:  Yeah.

17         THE COURT:  I apologize.

18         The document you have submitted in docket entry

19  109-1, I don't know if you have that handy, it was attached to

20  109-1; do you have that?

21         It was the affidavit of redaction of original

22  documents that was filed by a person named Erik --

23         MR. LESSNE:  DeL'Etoile.

24         THE COURT:  DeL'Etoile, yes.

25         MR. LESSNE:  That's the second frame of reference

Monday, March 16, 2015

1   here.  There is a first part, which is the certified copy of

2   the note that was filed earlier in the case, and that's

3   document entry number --

4          MR. PINSON:  Objection.  There wasn't a certified

5   copy of a note.

6          THE COURT:  Sir, you will have your chance to

7   respond.

8          MR. LESSNE:  If I said note, I meant mortgage.  It's

9   the --

10         THE COURT:  Docket entry 64?

11         MR. LESSNE:  Docket entry 64, correct.

12         THE COURT:  All right.  So the only reason I'm

13  questioning you about the second one you submitted is because

14  portions of it are cut off.  I was just wondering, why is that?

15         MR. LESSNE:  So this was a copy of the original note

16  and mortgage, as redacted by the foreclosure counsel, and the

17  affidavit explains how it was redacted with these strips of

18  removable tape.

19         THE COURT:  I understand that.  But the copy, itself,

20  is not the complete copy of the document.  It is cut off, and I

21  was just wondering if you know why it was cut off.

22         MR. LESSNE:  Cut off how?

23         THE COURT:  The bottom of the document, the whole

24  document, at least on my copy, it is not all there.

25             Maybe it is -- maybe your copy is that way, but what

Monday, March 16, 2015

1    I'm looking at -- show it to him -- and it is cut off.

2            MR. LESSNE:  Oh, no.  Mine is not cut off.  Can I --

3            THE COURT:  Well, the reason I'm again asking is

4    Mr. Pinson says, in his affidavit, I initialed all of the pages

5    that weren't -- where there was no signature on the one I

6    signed, and I was hoping that you would have a copy with his

7    initials on the bottom, and I was hoping that was going to be

8    the one that would show that, but it is cut off, and I can't

9    see it.

10           MR. LESSNE:  I understand that, and I didn't bring

11   the original documents with me.

12           THE COURT:  But you say you have a copy that's not

13   cut off?

14           MR. LESSNE:  I do have a copy at my office and I

15   would have to go back and I can remove the redaction and do a

16   notice of filing of that.

17           THE COURT:  But does your copy that you have there --

18           MR. LESSNE:  The bottoms of those have also been

19   redacted --

20           THE COURT:  Okay.

21           MR. LESSNE:  -- by foreclosure counsel.  So they are

22   not -- the ones I have in my copy don't show the initials by

23   Mr. Pinson, if that answers your question.

24           THE COURT:  All right.  So I interrupted you, I'm

25   sorry.

Monday, March 16, 2015

1   Go back to why you think the record in this case is

2   sufficient for me to conclude, as a matter of law, that these

3   are the original documents that Mr. Pinson signed and your

4   client is not a debt collector.

5   MR. LESSNE:  Right.  So the affidavit that was filed

6   in opposition, which is Exhibit A, DE 107, it starts at page

7   45, there is a tapdancing around the issue and while there is a

8   lot said, it's what is not said that's very telling.

9   Let's start with what he does say.  He says that he

10  didn't sign any document that has a barcode mark, and that's a

11  mark, as was explained in the interrogatory response, that was

12  contained on a sticker that was placed on the mortgage.

13  He says, in passive voice, you know, that any loan

14  documents executed by him were initialed on the lower left side

15  of each page not requiring his signature.  I think that this

16  statement alone does not raise an issue of fact.  At best, I

17  think it could be construed as a challenge to the terms of the

18  mortgage and the enforceability of it, but not as to its

19  existence and the mortgage isn't being asserted here to be

20  enforced, but merely to show that Chase is the original

21  creditor.

22  He says that the mortgage filed with the clerk

23  inaccurately reflects the agreement.  I mean, this statement,

24  by itself, is conclusory and doesn't raise an issue of fact.

25  He denies having a contractual agreement with the

Monday, March 16, 2015

1   Defendants.  I mean, that's just a denial.  He can deny, but he

2   hasn't actually pointed anything out.

3        He says that the original documents he saw were

4   spoiled with whiteout.  Well, this is a conclusory statement as

5   to whether it was spoiled; and, of course, it is countered by

6   the affidavit that was filed in response to a request by the

7   Court for additional briefing.

8        So then let's go to what he doesn't say.  He doesn't

9   say it is not his signature on the note or the mortgage, so he

10  is not denying that he signed this document, the mortgage or

11  the note that was attached to the affidavit.

12       He is not saying that he didn't borrow money from

13  Chase and enter into the note and mortgage.  He has had an

14  opportunity to review, and he has reviewed, the original note

15  and he doesn't really -- he doesn't challenge its existence.

16  So he is not actually raising a question of fact as to whether

17  Chase was the original lender.

18       In his statement that he is attaching to the

19  complaint, he reflects -- it all reflects and points to the

20  existence of a Chase loan, which he is disputing certain things

21  about it perhaps and its enforceability perhaps, but not its

22  very existence.

23       So I think the Court can see, from this summary

24  judgment evidence, that the filing of the certified copy of the

25  original note and the affidavit showing the note and mortgage

```
1    that there is no genuine issue of fact about the existence of
2    the debt, the original -- the loan, and Chase's status as the
3    original creditor in the case.
4              THE COURT:  All right.
5              MR. LESSNE:  If you want -- if you would like me to
6    continue, I can, or I can step back and respond.
7              THE COURT:  Well, I thought you had another argument
8    you wanted to make on the --
9              MR. LESSNE:  I do.  I didn't know if you wanted to go
10   in a different order.
11             THE COURT:  Why don't we take them one at a time
12   because as far as I'm concerned, the critical issue relates to
13   the documents, whether they exist or not, and I need to hear
14   from Mr. Pinson as to what he is really trying to say in this
15   case.
16             MR. LESSNE:  Okay.  I'll then let Mr. Pinson respond.
17             MR. PINSON:  Do you have water?
18             THE COURT:  I can get you some.
19             MR. PINSON:  Thank you.
20             THE COURT:  Do you need the water before we start?
21             MR. PINSON:  Please, I think that would be --
22             THE COURT:  Why don't you have a seat until we get
23   you your water.
24        (Pause in the proceedings.)
25             THE COURT:  Are you ready, sir?
```

1           MR. PINSON:  Yeah.  Thank you.

2           Good morning, Your Honor.

3           THE COURT:  Good morning.

4           MR. PINSON:  If it may please the Court, may I

5    proceed?

6           THE COURT:  Yes.

7           MR. PINSON:  Thank you.

8           I filed a complaint for FDCPA and FCCPA against the

9    Defendants -- actually, against one Defendant and then filed an

10   amended complaint adding a second Defendant before it was

11   served, and then there was a motion to dismiss, and I was

12   granted leave to file another amended complaint.

13          So we are on the second amended complaint and a

14   motion to dismiss on that that was converted to a motion for

15   summary judgment.  Then there was a Rule 56 ruling that allowed

16   me limited discovery, and I proceeded with limited discovery.

17          And then there was a flurry of motions from the other

18   side, starting with a motion for protective order and some of

19   the discovery that I was seeking, I felt was relevant to my

20   case, but the Judge ruled on that earlier in the day, and I was

21   due to file my response that day.

22          My response went in after that order and somehow,

23   erroneous information was filed as exhibits to mine from some

24   other case, and I alerted the Court of that and they were filed

25   again as erroneous exhibits somehow.

                    Monday, March 16, 2015

```
 1              By then, I got caught up in a group of motions and
 2    the time expired.  In one of your orders, you said I should
 3    have pleaded something earlier to get a continuance, but I
 4    missed that because I'm a pro se and I did the best I could,
 5    and I don't have the benefit of Pacer.  And I'm not trying to
 6    complain, I'm telling you my side of what happened in the
 7    proceedings.
 8              I don't get e-mails telling me when documents are
 9    filed.  I have to rely on the mail and them being mailed, and
10    sometimes the deadlines are quite close, and I have to run down
11    to the courthouse and do filings.  That's, I guess, my
12    situation because that's the way the rules are and I'm a
13    pro se, and I don't use Pacer, I have to come down here.
14              Anyway, so I filed my complaint.  This goes back to
15    with Chase because I get statements from them as a servicer,
16    and Chase is a bit of an ambiguous term because --
17              THE COURT:  Can I interrupt you?
18              MR. PINSON:  Yes, sir.
19              THE COURT:  We have to stick to what is in the record
20    and not stray off from things that are extraneous --
21              MR. PINSON:  Okay.
22              THE COURT:  Telling me about statements you get,
23    unless that's part of the record, either in the complaint or in
24    the affidavits or in depositions -- I mean, unless all of that
25    is part of the record, you are kind of giving me information
```

1   that's really extraneous and not relevant.

2         MR. PINSON:  I'll try to stay on point, sir.  This is

3   my first time in a Federal Courtroom before a Federal Judge and

4   if I talk too fast, it is because I'm nervous and I apologize.

5         THE COURT:  Take your time.  We have all morning,

6   so --

7         MR. PINSON:  Hopefully it won't take all morning.

8         THE COURT:  -- take your time.

9         MR. PINSON:  So I filed my complaint, and it has to

10  do with, in the complaint, where I showed that I sent in a

11  qualified written request to Chase to find out who owned the

12  mortgage, and I didn't get a straight answer.

13        I got an answer that it was sold, it didn't tell me

14  when.  This is in my complaint.

15        THE COURT:  I know that's in your complaint.  Let's

16  try and focus on what, at least from the Defendants'

17  standpoint, is the relevant issue because even if you sent a

18  letter to the servicer asking who actually owns your mortgage

19  now, from their standpoint, they are saying it doesn't matter

20  who owns the mortgage now.

21        You had a loan with them originating this mortgage

22  and note and since they were the original mortgagee and lender,

23  they are not a debt collector under the statute, so you can't

24  sue them under the statute if they were the original lender.

25        So whether or not -- who owns it now I don't think is

Monday, March 16, 2015

1   necessarily relevant, even if they gave you the wrong

2   information, they didn't give you the correct information, they

3   ignored you, they -- I mean, let's focus on, who was the

4   original lender of this loan.

5           And are you denying that you borrowed money from

6   JPMorgan Chase and that this document, the loan that they are

7   saying exists, was not with you?

8           MR. PINSON:  That doesn't appear to be the original

9   document, sir.

10          THE COURT:  That's not what I'm asking you.

11          Are you denying --

12          MR. PINSON:  Any money I received --

13          THE COURT:  Let me ask the question and then you can

14   answer it.

15          Are you denying that you entered into a loan

16   transaction with JPMorgan Chase on December 23rd, 2005 for the

17   amount of $202,000 at the interest rate of 6.650 percent, and

18   are you denying that?

19          MR. PINSON:  I'm denying that it was Chase.

20          THE COURT:  You are denying that the mortgagee was

21   JPMorgan Chase Bank, N.A.?

22          MR. PINSON:  Yes.

23          THE COURT:  You are denying that?

24          MR. PINSON:  Yes.

25          THE COURT:  What is the basis for your denial of

1  that?

2           MR. PINSON:  Because when I was dealing with the

3  mortgage broker, it was a third-party mortgage broker, who

4  changed the terms on me several times before I received a

5  package.

6           There was no loan application, and any check received

7  was drawn on a bank that was different than JPMorgan Chase.

8  There were no funds received from JPMorgan Chase.

9           THE COURT:  Is any of that in your affidavit?

10          I mean, this sounds like new information that you are

11  telling me for the first time.  I don't see any of that in your

12  affidavit that you filed in opposition to their summary

13  judgment or motion to dismiss.

14          I don't see anything about you didn't borrow the

15  money from JPMorgan Chase, you borrowed it from somebody else.

16          Here is my concern.

17          MR. PINSON:  Yes, sir.

18          THE COURT:  Are we playing games here?

19          MR. PINSON:  No.

20          THE COURT:  Is this just, you know, delay and avoid

21  the truth?

22          Are you telling me that you didn't sign this document

23  that they attached, are you saying you didn't sign it?

24          MR. PINSON:  The document that they presented to me

25  didn't appear to be the document that I signed.

```
 1            THE COURT:  Well, did you ever compare -- do you have
 2   a copy of the document?
 3            MR. PINSON:  No, I don't.
 4            THE COURT:  You don't have a copy?
 5            MR. PINSON:  No, I don't.
 6            THE COURT:  So how do you know this isn't the one you
 7   signed?
 8            Do you know what the terms of your mortgage were?  I
 9   mean, do you know that this is not -- let's assume that the one
10   that they filed, you know, has a bar mark on it that you say
11   wasn't there when you signed it, and some of the things have
12   been redacted, they say, because, you know, they were removing
13   things for privacy purposes.
14            Is there anything in any of the documents, the
15   language, the terms, that's different from what you actually
16   signed when you got the 200 -- you did get $202,000 from
17   somebody, right?
18            MR. PINSON:  I didn't receive that much money.  I
19   received -- the loan that I applied for, when I applied for a
20   loan, was a refinance.
21            THE COURT:  And someone advanced $202,000 on your
22   behalf to someone, right?
23            MR. PINSON:  Yes.
24            THE COURT:  Okay.  So you got $202,000 from someone.
25            MR. PINSON:  Yes.
```

Monday, March 16, 2015

1          THE COURT:  Okay.  And you signed a document -- you

2    signed this document, you are just saying you didn't know it

3    was JPMorgan Chase that was going to be the lender, is that

4    what you are saying?

5          MR. PINSON:  No.  I don't believe that's the document

6    I signed, sir.

7          THE COURT:  You don't believe it is, and the reason

8    is because what?

9          MR. PINSON:  Because it doesn't adequately reflect

10   the agreement that I had with the party that I was borrowing

11   from.

12         THE COURT:  And your reason -- you don't have a copy

13   of it.

14         MR. PINSON:  I didn't receive a copy.

15         THE COURT:  You never received a copy of your note

16   and mortgage when you signed it?

17         MR. PINSON:  I did not.

18         THE COURT:  That's kind of unusual, isn't it?

19         MR. PINSON:  It was a mail-away package with the same

20   day return and if I didn't have it in, the guy told me he was

21   going to cancel the whole thing.

22         THE COURT:  And so after you sent it back, signed

23   and --

24         MR. PINSON:  I didn't receive a copy.

25         THE COURT:  Did you ever ask for a copy?

```
1              MR. PINSON:  No, I didn't think about it.
2              THE COURT:  You didn't think --
3              MR. PINSON:  Am I supposed to ask for a copy; I don't
4    know.  I would think I would received it in the mail.
5              THE COURT:  Have you ever entered into a mortgage in
6    the past?
7              MR. PINSON:  Yes, I have.
8              THE COURT:  Did you ever get copies of them in the
9    past?
10             MR. PINSON:  I did, under the original mortgage that
11   I applied for when I purchased the property.
12             THE COURT:  That was the first mortgage you ever
13   entered into?
14             MR. PINSON:  The first mortgage I ever entered into.
15             THE COURT:  Have you ever bought a car?
16             MR. PINSON:  Yes.
17             THE COURT:  Have you taken out a loan to buy a car?
18             MR. PINSON:  I have.
19             THE COURT:  Did you get the loan documents when
20   you --
21             MR. PINSON:  At the closing, at the time the event
22   takes place.  This was a mail-away.
23             THE COURT:  But you didn't think, I just borrowed
24   $202,000, this is probably the biggest investment I've ever
25   made, I think I should have a copy of the documents that
```

1  reflect that I just borrowed this money, you never thought to

2  get a copy of them?

3          MR. PINSON:  I didn't have time to make a copy to

4  return it.

5          THE COURT:  You didn't ask for a copy of the document

6  after it was sent to the lender?

7          MR. PINSON:  It wasn't sent to the lender, it was

8  sent back to whoever the broker was.

9          THE COURT:  I'm sorry, I'm kind of being difficult

10 here.

11         MR. PINSON:  No, no.

12         THE COURT:  I'm just trying to understand what really

13 is the issue.  Are we going to have a trial, are we going to

14 have a trial --

15         MR. PINSON:  I don't know.  I have attempted to

16 settle with them.

17         THE COURT:  Are we going to have a trial in front of

18 a jury, where you are going to try to convince a jury that you

19 didn't really sign this document, is that what we are going to

20 have a trial on?

21         MR. PINSON:  The original suit that I filed didn't

22 have anything to do with the debt.  It had to do with

23 violations of the FDCPA.

24         The other Counsel has turned it around and made it

25 into that issue by getting these things filed in.  I filed

1    motions to strike to deal with it.

2            THE COURT:  Why should these be stricken, if they

3    have --

4            MR. PINSON:  Because it is an unauthenticated

5    original and they don't have any witness to state that it was

6    an original, and I filed things in to argue against it.

7            THE COURT:  Okay.  So my question is, are we going to

8    have a trial, where we are going to bring in jurors to sit and

9    listen to --

10           MR. PINSON:  If we have to.

11           THE COURT:  -- about whether or not you actually

12   signed this document or some other document?

13           MR. PINSON:  Or some other document, if they put one

14   forward.  But then if they put another document forward, what

15   does it do with this document?

16           THE COURT:  A document that you don't have a copy of,

17   and they have witnesses who are going to swear that this is the

18   document you signed; this is in their records, et cetera,

19   et cetera; it is filed, it is recorded.

20           And you are going to stand up in front of the jury

21   and testify, I don't have a copy of it.  I borrowed $202,000, I

22   borrowed it from someone, and it says JPMorgan Chase, but it

23   wasn't JPMorgan Chase who I was really dealing with, I didn't

24   get a copy, and you think a jury is going to believe that you

25   didn't sign this document and they are just playing games?

1          Do you really think that's what is going to happen?

2          MR. PINSON:  That's why I'm here.

3          THE COURT:  Okay.  I mean, you really think you are

4    going to --

5          MR. PINSON:  I can't tell what a jury of however many

6    people that you will call, how they can answer.  All I can do

7    is present myself.

8          THE COURT:  All right.  So anyway, tell me why this

9    document is not the document.

10          You did sign -- you did sign a loan for $202,000 with

11    someone.

12          MR. PINSON:  With someone.

13          THE COURT:  Are you saying the document that you

14    signed didn't have JPMorgan Chase on it or are you saying it

15    had some other lender listed on it?

16          MR. PINSON:  I believe it had some other lender.

17          THE COURT:  And you don't know who that is.

18          MR. PINSON:  No, I don't.

19          THE COURT:  When you started making payments -- did

20    you ever make any payments on this loan?

21          MR. PINSON:  Yeah.

22          THE COURT:  When you were making the payments, who

23    were you paying the money to, who did you write the checks out

24    to?

25          MR. PINSON:  It was automatically debited.

1          THE COURT:  Well, when you got your bank statements,

2    who did it say the money went to?

3          MR. PINSON:  Chase Home Financing, LLC.

4          THE COURT:  Okay.  And was that the entity you

5    borrowed the money from?

6          MR. PINSON:  No.  I understand them to be a servicer,

7    but I'm not sure because I couldn't do that much discovery to

8    find out, sir.  But based on the research and the knowledge and

9    the information I could obtain, they appear to be a servicer or

10   were a servicer.

11         THE COURT:  All right.  So let's go through your

12   affidavit here.

13         What do you mean by no owner -- okay, you are saying

14   the owner of the loan is not identified.  Why is that relevant

15   for purposes of this case?

16         MR. PINSON:  Well, if it was a table-funded loan,

17   where it was presold into a trust, then it would be -- that

18   would be the original owner, would be the trust that funded it

19   or the entity that funded it.

20         All that I was able to get when I sent in the

21   qualified written request was, Your loan was sold into a public

22   security managed -- and I'm paraphrasing, managed by CPCC

23   Delaware Statutory Trust, but the name of the public security

24   isn't listed, so who the owner is, I don't know.

25         And at a later date, when I attempted to apply for a

1 │ modification and I was -- by Chase Home Financing, LLC and they

2 │ told me you had to be delinquent in order to apply and I did.

3 │ I was denied and the representative told me that, Your loan was

4 │ securitized in the first place and it was sold off to

5 │ foreigners.

6 │        And I did a little more research and found out when

7 │ those trusts were formed.  They appear on OSCAR, but with

8 │ foreign investors, that's the end of the filings with the SEC,

9 │ so there is nothing else you can find out on your own.

10 │        THE COURT:  But my question to you is, why is it

11 │ relevant that the owner of the loan be identified?

12 │        MR. PINSON:  Because they would be the original

13 │ owner, not Chase.

14 │        THE COURT:  Well, why does the original owner -- the

15 │ original lender have to be the current owner?

16 │        MR. PINSON:  I don't think that was the question.

17 │        See, I was trying to find out the whole chain when I

18 │ sent the QWR, the qualified written request, and all I received

19 │ back is, Your loan is sold.  It didn't say who sold the loan,

20 │ so it didn't establish the fact that, you know, Chase might be

21 │ an original lender.

22 │        And as I said in the beginning, and you stopped me,

23 │ Chase is an ambiguous term because Chase has many different

24 │ entities; Chase Home Financing, LLC, JPMorgan Chase Bank, N.A.,

25 │ and I think over 300 different entities, and when they just

1   ambiguously refer to Chase, you never know which one you are

2   really dealing with.

3           THE COURT:  Again, for purposes of our discussion

4   today, their defense -- they're defending this case on the

5   basis that JPMorgan Chase was the original lender, the

6   originating lender; not the current owner, the originating

7   lender.

8           And you, in response to that assertion -- and they

9   have submitted documents to support their contention that

10  JPMorgan Chase was the original lender.  In response to that,

11  you say, No owner of the loan is identified on the record.

12          And so why does it matter who the current owner of

13  the loan is if their defense is, We were the original lender?

14          They didn't say, We are the current owner.  They say,

15  We are the original lender, and why does it matter who the

16  original owner is, if that's their defense?

17          MR. PINSON:  Your Honor, I think this morning all we

18  have is hearsay from the other side.  *Haines versus Kerner*,

19  statements of counsel, so we don't have anything that testifies

20  to authenticating any documents, which I have moved to strike.

21          THE COURT:  All right.  Again, you are not answering

22  my question.

23          I'm trying to go through your affidavit and see if it

24  helps --

25          MR. PINSON:  Helps anything, I understand.

```
 1              THE COURT:  -- with the analysis that I have to make.
 2              MR. PINSON:  It is beyond me.  I don't understand
 3  your analysis, and I apologize for that.  So if I seem a little
 4  befuddled, that's --
 5              THE COURT:  I'm not trying to be difficult.
 6              MR. PINSON:  No, no, I understand.
 7              THE COURT:  I'm trying to --
 8              MR. PINSON:  And I'm not trying to be troublesome.
 9              Thank you.
10              THE COURT:  Do you -- if the defense that they are
11  raising and they're pinning their motion on for purposes of
12  today's hearing is they are not a debt collector -- you can't
13  sue them under this statute that you are pursuing because they
14  are not a debt collector, and the reason they are not a debt
15  collector is because they were the original lender and by
16  definition, original lenders are not debt collectors under the
17  statute.
18              If that's the defense and if that's the issue, would
19  you agree with me that it doesn't make a difference who the
20  current owner of the note is?  Does that make sense to you?
21              It doesn't matter who currently owns the note and
22  mortgage.  We are trying to figure out who the original lender
23  was for purposes of this analysis today.
24              MR. PINSON:  And yes, I do understand, Your Honor,
25  and your argument makes sense.  And I think the FDCPA says
```

1    original creditor, not original lender.

2           Original creditor, original lender, originator, there

3    are a lot of different terms out there, and not all of those

4    exist in Black's Law Dictionary, which is what I referred to.

5           But an originator, as I understand it, is the people

6    that put the loan package together.  So if I dealt with a third

7    party, then the third party would be the originator, and the

8    original creditor would be the ones that loaned the money,

9    which was not Chase.

10          THE COURT:  Why do you say it was not Chase?

11          What is the basis for you saying the entity that

12   loaned the money, that actually wrote the check and transferred

13   the funds, was not Chase?  What is the basis for that

14   statement?

15          MR. PINSON:  Well, number one, because at the time I

16   applied for the loan, I didn't apply to Chase.  I applied to a

17   third-party mortgage broker and the documents -- as I recall

18   from being there, the documents that I signed didn't state

19   Chase.

20          THE COURT:  Can I interrupt you for a second, because

21   you said you applied through a mortgage broker.

22          You got your loan through a mortgage broker, correct?

23          MR. PINSON:  I'm assuming that's what they were.  I

24   applied -- I filled out a form online, and I can't remember if

25   it was Continental Airlines or AAA or Delta, where they offered

Monday, March 16, 2015

1    a special for members to refi, and I was contacted by someone

2    over the phone.  That's all I had, was phone contact with

3    someone until the package arrived in the mail that I had to

4    return the same day.

5            THE COURT:  All right.  So again, trying to -- would

6    you agree with me that the original -- you say it is creditor,

7    and in the statute, it is not lender, it is creditor, so

8    lender, creditor, regardless of which term is the correct term,

9    would you agree that the creditor or lender that we are talking

10   about for purposes of this case is the entity that actually

11   provided the funding for your loan?

12           That would be the original creditor or lender or

13   whatever the term is, the entity that funded your loan, the

14   entity that gave you the $202,000 so you can, you know, buy

15   this property or refinance the property, that is the entity we

16   are trying to figure out who it is.  Would you agree with me?

17           MR. PINSON:  Actually, I have a question about that

18   relating to the FDCPA.  And at the time the violation is

19   committed, it's the creditor at the time the violation was

20   committed that would be liable and --

21           THE COURT:  Hold on a second, okay.

22           There is only one funding entity.  You only fund the

23   loan at the beginning.  Regardless of who acquires ownership of

24   it along the way, there is only one funding entity.  Would you

25   agree with that?

Monday, March 16, 2015

1              When the violation that you are complaining about

2    took place, when that violation took place, it was after the

3    loan was funded, correct?

4              MR. PINSON:  It was several years later.

5              THE COURT:  Okay.  So what difference does it make

6    who the owner is at the time of the loan -- I mean at the time

7    of the violation if you are suing, they claim, the original

8    funder?

9              MR. PINSON:  Well, if they were the creditor now,

10   which is one -- no, let me finish.

11             If they were the creditor now, which it seems like

12   they are trying to say, and this trust, public security or

13   whatever owned it in-between, it is like with a marriage.

14             If you have a marriage, that's your first marriage,

15   but once you are divorced, that contract is over with.  You get

16   married again, that's your second marriage.  If you marry your

17   first wife again, she is your third wife, she is not your

18   original wife.

19             The original contract was ended, and so any

20   coverage -- if they were an original creditor, any coverage

21   that they were an original creditor would end when they no

22   longer owned the note.

23             THE COURT:  All right.  Let me try and go through

24   your affidavit.  I'm trying to -- I want to understand what you

25   are claiming in your affidavit.

32

```
 1              So I'm going to skip ahead.  We kind of started at
 2  number two, No owner of the loan is identified on the record,
 3  and we have talked about that.
 4              And number three seems to be related to the same
 5  issue, who the owner is when the loan was sold by the original
 6  owner.  The record does not show who the seller of the loan
 7  was.  The identity of the public security owning the loan is
 8  unknown, the sponsor of the public security is unknown.
 9              I'm trying to understand why any of that is relevant
10  to the issue we are dealing with today, who the original --
11              MR. PINSON:  Because I believe the original lender
12  was the unknown security.
13              THE COURT:  Okay.  You believe that, but you don't
14  have anything --
15              MR. PINSON:  Because I couldn't do discovery.  I
16  don't even know who the security is to do any discovery or do
17  any investigation, that -- and I attempted to do that long
18  before I filed the suit.
19              THE COURT:  Okay.  So you are you saying that no
20  affidavit is on record attesting to the authenticity of the
21  alleged mortgage.
22              Now, didn't they file affidavits saying that this was
23  the original loan and note and mortgage, and didn't they say
24  that in an affidavit?
25              MR. PINSON:  They filed an affidavit, but not from
```

Monday, March 16, 2015

33

```
1   someone that was an employee of Chase or ever was an employee

2   of Chase.  And the affidavit they filed failed, I believe, in

3   form because it wasn't even signed and it didn't state that it

4   was made under penalty of perjury.

5           If you examine the affidavit, it doesn't have any of

6   those things that --

7           THE COURT:  Which --

8           MR. PINSON:  -- to the best of my investigation --

9           THE COURT:  Which docket entry are you referring to

10  that you say wasn't signed under penalty of perjury?

11          MR. PINSON:  It would be docket entry 109-1, which

12  was the affidavit of Erik DeL'Etoile, who is -- he says he is

13  an attorney of Abertelli Law Firm.

14          THE COURT:  Do you see on page three, where it says,

15  "The foregoing instrument was sworn to and subscribed before

16  me," by a notary?

17          MR. PINSON:  Where is the signature?

18          THE COURT:  This individual didn't sign it; is that

19  what you are saying?

20          MR. PINSON:  No, sir.

21          THE COURT:  Okay.  I see what you are saying.  You

22  are saying he didn't sign it.

23          MR. PINSON:  He didn't sign it.

24          THE COURT:  Okay.

25          MR. PINSON:  And he doesn't state in there -- even if
```

Monday, March 16, 2015

1  he did, he doesn't state in there when he worked for Chase, or

2  how he would know about the loan records of Chase, you know --

3          THE COURT:  I see.

4          MR. PINSON:  -- that he was present at the closing,

5  that was a mail-away closing.

6          THE COURT:  Okay.  I see your point there.

7          MR. PINSON:  Thank you, sir, Your Honor.

8          THE COURT:  All right.  So we get to paragraph 15 of

9  your affidavit, and you say you did not sign any document with

10 a barcode mark on it, and that's -- I'm looking at docket entry

11 64, and I presume you are talking about this mark on the

12 document.

13         MR. PINSON:  Yes, Your Honor.  And I attempted to do

14 discovery on that, and they successfully evaded answering

15 directly.

16         THE COURT:  Well, I thought they explained how that

17 barcode got there.

18         MR. PINSON:  They gave me an off answer, and the

19 individual that answered the discovery appears not to be an

20 employee of JPMorgan Chase.  He was a leased attorney from a

21 third-party firm.

22         THE COURT:  All right.  I want to kind of get back

23 down to, you know, the real issue.  Whether or not there was a

24 barcode there or not, that could have been put there after the

25 fact, which is what they have explained.

Monday, March 16, 2015

1          But the real issue is:  Is this mortgage document, on

2   the last page, is that your signature on it or not, on the last

3   page, page six of six of this document?

4          MR. PINSON:  It looks like my signature, Your Honor,

5   but I can't say that it is my signature.

6          THE COURT:  You can't say that.

7          And do you think that -- I mean, you did sign a

8   document on the day that's listed here, right, December 23?

9   You did get a loan for $220,000 from someone.

10         MR. PINSON:  I don't recall that being the exact

11   date, but somewhere around that date.

12         THE COURT:  So you got $202,000 from some entity

13   around December 23rd, 2005.  You signed some document, I

14   presume, in order to get that loan; yes?

15         MR. PINSON:  Yes.

16         THE COURT:  Okay.  You don't have a copy of it.

17         MR. PINSON:  I do not have a copy of it.

18         THE COURT:  So you can't say for sure that this is

19   your signature, even though it looks like it.

20         Has anyone else that you know of in the world come

21   forward and accused you of not paying $202,000 that you got the

22   money from?

23         MR. PINSON:  No, sir.

24         THE COURT:  So no one else in the world that you know

25   of is claiming that you owe them $202,000, other than JPMorgan

Monday, March 16, 2015

1   Chase.

2          MR. PINSON:  They are only claiming that here.  There

3   is no foreclosure lawsuit against me, sir.

4          THE COURT:  But again, no one else has been -- have

5   you paid any money on this loan?

6          How long has it been since you paid any money on this

7   loan?

8          MR. PINSON:  Not since they didn't answer who owns

9   the loan, and that would be from January 2012.

10          THE COURT:  Okay.

11          MR. PINSON:  And I'm trying to find out -- the reason

12   I was trying to find out, before this lawsuit, is to make sure

13   I'm paying the proper party.

14          I'm sure you watch television, like everyone else in

15   this room, and we have seen the number of people who make

16   payments to the wrong entity and then find out a third party

17   can make a claim.

18          THE COURT:  That's not the point I'm trying to make.

19          It has been three years since you have made a payment

20   on the loan, this $200,000 loan that you took out, right, it

21   has been three years?

22          MR. PINSON:  I don't know who the proper party is to

23   make a loan to, yes, sir.

24          THE COURT:  It has been three years since you made a

25   payment on a $202,000 loan that you took out.

Monday, March 16, 2015

```
 1              MR. PINSON:  Yes.

 2              THE COURT:  And no one has come forward saying --

 3              MR. PINSON:  No, sir.

 4              THE COURT:  -- Hey, when are you going to pay me the

 5  money you owe?

 6              MR. PINSON:  No.

 7              THE COURT:  But there is one entity that is at least

 8  claiming to be the originator of that loan, and that's JPMorgan

 9  Chase, but no one else has claimed to have loaned you that

10  money.

11              MR. PINSON:  At the time that I applied -- this is

12  going off -- you know, but you are asking the question.

13              The time I applied for the modification and I was

14  dealing with the Marshall Watson Law Firm, they didn't file a

15  suit.  They sent papers threatening to, but I was applying for

16  a modification and when I paid up the amount that they were

17  demanding, after I was denied the modification, the

18  correspondence they sent me said that it was Bank One USA,

19  N.A..

20              THE COURT:  That was maybe the current owner of the

21  loan.

22              MR. PINSON:  I don't know, they didn't send any

23  documentation with it.  And they also claimed extra money,

24  which was the other reason that I sent the qualified written

25  request, and I was never able to settle.  And I honestly didn't
```

Monday, March 16, 2015

1    know enough about RESPA and TILA and how all of those things

2    worked to pursue it at that time.

3           THE COURT:  All right.  So you don't know -- you

4    can't say whether this is or this is not the document you

5    signed, you just don't know.

6           MR. PINSON:  I just -- I don't know, sir.

7           THE COURT:  Okay.

8           MR. PINSON:  And what was presented as an original

9    had whiteout all over it.  They say it's removal redaction

10   tape, I don't know that there is such a thing, but I'm 51 years

11   old, maybe there is now.  You can laugh at me for that, but I'm

12   sorry if I don't know that.

13          And Your Honor, at line 22 in the affidavit that I

14   think you are reviewing, they had -- when everyone held their

15   breath way back when, when the economy collapsed, I had

16   Marshall Watson file a lawsuit against me then, when I was one

17   month delinquent, which I paid up, but the -- the complaint

18   that they filed, I paid that up and never answered it or

19   anything, that was dealt with immediately.

20          The complaint that they filed had a lost note count

21   in there, and that's the other thing from discovery.  They are

22   presenting an alleged note, but they can't show where it came

23   from, what happened to it in-between, and all of the questions

24   I asked in discovery were denied as being within their

25   protective order request.

39

```
1            THE COURT:  So I'm trying to kind of narrow the
2    issues and see what actually is in dispute in this case.  And
3    you don't dispute that sometime around December of 2005, is it?
4            Yeah, 2005, around December 23rd, 2005, you are not
5    sure if that's the exact date or not, but somewhere in that
6    time frame, you borrowed $202,000 and you actually signed a
7    note and you signed a mortgage, but you don't have copies of
8    them, and you're not sure who actually lent the money.
9            MR. PINSON:  Yes, Your Honor.
10           THE COURT:  Okay.  And the documents that were
11   submitted by the Defendant here in this case and recorded, you
12   can't say that they are or they are not the documents you
13   signed, you just can't say.
14           MR. PINSON:  Correct, Your Honor.
15           THE COURT:  All right.
16           MR. PINSON:  And even the document that's filed into
17   the county record was filed in a considerable period of time
18   after the date that it says it's executed.  And what they have
19   provided shows a page with a signature page, but all of the
20   other pages laying out an alleged agreement are separate from
21   that, and really they called for judicial notice, but when a
22   document is filed into the public record, the way I understand
23   it, it shows that the document was filed -- the piece of paper
24   was filed on that date, but it doesn't go to the content of
25   that document.
```

Monday, March 16, 2015

1          THE COURT:  It was filed less than a month, it was

2    recorded less than a month after.

3          MR. PINSON:  Three weeks, which normally it is like a

4    day, two days.

5          THE COURT:  I don't think that's true, okay.  I mean,

6    I don't work in the clerk's office, but I don't think they

7    record them that quickly, but maybe I'm wrong.

8          All right.  So what else did you want to tell me

9    about why I should deny -- and we are just talking about the

10   Federal claim now, not the Florida claim -- why I should deny

11   their motion.

12         MR. PINSON:  Well, as I understand the FDCPA, there

13   are three major parts to it.  One is that it's -- a party is an

14   alleged creditor that takes an action and that the other party

15   is a consumer, and it relates to a consumer debt, which in this

16   case would be a residential mortgage, and I'm a consumer.

17         And then the third part is that they violate some

18   part of the FDCPA, which is laid out in the complaint.  They

19   haven't challenged that.  They challenged the part that they

20   have some protection as being either the original creditor or

21   the original servicer, but as with documents I filed in, I have

22   shown that Chase Home Financing, LLC was the servicer, and they

23   haven't disputed that.

24         The FCCPA is pretty much the same as FDCPA, except it

25   has a part in there about knowledge.  And since they are the

1   ones that are coming up with their defense and I already put

2   them on notice with a debt validation request and through the

3   qualified written request, they had advance knowledge of

4   what -- before they made their defense claim and sent Mr. Wolf

5   out.

6           I mean, we didn't touch on that, but one day I was at

7   home, had a bunch of people over, and I was either in the

8   kitchen cooking or was in the restroom and he starts talking to

9   someone else, thinking they are part of my immediate family

10  living in the house, and they weren't, and saying things, and

11  that's a violation right there of the FDCPA, to discuss

12  personal financial information with third parties.

13          And he was sent by, allegedly, Marshall Watson Law

14  Firm, who allegedly was hired by JPMorgan Chase, and I pled in

15  there that he was looking for consumer information.  I didn't

16  think he was there to visit and join the party, so I'm a

17  consumer and he was looking for information, and that's the

18  reason I used that term.

19          So I mean, you have a lot to consider here.  The file

20  is pretty thick, with 121 docket entries, and we don't even

21  have an answer.

22          There was discovery.  I explained before how I became

23  overwhelmed a bit during the discovery process, when there was

24  a flurry of motions and the Judge put out a ruling without

25  looking at my response.

Monday, March 16, 2015

1        I believe that there is a violation of the FDCPA, I

2   believe that I fit the part of being a consumer, and it was a

3   consumer loan in question.

4        I dispute the part that they are an original creditor

5   under the FDCPA and even if they were a original creditor under

6   the FDCPA, if the loan was sold after the fact, then they would

7   no longer have the position of being a creditor, original

8   creditor, but it is my understanding --

9        THE COURT:  How can you -- I mean, you are either the

10  original or you are not.

11       MR. PINSON:  You lose the status of being a creditor

12  once you've sold the loan.  You no longer have any ownership

13  interest in it.

14       THE COURT:  Well, they may not be a current creditor,

15  but they still would be the original lender.

16       MR. PINSON:  I honestly would have to do research,

17  but I believe that I have read rulings that show that that's

18  not the case; that once a loan is sold, you lose your status of

19  being a creditor.

20       THE COURT:  I would agree that if you own a note and

21  a mortgage and you sell it to someone else, once you sell it,

22  you are no longer the creditor, but then the person to whom you

23  sold it is the creditor.  But why does that change your status

24  as the original lender or original --

25       MR. PINSON:  Your Honor, you couldn't really plead

1  much of anything if you didn't have a status as a creditor and

2  if they were to come back to be a creditor again, if a loan was

3  purchased back or taken back somehow, I believe -- and I know I

4  have read this -- it would create a significant loophole in the

5  protections of the FDCPA and the intent of Congress to protect

6  consumers.

7          THE COURT:  You are saying if you are the original

8  lender, so you are protected, so you sell the loan and then you

9  rebuy it?

10         MR. PINSON:  And you rebuy it, then you become a

11  subsequent creditor.

12         THE COURT:  And then you violate the law after you

13  rebuy it, so --

14         MR. PINSON:  You lose your protection as being an

15  original creditor.

16         THE COURT:  Okay.

17         MR. PINSON:  That's reasonable, I believe, and I'm

18  confident that I have read that.

19         THE COURT:  Where in this case is there any evidence

20  that they sold it and rebought it, where is that?

21         MR. PINSON:  All I know is from the statement that

22  they said, Your loan was sold.  It doesn't state when it was

23  sold, it doesn't state to whom it was sold.  It doesn't even

24  state who sold it.

25         So with that, you could infer that Chase never owned

1　it in the first place and it was sold.  So if it is pre-sold,

2　which is known as a table-funded loan, it is something they

3　brokered with a piece of paper before it is funded.

4　　　　And again, I'm not a finance mortgage broker person

5　or anything like that, so --

6　　　　THE COURT:  All right.  I'm sorry, I kind of threw

7　you off track there.

8　　　　MR. PINSON:  I'm sorry.

9　　　　THE COURT:  What else did you want to tell me?

10　　　　MR. PINSON:  That they have filed in documents to

11　come up with their out, as I was saying, both with the -- as an

12　original creditor or as an original servicer, and I have shown

13　that Chase Home Financing, LLC was the servicer.

14　　　　And the certified copies, I addressed that; the time

15　discrepancy, and they haven't produced anyone to attest to the

16　documents.  We dealt with the affidavit from Mr. DeL'Etoile,

17　and also the fellow that answered the discovery, which they

18　didn't use, but allegedly for Chase in New York, but he worked

19　for a third-party law firm, Cowart Financial, so he doesn't

20　have any -- he doesn't show that he has any knowledge of how

21　the records are kept there.

22　　　　And the lost note, they haven't shown how any note

23　that they are presenting was retrieved, found, what happened to

24　it, whether it was destroyed.  That's part of what was in the

25　complaint that was filed into the county court and --

45

```
1          THE COURT:  So just about this complaint that was
2   filed in the county court, you are saying there was an
3   allegation in there for a -- a lost note allegation; is that
4   what you are saying?
5          MR. PINSON:  Yes, sir.
6          THE COURT:  In my experience, that's a standard
7   provision that mortgagees throw into all of their complaints,
8   in case they can't find the original note in the proceedings.
9          So the mere fact that it is thrown into a complaint,
10  I don't think means anything in reality.  That is just a
11  standard provision that lawyers put in mortgage foreclosure
12  complaints because when they file the complaint, they are not
13  sure if they have the note or not, and so if they can't find
14  it, they have this lost note allegation in there and they can
15  get the court to declare the note lost, and it would -- was
16  there actually a foreclosure judgment entered in that case?
17         MR. PINSON:  No.
18         THE COURT:  There was not?
19         MR. PINSON:  No, there was a complaint filed.
20         THE COURT:  So no Judge ever declared that the note
21  was lost.
22         MR. PINSON:  No, but it was alleged by the party.
23         THE COURT:  Okay.
24         MR. PINSON:  And I filed a motion to strike, included
25  that in my affidavit, and they didn't respond to the motion to
```

Monday, March 16, 2015

1    strike and didn't deny that fact.

2            THE COURT:  Where; in the state court?

3            MR. PINSON:  No, in my affidavit here, line 22.

4    That's what we were on a minute ago, that they represented in

5    court in that -- in the county court, in that case number, that

6    the alleged note was lost or destroyed.

7            They didn't -- opposing Counsel didn't file an

8    opposition to the motion to strike the original documents or

9    the affidavit of Mr. DeL'Etoile.

10            THE COURT:  All right.  Go ahead, I'm sorry.

11            MR. PINSON:  That's --

12            THE COURT:  Okay.  Why did you want me to strike

13    various documents that were filed, what is the basis for the

14    motion to strike?

15            MR. PINSON:  Okay.  I thought we were going to deal

16    with the -- you started out that --

17            THE COURT:  I thought maybe you can answer, but if

18    you want to go back and look at your notes --

19            MR. PINSON:  Yeah, because I only brought so many

20    papers up, so what do you want to do?

21            THE COURT:  Okay.  I'll hear from them, and we will

22    get back to that.

23            MR. PINSON:  Thank you, Your Honor.

24            THE COURT:  You're welcome.

25            MR. LESSNE:  Hi, Your Honor.

```
 1              THE COURT:  Hello.  Was I misstating your position in
 2    terms of, your underlying position is you are the original
 3    lender; so therefore, you're not a debt collector and it
 4    doesn't make any difference who the current owner of the note
 5    and mortgage is, or am I wrong?
 6              MR. LESSNE:  That is correct, Your Honor.
 7              THE COURT:  All right.  Go ahead.  What else do you
 8    want to tell me?
 9              Let me ask you this question, since he pointed it
10    out, Mr. Pinson pointed it out:  Where is the signature of
11    Mr. DeL'Etoile in the affidavit?
12              I see the notary signature, but I don't see his
13    signature.
14              MR. LESSNE:  I was looking at that.  I think that he
15    signs -- he wrote his name in --
16              THE COURT:  Where?  After by, he puts his name.  It
17    is not a traditional signature, but I think it would -- it
18    suffices here as his -- I mean a signature.  It is his
19    handwriting, subscribed to by Erik DeL'Etoile, who was
20    personally known.  It is not a traditional signature, as I
21    would have --
22              THE COURT:  It is not.
23              MR. PINSON:  Objection, Your Honor.  We don't know
24    it's his signature.
25              THE COURT:  Hold on, sir.
```

Monday, March 16, 2015

```
1              MR. PINSON:  Okay.
2              THE COURT:  It looks like the typical form that a
3   notary would fill out and write and say, This is the person who
4   appeared before me, but it doesn't look he is the one who
5   signed it.
6              MR. LESSNE:  There is no signature block above it,
7   and I understand that to be the case, as I look at this.
8              THE COURT:  Okay.  So maybe that --
9              MR. LESSNE:  I think, though, that we are dealing
10  with a little bit of a red herring here.
11             This affidavit was filed principally for the purpose
12  of responding to the court -- to the magistrate court's order,
13  requesting an explanation about this alleged redaction.
14             I think all we need to look at here is the original
15  mortgage, the certified copy of the original mortgage, which,
16  again, is self-authenticating, so there is no affidavit
17  required by anyone here.
18             We have that, we have a certification by the deputy
19  clerk, and we have the mortgage itself, which is attested to
20  and can be -- is admissible as an acknowledged document.
21             So we have the initial burden being met by the
22  Defendant establishing that JPMorgan Chase Bank, N.A. was the
23  original lender, and then we have Mr. Pinson's affidavit, with
24  which the Court is now very familiar.  And I think that what
25  has become clear here is that there is really no issue of fact
```

Monday, March 16, 2015

1    that's being raised by this affidavit as to the mortgage and as

2    to the fact that JPMorgan Chase was the original lender,

3    certainly nothing in the affidavit.

4            And we are not under oath here, Your Honor, today,

5    but what is under oath is his affidavit.  And as you have gone

6    through it, you can see there is no genuine issue of fact about

7    its authenticity, and its authenticity happens automatically in

8    this case.

9            So that's part one.  If we can get past part one, we

10   can look at the failure to state a claim because really, the

11   partial summary judgment motion -- the conversion was really

12   just to really take a look at the question of whether Chase was

13   the original creditor in this case, but if you look at the

14   facts as alleged, they don't state a claim under either the

15   FDCPA and FCCPA.

16           We don't have to look further with respect to the

17   FDCPA because Chase was the original creditor, but we do with

18   respect to the FCCPA, and if you take a look -- and the

19   analysis is laid out in the motion to dismiss and in the reply,

20   as the Court is familiar.

21           I don't know if you want me to go through the

22   thorough analysis of what has been alleged and why it fails to

23   state a cause of action, but I am happy to do so.

24           THE COURT:  Go ahead.

25           MR. LESSNE:  Okay.  What we have here is a series of

1    exchanges.  We start out with an April 13, 2012 letter from

2    Mr. Pinson to Chase.  Now, I will point out that the complaint

3    was filed on July 26th, 2013, so for purposes of the FDCPA,

4    that letter is outside of the limitations period with respect

5    to the one year statute of limitations, but we don't even look

6    at that.  We look at the responses to the letter.

7           So you have this initial letter from Mr. Pinson to

8    Chase and if you look at it, it is DE54, appendix A, and it

9    starts off with -- it lists the loan number, it is made out to

10   JPMorgan Chase Bank, N.A., and it is requesting certain

11   information.

12          And then you look at the response in Exhibit B, and

13   there is a response from Chase, and it says -- it says that

14   yes, the loan was sold into a public security, and this letter

15   is dated June 1, 2012, so it is outside of the limitations

16   period.

17          It says, "Your loan was sold into a public security

18   managed by CPCC."

19          Then you have a July 23rd, 2012 letter from

20   Mr. Pinson to CPCC; you have a July 28th, 2012 letter to

21   Marshall Watson; and you have a July 23rd, 2012 letter to

22   JPMorgan Chase Bank, N.A., all from Mr. Pinson.

23          And then you have responses.  You have an August 9th

24   letter that provides for proof of debt, it is from the Law

25   Offices of Marshall Watson.  It reflects a property address and

1    their file number, and it's a response to the letter.

2            Behind that is an August 8th letter, which says the

3    Chase loan number at the top, property address, attorney file

4    number.  This provides the -- it lists the amount to secure the

5    loan, reinstatement figures, which was requested.

6            Then you have an August 8th letter that provides for

7    the payoff amount for the above loan.

8            You then have an August 17th, 2012 letter from Chase

9    to Mr. Pinson, with more payoff information and verification.

10   And then you have the allegation of someone from Marshall

11   Watson walking on to Mr. Pinson's property to collect consumer

12   information.

13           So these allegations do not show -- they do not meet

14   the elements for either the FDCPA or the FCCPA, so I'm going to

15   focus on the FCCPA.

16           The Plaintiff seeks relief for four violations of the

17   provisions of the FCCPA.  He seeks relief under 559.725 for

18   disclosing to a third party information affecting the debtor's

19   reputation.  There is nothing like that alleged in the

20   complaint here.

21           There is this -- Mr. Pinson mentioned that he walked

22   up -- that someone walked on to the property and spoke to

23   family members, but that's not in the complaint.  It is not in

24   the complaint.

25           I'll read the exact allegation from the complaint.

```
1            THE COURT:  You don't need to, you don't need to.
2            MR. LESSNE:  Okay.  The second violation is 559.727,
3   which is willfully engaging in conduct which can reasonably be
4   expected to harass.  There is no conduct of that type that's
5   alleged here that rises to -- that rises to -- no allegations
6   of fact here that would rise to that level of conduct, no
7   plausible level; maybe speculative.
8            559.729, threatening to enforce a debt when the
9   person knows that the debt is not legitimate or asserting the
10  existence of a legal right the person does not know exists.  So
11  there needs to be an allegation here of knowledge of intent by
12  the debt collectors in order to state a cause of action under
13  that subsection, but simply pleading that the Defendant had
14  knowledge is not enough.  There has to be facts that show
15  knowledge.
16           The pleading must contain more than labels and
17  conclusions and a formal recitation of the elements will not
18  survive the motion, and I'm reading from -- I'll cite to *Reese*
19  *versus JPMorgan Chase Bank, N.A.* -- excuse me, *Reese versus*
20  *JPMorgan Chase & Co*, which is cited in the briefs.
21           And it says, "Nowhere in the plaintiff's amended
22  complaint does the plaintiff pleads facts that Chase or Chase
23  Home Finance had knowledge that it was pursuing a debt that it
24  was not legally entitled to.  Moreover, plaintiff fails to
25  identify in what way Chase Home Finance specifically threatened
```

```
1    to take adverse action against plaintiff.  Plaintiff's amended

2    complaint only contains conclusory allegations and is not

3    supported by the facts necessary to establish their case or put

4    Chase or Chase Home Finance on notice as to the specific

5    alleged violations."

6              THE COURT:  You need to slow down when you are

7    reading.

8              MR. LESSNE:  Sorry about that.  Shall I repeat that?

9              THE COURT REPORTER:  No, but please slow down.

10             MR. LESSNE:  "Accordingly, Chase Home Finance's

11   motion to dismiss count 14 is granted with prejudice and the

12   court dismisses count eight with prejudice sua sponte."

13             The court actually acted sua sponte in that case.

14             In this case, the same is true here.  There simply

15   has not been a showing made of knowledge of any assertion of a

16   right that it did not have.

17             Instead, what you have is a showing of acts -- of

18   responses to letters that show an intent to validate the claim.

19   So I mean, this appears more to be -- it's hard to say that it

20   is anything more than simply responses.  It doesn't appear to

21   be a debt collection of any kind.

22             And collection activity is not defined, but while

23   it's broad -- to collect a debt is to obtain payment or

24   liquidation of it, either by personal solicitation or legal

25   proceedings.
```

Monday, March 16, 2015

54

```
1           I think that -- and there are limitations and one of
2   the limitations is the initiation of a foreclosure suit.  I
3   raise that just to show that what's showing here doesn't --
4   isn't plausibly debt collection.  Instead, it is responses to
5   questions that have been asked by Mr. Pinson.
6           And I want to raise one other thing here, and that's
7   something we raised in our motions, which is that Marshall
8   Watson, who was originally a defendant in this case, has been
9   dismissed from the case with prejudice, and I believe that the
10  claim -- the claims that are based upon the conduct of the
11  Marshall Watson firm and the dismissal of those claims should
12  preclude any assertion of liability on the basis of those
13  claims, and we cited the law on res judicata and why it applies
14  in this particular case.
15          I'll also refer the Court to Citibank, N.A. versus
16  Data Lease Financial Corporation, which is 904 F.2d 1498,
17  Eleventh Circuit, 1990.  And it held that the dismissal with
18  prejudice of debtor's claims against creditor's agents pursuant
19  to a settlement agreement extinguished the debtor's claims of
20  vicarious liability against the creditor.
21          So any claims that could arise -- and again, there is
22  no plausible claims that do, but to the extent that they arise
23  from the actions of Marshall Watson, they do not impose
24  liability on Chase.
25          And it is also important to note there that the
```

Monday, March 16, 2015

55

1   actions here that are alleged, they are only of Chase.  There

2   is no allegations as to CPCC, or JPMorgan Chase & Co, other

3   than status as the parent.

4          So with that, I'll perhaps take a step back.

5          THE COURT:  Thank you.

6          MR. LESSNE:  Thank you.

7          THE COURT:  Mr. Pinson.

8          MR. PINSON:  Do we start where we left off or with

9   Mr. Lessne's statements?

10         THE COURT:  We respond to the arguments that they

11  made on why the motion to dismiss should be granted.

12         MR. PINSON:  Oh, okay.  Mr. Lessne started out with

13  FDCPA should be handled because of his arguments that were

14  converted to a motion for summary judgment, which we spent a

15  considerable period of time on.

16         So the remaining issues are under a motion to

17  dismiss, and we were only at the pleading stage.  He

18  addressed -- Mr. Lessne addressed that there was no statement

19  that a disclosure was made to third parties, but -- let me see

20  if I have the complaint here -- I believe, Your Honor, that my

21  complaint does state that.

22         THE COURT:  But did you say what was said or you

23  just --

24         MR. PINSON:  Excuse me, sir?

25         THE COURT:  Did you give specifics as to what

Monday, March 16, 2015

1   allegedly was said that was disparaging?

2           MR. PINSON:  Well, that he was sent by Marshall

3   Watson Law Firm and it was questioned why, and because he was

4   there -- sent out there by a foreclosure law firm and there

5   must be -- I wasn't there when he stated it to the third

6   parties.

7           In other words, they came to me afterwards and he

8   apparently restated the same things he said before, because he

9   went over it again with me.

10          I'm sorry, I was speeding up.

11          THE COURT:  Did you say in the complaint what it was

12  that this person allegedly said to these people at your house,

13  when you weren't there?

14          MR. PINSON:  I'm looking.

15          Wolf intentionally or negligently or willfully

16  communicated to third parties of alleged debt and

17  communicated --

18          I don't mean to bounce around, but the opposing

19  Counsel had stated that, you know, communication wasn't debt

20  collection.  But under the FDCPA, as I understand it, it is not

21  necessarily debt collection, but communication related to the

22  collection of a consumer debt.

23          THE COURT:  What paragraph are you referring to in

24  your complaint?

25          MR. PINSON:  When I was discussing -- paragraph 38.

Monday, March 16, 2015

```
 1              THE COURT:  Okay.
 2              MR. PINSON:  Wolf intentionally or negligently or
 3   willfully communicated to third parties of alleged debt.
 4              THE COURT:  Okay.
 5              MR. PINSON:  And 39, Plaintiff has a reasonable
 6   expectation of privacy of plaintiff's solitude, seclusion,
 7   private concerns or affairs and private financial information.
 8              Forty, it is the policy of Congress that each
 9   financial institution has an affirmative and continuing
10   obligation to respect the privacy of its consumers and protect
11   the security and confidentiality of these customers' nonpublic
12   personal information.
13              THE COURT:  You need to slow down.
14              I see it, you don't need to read it in.  I just
15   wanted to know where in the complaint you were referring to, so
16   I see it here.
17              MR. PINSON:  And the last thing, not to repeat it
18   all, but Wolf revealed private financial facts to third
19   parties, where third parties had no need to know, and, you
20   know, that's conduct that, in 42, that would be highly
21   offensive to the plaintiff or any reasonable person.
22              It's something you don't expect when you are having a
23   little event at your house.
24              THE COURT:  Okay.  What else?
25              MR. PINSON:  There was also --
```

Monday, March 16, 2015

```
1           THE COURT:  Well, let me ask you this question I'm
2    sorry.  They cite a case that suggests that if you settled the
3    case against Watson --
4           MR. PINSON:  But I hadn't finished in the other
5    things that he listed off, Your Honor.
6           THE COURT:  Okay.
7           MR. PARENTE:  If you want me to.
8           THE COURT:  Go ahead.
9           MR. PINSON:  He stated under the Florida Statute
10   .227, I think it was, conduct to harass, and I feel it falls
11   under the same.  When you are embarrassed in such a situation
12   like that, it is quite disconcerting.
13          And .729 of the Florida Statute, threat to enforce,
14   that there has to be some knowledge and intent.  Well, they had
15   already sent me a letter stating they didn't own the loan, so
16   how could they enforce something that they didn't own.
17          And he cited *Reese versus Painter*, that you needed to
18   have advance knowledge.  And again, you know, they had already
19   sent a letter stating they didn't own the loan, so how can they
20   collect if they didn't own the loan?  They would have to have
21   advance knowledge.
22          There is quite a bit of case law about the
23   communications being related to a consumer debt, not debt
24   collection, and I think -- I can't cite them off the top of my
25   head, Your Honor, but *Lara* is one of the cases, *Gburek*, and
```

Monday, March 16, 2015

1   *Gulden*, and I believe I have them in my arguments, but I'm

2   familiar with those.

3           As far as the claims preclusion, I believe that what

4   they are saying, that it would be res judicata, would follow if

5   there was a separate lawsuit, but in this instance, JPMorgan

6   Chase was named as a defendant, along with Marshall Watson in

7   the initial complaint.

8           Marshall Watson put in a motion to dismiss, and we

9   arrived at a settlement between the parties prior to that being

10  ruled on and we submitted a notice, and you dismissed them from

11  the complaint.  But this isn't a separate complaint, it is the

12  same complaint, so res judicata wouldn't apply.

13          And as far as claims preclusion, which JPMorgan Chase

14  doesn't deny, Marshall Watson was employed by them as an agent

15  and Marshall Watson hired Mr. Wolf to come out as an agent,

16  then they would be liable because they -- as the master to the

17  agent or master to the servant, they have directed, and there

18  is a liability there, and that goes back a long way.

19          To the same extent, he mentioned that -- Mr. Lessne

20  mentioned that with regard to CPCC, that there is nothing to

21  show why they should be included.

22          Well, the letter that JPMorgan Chase -- or I'm

23  assuming JPMorgan Chase, the letter that Chase said the loan

24  was sold to a trust -- to a public security managed by CPCC and

25  that CPCC had the ability -- it was inferred, the ability to

1  handle concerns for the security and could delegate that to

2  JPMorgan, again, they would be the master over the servant

3  relating.

4        And then when you look at the SEC filings for these

5  entities, it always goes up and it was in their corporate

6  disclosure, that they are ultimately controlled by JPMorgan

7  Chase & Co, so ultimately JPMorgan Chase & Co exerts control

8  over all of these entities and also would be either vicariously

9  liable or would have a master-servant relationship.  And

10 certainly if they have ownership -- 100 ownership, then they

11 would be responsible.

12        THE COURT:  Well, that would mean that every parent

13 company is responsible for all of the acts of its subsidiaries,

14 and I don't think that's the law.

15        MR. PINSON:  I don't know the law, Your Honor.

16        THE COURT:  Okay.

17        MR. PINSON:  It's just my understanding.

18        THE COURT:  All right.  Anything else you want to

19 tell me?

20        MR. PINSON:  I believe I have addressed all of the

21 points made by the opposing Counsel.

22        Is there anything else, Your Honor?

23        THE COURT:  No.  Thank you.

24        MR. PINSON:  Thank you.

25        THE COURT:  Did you want to tell me about the motions

```
 1    to strike or are you prepared to do that?

 2              MR. PINSON:  Sure, I'll do my best.

 3              THE COURT:  Why don't we take a short break.  Then

 4    you can go over your notes and we'll come back.

 5              Let's take a ten minute recess.

 6         (Recess was had at 11:24 a.m.; proceedings resumed at

 7    11:35 a.m.)

 8              THE COURT:  Please be seated.

 9              Your motions to strike, do you want to be heard on

10    those?

11              MR. PINSON:  Yes, sir.  Can I have one second longer?

12              THE COURT:  Sure.  Were you waiting for your partner

13    to come back?

14              MR. LESSNE:  He just ran to the bathroom.

15              THE COURT:  We can wait for him.

16         (Pause in proceedings.)

17              MR. PINSON:  Sorry, Your Honor.

18              THE COURT:  That's all right.

19              MR. PINSON:  Thank you for your time.

20              Addressing the motions to strike, the first motion to

21    strike was entered because opposing Counsel included evidence

22    with their response -- with their motion to dismiss.  And

23    subsequently, that portion was converted to a motion for

24    summary judgment, I moved to strike it because it was not

25    authenticated properly.
```

Monday, March 16, 2015

```
 1              And then --
 2              THE COURT:  Well, are you talking about their motion?
 3              MR. PINSON:  No, the evidence that was attached, a
 4   copy of an alleged mortgage.
 5              THE COURT:  Okay.
 6              MR. PINSON:  So that was the basis for the move to
 7   strike.  They immediately filed in a certified copy of the
 8   alleged mortgage from the public record and I filed a motion to
 9   strike on that.
10              Let's see.  They had alleged, in their opposition to
11   my motion to strike, several things.  The first had to do with
12   the part that was converted to the motion for summary judgment,
13   which was whether or not Chase was an original creditor or not;
14   we have been over that before.
15              The second had to do with they denied that matters --
16   they had denied such that matters outside the pleadings could
17   be considered without converting to motion for summary
18   judgment, but you handled that when you put your order out
19   allowing that and cited a couple of cases there, so that was
20   taken care of.
21              The third, they asserted that Defendants have cured
22   the Plaintiff's objections of authenticity by filing in a
23   certified copy, but in my reply brief, I quoted several cases,
24   Southern Cross Overseas Agencies versus Walkland Shipping and
25   also McMahon versus General Dynamics, because the opposing
```

1   Counsel was asking the Court to take judicial notice of the

2   certified copy, but that a court may take judicial notice only

3   of the existence of certain documents and not the truth or

4   factual assertions contained within such documents, which is

5   *Lum versus Bank of America*.  So that's my argument there.

6          Fourth, all that might be -- provided that a document

7   was recorded, but it's disputable as to what is contained in

8   the document, and that is shown above.

9          And Fifth, in the response brief, they had argued

10  that the mortgage was central to Plaintiff's FDCPA allegation

11  against the Defendants, and that's a false assertion because

12  the complaint doesn't even state the word mortgage anywhere in

13  it, in the written complaint that was put in, and they cited

14  *Correa versus BAC Home Loan Servicing* and in the *Correa* case,

15  the Plaintiff had filed in copies of his mortgage or alleged

16  mortgage note with his complaint, and that's not the situation

17  here, so it's not analogous.  Those documents are trying to be

18  entered by the other side.

19         Further, they erroneously cited *Day versus Taylor*,

20  again a case that says that the documents were central to the

21  Plaintiff's claim, but they are not here.  They were not filed

22  in, so they are not central to my complaint.  Let's see, so it

23  fails to meet the centrality requirement.

24         And then finally, they cite a case, *Universal Express*

25  *versus The SEC*, and in the *Universal* case, it's not analogous

Monday, March 16, 2015

64

1  because in this case, the public record relied upon by the

2  court and in Universal, the documents were filed into the

3  Federal District Court, not the county recorder's office, and

4  apparently, there is a higher standard for documents filed into

5  court, for you to take judicial notice, so that was the case in

6  that -- in *Universal Express*, and it is not the case here, so

7  it is not analogous.

8         So that was my reply on the motion to strike.  The

9  reason that I moved to strike it is, again, in the affidavit,

10  that it doesn't appear to be the document, it's not the same

11  document, and it doesn't reflect the agreement.

12         And then finally, the third motion to strike, which

13  was against the affidavit and the attached documents in entry

14  109-1, the affidavit by Mr. DeL'Etoile wasn't signed and he

15  can't swear to those documents with an affidavit that wasn't

16  signed.  He wasn't a party working for Chase, never stated he

17  was a party working for Chase, and they can't show where the

18  note, if it was lost, was, where it came from.

19         They didn't address anything, they didn't file a

20  brief in opposition to that motion to strike.

21         THE COURT:  All right.  Thank you.

22         MR. PINSON:  Thank you.

23         MR. LESSNE:  Your Honor, as to the first two motions,

24  this is not the -- they were original -- the motions to strike

25  were directed because the Defendants were asking the Court to

Monday, March 16, 2015

65

1    take judicial notice; that's not the issue anymore.

2         The documents that -- the certified copy of the

3    mortgage is self-authenticating, the mortgage itself is

4    self-authenticating, there shouldn't be any issue about that.

5    The Defendants are not asking the Court to take judicial notice

6    of the documents anymore.  Instead they put it forward as

7    evidence in support of summary judgment as to the issue that

8    Chase was the original creditor.

9         As to the third motion to strike, there is the

10   absence of a signature line, although there is an

11   acknowledgment of being sworn in, and I think that it's

12   sufficient, in and of itself, at least with respect to the

13   purposes for which it was intended.  The Court doesn't need to

14   consider the affidavit for purposes of summary judgment.

15        However, if it would like, or perhaps we will do so

16   anyway, we will file a -- we will go back to Mr. DeL'Etoile and

17   have him execute another version or a --

18        THE COURT:  Actually sign it.

19        MR. LESSNE:  Actually sign the affidavit.

20        THE COURT:  Okay.

21        MR. LESSNE:  Thank you, Your Honor.

22        THE COURT:  All right.  I appreciate you being here

23   this morning, and we will get a ruling out, hopefully in the

24   next couple of weeks.

25        Yes, sir.

Monday, March 16, 2015

1          MR. PINSON:  When I spoke to the motion to dismiss

2    number -- the motion to strike number three, I was addressing

3    the form, but also I had issue in the brief that I filed with

4    the content of it, and I didn't know if you wanted me to go

5    over that.

6          THE COURT:  No, I understand it.

7          MR. PINSON:  You read it.

8          THE COURT:  I understand you have an issue with the

9    content as well as to form, but I'm going to let them correct

10   the form of it, in any event.

11         MR. PINSON:  And then we can readdress it?

12         THE COURT:  If you want to tell me the reasons why

13   you are challenging the content, go ahead.

14         MR. PINSON:  It's -- okay.

15         THE COURT:  I thought you already mentioned that he

16   was not an employee and he didn't -- he never worked there, and

17   I thought you already addressed the reason for the content.

18         Was there anything else?

19         MR. PINSON:  I would honestly have to read through it

20   again, and I don't know if you want me to.

21         THE COURT:  Well, I don't know want to prevent you

22   from making the arguments that you feel you need to make.

23         I thought you kind of covered it already by saying

24   that he was never an employee there, so he didn't have personal

25   knowledge of the documents, I thought that's what you

1    mentioned.

2              MR. PINSON:  Yes.

3              THE COURT:  Was there anything else?

4              MR. PINSON:  I don't mean to waste your time, I'm

5    going to have to search through my pile here for a moment.

6              THE COURT:  Go ahead.

7         (Pause in proceedings.)

8              MR. PINSON:  Yeah, I may have stated it already, but

9    I just want to rundown -- you know about the technical

10   requirement.  The statements only contained hearsay because he

11   didn't state that he worked for Chase or knew anything about

12   that.

13             The third party, he must affirmatively state that he

14   is competent to testify, which he didn't and the documents

15   attached to be stricken -- you're right, I apologize, Your

16   Honor.

17             THE COURT:  Did you want to add anything?

18             MR. LESSNE:  I'll be very brief, Your Honor.

19             Paragraph two says, I'm over the age of 18 and

20   competent to testify.

21             Paragraph three says he is making this affidavit on

22   personal knowledge, and then the remainder of the paragraph

23   meets the business records exception as to the business records

24   of Abertelli Law, not Chase.

25             So it's in his capacity as counsel, as foreclosure

1  counsel for Chase that he received the original note and

2  reviewed it, and then made the redaction.

3          THE COURT:  Thank you.

4          MR. LESSNE:  Thank you.

5          THE COURT:  As I said, we will try and get a ruling

6  out in the next couple weeks, all right.

7          Thank you.  Have a good day.

8          MR. PINSON:  Thank you.

9          MR. LOFFREDO:  Thank you, Your Honor.

10      (PROCEEDINGS ADJOURNED AT 11:47 A.M.)

11

12                  **C-E-R-T-I-F-I-C-A-T-E**

13          I hereby certify that the foregoing is

14      an accurate transcription and proceedings in the

15      above-entitled matter.

16
    *6/4/2015*                    */s/DIANE MILLER*
17   DATE                    DIANE MILLER, RMR, CRR
                             Federal Official Court Reporter
18                           United States District Court
                             701 Clematis Street, Room 259
19                           West Palm Beach, FL  33401
                             561-514-3728
20

21

22

23

24

25

Monday, March 16, 2015

**$**

$200,000 [1]  36/20
$202,000 [14]  5/23 17/17 19/16 19/21 19/24
 21/24 23/21 24/10 30/14 35/12 35/21 35/25
 36/25 39/6
$220,000 [1]  35/9

**.**

.227 [1]  58/10
.729 [1]  58/13

**/**

/s/DIANE [1]  68/16

**0**

0759 [1]  5/17

**1**

100 [1]  60/10
1005 [1]  5/13
107 [2]  8/12 11/6
109-1 [4]  8/19 8/20 33/11 64/14
11-2 [1]  1/23
11:24 [1]  61/6
11:35 a.m [1]  61/7
11:47 [1]  68/10
121 [2]  3/13 41/20
13 [1]  50/1
13-80720-CIV-MARRA [2]  1/2 2/5
13th [1]  5/2
14 [1]  53/11
1498 [1]  54/16
15 [1]  34/8
15 U.S.C [1]  3/19
16 [1]  1/6
1692 [2]  3/19 4/17
17th [1]  51/8
18 [1]  67/19
1850 [1]  1/20
1990 [1]  54/17

**2**

200 [1]  19/16
2005 [6]  5/21 17/16 35/13 39/3 39/4 39/4
2012 [8]  5/2 36/9 50/1 50/15 50/19 50/20
 50/21 51/8
2013 [1]  50/3
2015 [2]  1/6 68/16
21 [1]  3/13
22 [2]  38/13 46/3
23 [1]  35/8
23rd [6]  5/21 17/16 35/13 39/4 50/19 50/21
259 [1]  68/18
26th [1]  50/3
28th [1]  50/20

**3**

300 [1]  26/25
305 [1]  1/24
33128 [1]  1/23
33401 [2]  1/16 68/19
3728 [1]  68/19
38 [1]  56/25
39 [1]  57/5

**4**

400 [1]  1/23

401 [1]  1/20
42 [1]  57/20
45 [1]  11/7

**5**

51 [1]  38/10
523-5251 [1]  1/24
5251 [1]  1/24
526 [1]  1/15
559.725 [1]  51/17
559.727 [1]  52/2
559.729 [1]  52/8
56 [1]  14/15
561-514-3728 [1]  68/19

**6**

6.650 [1]  17/17
6/4/2015 [1]  68/16
64 [3]  9/10 9/11 34/11

**7**

701 [1]  68/18

**8**

80 [1]  1/7
8th [2]  51/2 51/6

**9**

90204 [1]  5/12
9028 [1]  5/15
904 [1]  54/16
9th [1]  50/23

**A**

a.m [3]  61/6 61/7 68/10
AAA [1]  29/25
Abertelli [2]  33/13 67/24
ability [1]  59/25 59/25
able [2]  25/20 37/25
about [34]  4/7 5/10 6/12 7/8 7/8 7/14 7/14
 9/13 12/21 13/1 15/22 18/14 21/1 23/11
 30/10 30/17 31/1 32/3 34/2 34/11 38/1 40/9
 40/9 40/25 45/1 48/13 49/6 53/8 58/22
 60/25 62/2 65/4 67/9 67/11
above [4]  48/6 51/7 63/8 68/15
above-entitled [1]  68/15
absence [1]  65/10
Absolutely [1]  6/1
Accordingly [1]  53/10
accurate [1]  68/14
accused [1]  35/21
acknowledged [1]  48/20
acknowledgment [1]  65/11
acquires [1]  30/23
acted [1]  53/13
action [4]  40/14 49/23 52/12 53/1
actions [2]  54/23 55/1
activity [1]  53/22
acts [2]  53/17 60/13
actual [1]  8/3
actually [16]  12/2 12/16 14/9 16/18 19/15
 23/11 29/12 30/10 30/17 39/2 39/6 39/8
 45/16 53/13 65/18 65/19
add [1]  67/17
adding [1]  14/10
addition [1]  3/23
additional [1]  12/7
address [3]  50/25 51/3 64/19

addressed [5]  44/14 55/18 55/18 60/20
 66/17
addressing [2]  61/20 66/2
adequately [3]  4/18 6/22 20/9
ADJOURNED [1]  68/10
admissible [2]  5/12 48/20
advance [3]  41/3 58/18 58/21
advanced [1]  19/21
adverse [1]  53/1
affairs [1]  57/7
affect [1]  8/11
affecting [1]  51/18
affidavit [41]  6/2 8/11 8/21 9/17 10/4 11/5
 12/6 12/11 12/25 18/9 18/12 25/12 27/23
 31/24 31/25 32/20 32/24 32/25 33/2 33/5
 33/12 34/9 38/13 44/16 45/25 46/3 46/9
 47/11 48/11 48/16 48/23 49/1 49/3 49/5
 64/9 64/13 64/14 64/15 64/15 65/14 65/19 67/21
affidavits [2]  15/24 32/22
affirmative [1]  57/9
affirmatively [1]  67/13
after [12]  5/5 14/22 20/22 22/6 31/2 34/24
 37/17 39/18 40/2 42/6 43/12 47/16
afterwards [1]  56/7
again [19]  8/15 10/3 14/25 27/3 27/21 30/5
 31/16 31/17 36/4 43/2 44/4 48/16 54/21
 56/9 58/18 60/2 63/20 64/9 66/20
against [11]  14/8 14/9 23/6 36/3 38/16 53/1
 54/18 54/20 58/3 63/11 64/13
age [1]  67/19
Agencies [1]  62/24
agent [3]  59/14 59/15 59/17
agents [1]  54/18
ago [1]  46/4
agree [6]  28/19 30/6 30/9 30/16 30/25 42/20
agreement [6]  11/23 11/25 20/10 39/20
 54/19 64/11
ahead [7]  32/1 46/10 47/7 49/24 58/8 66/13
 67/6
Airlines [1]  29/25
al [2]  1/7 2/4
alerted [1]  14/24
all [50]  2/19 6/24 7/25 8/6 9/12 9/24 10/4
 10/24 12/19 13/4 15/24 16/5 16/7 24/6 24/8
 25/11 25/20 26/18 27/17 27/21 29/3 30/2
 30/5 31/23 34/8 34/22 38/1 38/3 38/9 38/23
 39/15 39/19 40/8 43/21 44/6 45/7 46/10
 47/7 48/14 50/22 57/18 60/8 60/13 60/18
 60/20 61/18 63/6 64/21 65/22 68/6
allegation [7]  45/3 45/3 45/14 51/10 51/25
 52/11 63/10
allegations [6]  4/2 4/13 51/13 52/5 53/2
 55/2
allege [1]  4/19
alleged [22]  4/22 6/5 7/5 32/21 38/22 39/20
 40/14 45/22 46/6 48/13 49/14 49/22 51/19
 52/5 53/5 55/1 56/16 57/3 62/4 62/8 62/10
 63/15
allegedly [5]  41/13 41/14 44/18 56/1 56/12
allowed [1]  14/15
allowing [1]  62/19
alone [1]  11/16
along [2]  30/24 59/6
already [8]  8/6 41/1 58/15 58/18 66/15
 66/17 66/23 67/8
also [10]  3/2 10/18 37/23 44/17 54/15 54/25
 57/25 60/8 62/25 66/3

**A**

although [1] 65/10
always [1] 60/5
am [3] 21/3 47/5 49/23
ambiguous [2] 15/16 26/23
ambiguously [1] 27/1
amended [5] 14/10 14/12 14/13 52/21 53/1
America [1] 63/5
amount [4] 17/17 37/16 51/4 51/7
analogous [3] 63/17 63/25 64/7
analysis [6] 4/10 28/1 28/3 28/23 49/19
  49/22
another [4] 13/7 14/12 23/14 65/17
answer [8] 16/12 16/13 17/14 24/6 34/18
  36/8 41/21 46/17
answered [3] 34/19 38/18 44/17
answering [2] 27/21 34/14
answers [1] 10/23
any [34] 6/19 11/10 11/13 17/12 18/6 18/9
  18/11 19/14 23/5 24/20 27/20 31/19 31/20
  32/9 32/16 32/17 33/5 34/9 36/5 36/6 37/22
  42/12 43/19 44/20 44/20 44/22 47/4 53/15
  53/21 54/12 54/21 57/21 65/4 66/10
anymore [2] 65/1 65/6
anyone [3] 35/20 44/15 48/17
anything [20] 4/22 12/2 18/14 19/14 22/22
  27/19 27/25 32/14 38/19 43/1 44/5 45/10
  53/20 60/18 60/22 64/19 66/18 67/3 67/11
  67/17
anyway [3] 15/14 24/8 65/16
anywhere [1] 63/12
apologize [4] 8/17 16/4 28/3 67/15
apparently [2] 56/8 64/4
appear [6] 17/8 18/25 25/9 26/7 53/20
  64/10
appearances [2] 1/14 2/7
appeared [1] 48/4
appears [2] 34/19 53/19
appendix [1] 50/8
application [1] 18/6
applied [9] 19/19 19/19 21/11 29/16 29/16
  29/21 29/24 37/11 37/13
applies [1] 54/13
apply [4] 25/25 26/2 29/16 59/12
applying [1] 37/15
appreciate [1] 65/22
April [2] 5/2 50/1
are [126]
aren't [1] 7/24
argue [1] 23/6
argued [1] 63/9
argument [4] 6/4 13/7 28/25 63/5
arguments [4] 55/10 55/13 59/1 66/22
arise [2] 54/21 54/22
around [7] 11/7 22/24 35/11 35/13 39/3
  39/4 56/18
arrived [2] 30/3 59/9
as [74]
ask [6] 17/13 20/25 21/3 22/5 47/9 58/1
asked [2] 38/24 54/5
asking [8] 7/1 10/3 16/18 17/10 37/12 63/1
  64/25 65/5
asserted [2] 11/19 62/21
asserting [1] 52/9
assertion [4] 27/8 53/15 54/12 63/11
assertions [1] 63/4

ASSOCIATION [1] 1/7
assume [2] 6/15 19/9
assuming [3] 7/5 29/23 59/23
attached [9] 4/24 6/24 8/2 8/19 12/11 18/23
  62/3 64/13 67/15
attaching [1] 12/18
attempted [4] 22/15 25/25 32/17 34/13
attest [1] 44/15
attested [1] 48/19
attesting [1] 32/20
attorney [3] 33/13 34/20 51/3
August [4] 50/23 51/2 51/6 51/8
authenticated [1] 61/25
authenticating [7] 5/11 5/14 8/6 27/20
  48/16 65/3 65/4
authentication [1] 8/5
authenticity [4] 32/20 49/7 49/7 62/22
automatically [2] 24/25 49/7
Avenue [1] 1/23
avoid [1] 18/20
away [3] 20/19 21/22 34/5

**B**

BAC [1] 63/14
back [20] 6/22 10/15 11/1 13/6 15/14 20/22
  22/8 26/19 34/22 38/15 43/2 43/3 43/3
  46/18 46/22 55/4 59/18 61/4 61/13 65/16
balance [1] 5/23
bank [16] 1/6 2/10 3/11 3/21 5/22 6/19
  17/21 18/7 25/1 26/24 37/18 48/22 50/10
  50/22 52/19 63/5
bar [1] 19/10
barcode [4] 11/10 34/10 34/17 34/24
based [2] 25/8 54/10
basis [7] 17/25 27/5 29/11 29/13 46/13
  54/12 62/6
bathroom [1] 61/14
be [65] 2/2 2/20 3/22 3/25 6/20 10/7 11/17
  11/19 13/21 17/8 18/25 20/3 23/2 25/6 25/9
  25/17 25/18 25/18 26/2 26/11 26/12 26/15
  26/20 28/5 28/8 29/7 29/8 30/12 30/20 32/4
  33/11 34/19 36/9 37/8 40/16 42/14 42/15
  43/2 48/7 48/20 52/3 52/11 52/14 53/19
  53/21 55/11 55/13 56/5 57/20 58/14 59/4
  59/16 59/21 60/2 60/8 60/11 61/8 61/9
  62/17 63/6 63/17 64/10 65/4 67/15 67/18
BEACH [5] 1/2 1/5 1/16 5/24 68/19
became [1] 41/22
because [39] 4/6 9/13 13/12 15/4 15/12
  15/15 15/16 16/4 16/17 18/2 19/12 20/8
  20/9 23/4 25/7 26/12 26/23 28/13 28/15
  29/15 29/20 32/11 32/15 33/3 45/12 46/19
  49/10 49/17 55/13 56/3 56/8 59/16 61/21
  61/24 62/25 63/11 64/1 64/25 67/10
become [2] 43/10 48/25
been [14] 2/20 10/18 19/12 34/24 36/4 36/6
  36/19 36/21 36/24 49/22 53/15 54/5 54/8
  62/14
been indicated [1] 2/20
before [15] 1/12 7/1 13/20 14/10 16/3 18/4
  32/18 33/15 36/12 41/4 41/22 44/3 48/4
  56/8 62/14
befuddled [1] 28/4
beginning [2] 26/22 30/23
behalf [2] 5/3 19/22
Behind [1] 51/2
being [18] 11/19 15/9 22/9 29/18 35/10

38/24 40/20 42/2 42/7 42/11 42/19 43/14
  48/21 49/1 58/23 59/9 65/11 65/22
believe [18] 3/2 20/5 20/7 23/24 24/16
  32/11 32/13 33/2 42/1 42/2 42/17 43/3
  43/17 54/9 55/20 59/1 59/3 60/20
benefit [1] 15/5
best [4] 11/16 15/4 33/8 61/2
between [6] 3/11 5/22 8/3 31/13 38/23 59/9
beyond [1] 28/2
biggest [1] 21/24
bit [4] 15/16 41/23 48/10 58/22
Black's [1] 29/4
block [1] 48/6
borrow [2] 12/12 18/14
borrowed [8] 17/5 18/15 21/23 22/1 23/21
  23/22 25/5 39/6
borrowing [1] 20/10
both [2] 5/18 44/11
bottom [2] 9/23 10/7
bottoms [1] 10/10 23/8
bought [1] 21/15
Boulevard [1] 1/20
bounce [1] 56/18
break [1] 61/3
breath [1] 38/15
brief [5] 62/23 63/9 64/20 66/3 67/18
briefing [1] 12/7
briefs [1] 52/20
bring [2] 10/10 23/8
broad [1] 53/23
broker [7] 18/3 18/3 22/8 29/17 29/21
  29/22 44/4
brokered [1] 44/3
brought [1] 46/19
bunch [1] 41/7
burden [3] 8/8 8/10 48/21
business [3] 2/11 67/23 67/23
buy [2] 21/17 30/14

**C**

C-E-R-T-I-F-I-C-A-T-E [1] 68/12
call [1] 24/6
called [1] 39/21
came [3] 38/22 56/7 64/18
can [31] 5/25 6/20 10/2 10/15 12/1 12/23
  13/6 13/6 13/18 15/17 17/13 24/6 24/6 26/9
  29/20 30/14 36/17 38/11 42/9 45/14 46/17
  48/20 49/6 49/9 49/10 52/3 58/19 61/4
  61/11 61/15 66/5
can't [17] 10/8 16/23 24/5 28/12 29/24 35/5
  35/6 35/18 38/4 38/22 39/12 39/13 45/8
  45/13 58/24 64/15 64/17
cancel [1] 20/21
capacity [1] 67/25
car [2] 21/15 21/17
care [1] 62/20
case [42] 1/2 2/3 2/4 3/14 7/1 7/3 9/2 11/1
  13/3 13/15 14/20 14/24 25/15 27/4 30/10
  39/2 39/11 40/16 42/18 43/19 45/8 45/16
  46/5 48/7 49/8 49/13 53/3 53/13 53/14 54/8
  54/9 54/14 58/2 58/3 58/22 63/14 63/20
  63/24 63/25 64/1 64/5 64/6
cases [3] 58/25 62/19 62/23
category [1] 6/13
caught [1] 15/1
cause [2] 49/23 52/12
central [3] 63/10 63/20 63/22

**C**

centrality [1] 63/23
certain [3] 12/20 50/10 63/3
certainly [2] 49/3 60/10
certification [1] 48/18
certified [13] 3/11 5/5 5/9 5/10 9/1 9/4
 12/24 44/14 48/15 62/7 62/23 63/2 65/2
certify [1] 68/13
cetera [2] 23/18 23/19
chain [1] 26/17
challenge [2] 11/17 12/15
challenged [2] 40/19 40/19
challenging [1] 66/13
chance [1] 9/6
change [1] 42/23
changed [1] 18/4
CHASE [101]
Chase's [4] 3/24 4/7 5/3 13/2
check [2] 18/6 29/12
checks [1] 24/23
Circuit [1] 54/17
circumstances [2] 7/23 7/24
cite [4] 52/18 58/2 58/24 63/24
cited [6] 52/20 54/13 58/17 62/19 63/13
 63/19
Citibank [1] 54/15
civ [2] 1/2 2/5
claim [14] 4/3 4/6 4/11 5/20 31/7 36/17
 40/10 40/10 41/4 49/10 49/14 53/18 54/10
 63/21
claimed [2] 37/9 37/23
claiming [6] 7/3 7/4 31/25 35/25 36/2 37/8
claims [11] 6/6 7/19 54/10 54/11 54/13
 54/18 54/19 54/21 54/22 59/3 59/13
clear [3] 6/16 6/19 48/25
Clematis [1] 68/18
clerk [2] 11/22 48/19
clerk's [1] 40/6
client [2] 8/3 11/4
close [1] 15/10
closing [3] 21/21 34/4 34/5
Co [5] 2/11 52/20 55/2 60/7 60/7
collapsed [1] 38/15
collect [3] 51/11 53/23 58/20
collection [7] 53/21 53/22 54/4 56/20 56/21
 56/22 58/24
collector [12] 3/18 3/20 4/8 4/16 4/20 6/9
 11/4 16/23 28/12 28/14 28/15 47/3
collectors [2] 28/16 52/12
come [8] 15/13 35/20 37/2 43/2 44/11 59/15
 61/4 61/13
coming [2] 5/2 41/1
committed [2] 19/20 30/20
communicated [3] 56/16 56/17 57/3
communication [2] 56/19 56/21
communications [1] 58/23
company [1] 60/13
compare [1] 19/1
competent [2] 67/14 67/20
complain [1] 15/6
complaining [1] 31/1
complaint [44] 3/7 4/11 4/21 4/24 5/4 12/19
 14/8 14/10 14/12 14/13 15/14 15/23 16/9
 16/10 16/14 16/15 38/17 38/20 40/18 44/25
 45/1 45/9 45/12 45/19 50/2 51/20 51/23
 51/24 51/25 52/22 53/2 55/20 55/21 56/11

56/24 57/15 59/7 59/11 59/11 59/12 63/12
 63/13 63/16 63/22
complaints [2] 45/7 45/12
complete [1] 9/20
complicated [1] 3/14
concern [1] 18/16
concerned [1] 8/12
concerns [2] 57/7 60/1
conclude [2] 8/1 11/2
conclusion [1] 4/21
conclusions [2] 4/13 52/17
conclusory [3] 11/24 12/4 53/2
conduct [7] 3/24 52/3 52/4 52/6 54/10
 57/20 58/10
confident [1] 43/18
confidentiality [1] 57/11
Congress [2] 43/5 57/8
consider [3] 3/10 41/19 65/14
considerable [2] 39/17 55/15
consideration [1] 5/6
considered [2] 2/20 62/17
construed [1] 54/17
consumer [10] 40/15 40/15 40/16 41/15
 41/17 42/2 42/3 51/11 56/22 58/23
consumers [2] 43/6 57/10
contact [1] 30/2
contacted [1] 30/1
contain [1] 52/16
contained [4] 11/12 63/4 63/7 67/10
contains [2] 5/16 53/2
content [5] 39/24 66/4 66/9 66/13 66/17
contention [1] 27/9
Continental [1] 29/25
continuance [1] 15/3
continue [1] 13/6
continuing [1] 57/9
contract [2] 31/15 31/19
contractual [1] 11/25
control [1] 60/7
controlled [1] 60/6
conversion [1] 49/11
converted [7] 3/7 3/10 5/7 14/14 55/14
 61/23 62/12
converting [1] 62/17
convince [1] 22/18
cooking [1] 41/8
copies [4] 21/8 39/7 44/14 63/15
copy [41] 3/11 5/5 5/9 5/11 5/12 9/1 9/5
 9/15 9/19 9/20 9/24 9/25 10/6 10/12 10/14
 10/17 10/22 12/24 19/2 19/4 20/12 20/14
 20/15 20/24 20/25 21/3 21/25 22/2 22/3
 22/5 23/16 23/21 23/24 35/16 35/17 48/15
 62/4 62/7 62/23 63/2 65/2
corporate [1] 60/5
Corporation [1] 54/16
Correa [2] 63/14 63/14
correct [8] 9/11 17/2 29/22 30/8 31/3 39/14
 47/6 66/9
correspondence [3] 5/18 6/24 37/18
could [9] 11/17 15/4 25/9 34/24 43/25 54/21
 58/16 60/1 62/16
couldn't [3] 25/7 32/15 42/25
counsel [13] 2/6 3/8 9/16 10/21 22/24 27/19
 46/7 56/19 60/21 61/21 63/1 67/25 68/1
count [4] 3/7 38/20 53/11 53/12
countered [2] 8/10 12/5
county [5] 39/17 44/25 45/2 46/5 64/3

couple [4] 3/15 62/19 65/24 68/6
course [1] 12/5
court [34] 1/1 1/22 2/9 3/2 3/10 4/5 5/7 12/7
 12/23 14/4 14/24 44/25 45/2 45/15 46/2
 46/5 46/5 48/12 48/24 49/20 53/9 53/12
 53/13 54/15 63/1 63/2 64/2 64/3 64/5 64/25
 65/5 65/13 68/17 68/18
court's [1] 48/12
courthouse [1] 15/11
courtroom [2] 2/12 16/3
coverage [2] 31/20 31/20
covered [1] 66/23
Cowart [1] 44/19
CPCC [8] 2/11 25/22 50/18 50/20 55/2
 59/20 59/24 59/25
create [4] 6/7 6/20 7/6 43/4
creditor [37] 6/23 11/21 13/3 29/1 29/2
 29/8 30/6 30/7 30/8 30/9 30/12 30/19 31/9
 31/11 31/20 31/21 40/14 40/20 42/4 42/5
 42/7 42/8 42/11 42/14 42/19 42/22 42/23
 43/1 43/2 43/11 43/15 44/12 49/13 49/17
 54/20 62/13 65/8
creditor's [1] 54/18
critical [1] 13/12
Cross [1] 62/24
CRR [2] 1/22 68/17
cured [1] 62/21
current [8] 26/15 27/6 27/12 27/14 28/20
 37/20 42/14 47/4
currently [1] 28/21
customers' [1] 57/11
cut [8] 9/14 9/20 9/21 9/22 10/1 10/2 10/8
 10/13

**D**

Data [1] 54/16
date [7] 25/25 35/11 35/11 39/5 39/18 39/24
 68/17
dated [2] 5/21 50/15
day [9] 14/20 14/21 20/20 30/4 35/8 40/4
 41/6 63/19 68/7
days [1] 40/4
DE [1] 11/6
DE54 [1] 50/8
DE58 [1] 3/6
deadlines [1] 15/10
deal [3] 2/23 23/1 46/15
dealing [2] 18/2 23/23 27/2 32/10 37/14
 48/9
dealt [3] 29/6 38/19 44/16
debited [1] 24/25
debt [33] 3/18 3/20 4/7 4/15 4/16 4/20 6/9
 11/4 13/2 16/23 22/22 28/12 28/14 28/14
 28/16 40/15 41/2 47/3 50/24 52/8 52/9
 52/12 52/23 53/21 53/23 54/4 56/16 56/19
 56/21 56/22 57/3 58/23 58/23
debtor [3] 6/5 6/8 6/8
debtor's [3] 51/18 54/18 54/19
December [6] 5/21 17/16 35/8 35/13 39/3
 39/4
declare [1] 45/15
declared [1] 45/20
defendant [7] 14/9 14/10 39/11 48/22 52/13
 54/8 59/6
Defendants [2] 1/8 1/18 2/10 3/24 5/4 8/7
 12/1 14/9 62/21 63/11 64/25 65/5
Defendants' [1] 16/16

**D**

defending [1]  27/4
defense [7]  27/4 27/13 27/16 28/10 28/18
 41/1 41/4
defined [1]  53/22
definition [4]  3/18 4/1 4/7 28/16
DeL'Etoile [9]  8/23 8/24 33/12 44/16 46/9
 47/11 47/19 64/14 65/16
Delaware [2]  2/11 25/23
delay [1]  18/20
delegate [1]  60/1
delinquent [2]  26/2 38/17
Delta [1]  29/25
demanding [1]  37/17
denial [2]  12/1 17/25
denied [5]  26/3 37/17 38/24 62/15 62/16
denies [1]  11/25
deny [5]  12/1 40/9 40/10 46/1 59/14
denying [8]  12/10 17/5 17/11 17/15 17/18
 17/19 17/20 17/23
depositions [1]  15/24
deputy [1]  48/18
describing [1]  7/24
destroyed [2]  44/24 46/6
diane [4]  1/22 1/24 68/16 68/17
Dictionary [1]  29/4
did [28]  15/4 19/1 19/16 20/17 20/25 21/8
 21/10 21/19 24/10 24/10 24/19 24/23 25/2
 26/2 26/6 34/1 34/9 35/7 35/9 40/8 44/9
 46/12 53/16 55/22 55/25 56/11 60/25 67/17
did sign [1]  35/7
didn't [65]  6/6 6/11 6/17 7/4 7/21 10/10
 11/10 12/12 13/9 16/12 16/13 17/2 18/14
 18/22 18/23 18/25 19/18 20/2 20/14 20/20
 20/24 21/1 21/2 21/23 22/3 22/25 22/19
 22/21 23/23 23/25 24/14 26/19 26/20 27/14
 29/16 29/18 32/22 32/23 33/3 33/18 33/22
 33/23 36/8 37/14 37/22 37/25 41/6 41/15
 43/1 44/18 45/25 46/1 46/7 46/7 58/15
 58/16 58/19 58/20 64/19 64/19 66/4 66/16
 66/24 67/11 67/14
difference [3]  28/19 31/5 47/4
different [6]  13/10 18/7 19/15 26/23 26/25
 29/3
difficult [2]  22/9 28/5
digits [1]  5/17
directed [2]  59/17 64/25
directly [1]  34/15
disclosing [1]  51/18
disclosure [2]  55/19 60/6
disconcerting [1]  58/12
discovery [14]  2/22 14/16 14/16 14/19 25/7
 32/15 32/16 34/14 34/19 38/21 38/24 41/22
 41/23 44/17
discrepancy [1]  44/15
discuss [2]  6/3 41/11
discussing [1]  56/25
discussion [1]  27/3
dismiss [15]  2/19 3/1 3/6 3/7 5/8 14/11
 14/14 18/13 49/19 53/11 55/11 55/17 59/8
 61/22 66/1
dismissal [2]  54/11 54/17
dismissed [2]  54/9 59/10
dismisses [1]  53/12
disparaging [1]  56/1
disputable [1]  63/7

dispute [4]  6/16 39/2 39/3 42/4
disputed [1]  40/23
disputing [1]  12/20
Disregarding [1]  4/12
DISTRICT [5]  1/1 1/1 1/12 64/3 68/18
DIVISION [1]  1/2
divorced [1]  31/19
do [48]  4/13 8/20 10/14 10/15 13/9 13/17
 13/20 15/11 16/10 19/1 19/6 19/8 19/9
 22/22 22/22 23/15 24/1 24/6 25/7 25/13
 28/10 28/24 29/10 32/15 32/16 32/16 32/17
 33/14 34/13 35/7 35/17 42/16 46/20 46/20
 47/7 49/17 49/23 51/13 51/13 54/22 54/23
 55/8 61/1 61/2 61/9 62/11 62/15 65/15
docket [8]  3/13 8/18 9/10 9/11 33/9 33/11
 34/10 41/20
document [55]  6/7 6/18 7/4 7/8 7/9 7/11
 7/12 7/15 7/16 7/18 8/18 9/3 9/20 9/24 9/24
 11/10 12/10 17/6 17/9 18/22 18/24 18/25
 19/2 20/1 20/2 20/5 22/5 22/19 23/12 23/12
 23/13 23/14 23/15 23/16 23/18 23/25 24/9
 24/9 24/13 34/9 34/12 35/1 35/3 35/8 35/13
 38/4 39/16 39/22 39/23 39/25 48/20 63/6
 63/8 64/10 64/11
documentation [2]  8/3 37/23
documents [34]  4/24 8/22 10/11 11/3 11/14
 12/3 13/13 15/8 19/4 21/19 21/25 27/9
 27/20 29/17 29/18 39/10 39/12 40/21 44/10
 44/16 46/8 46/13 63/3 63/4 63/17 63/20
 64/2 64/4 64/13 64/15 65/2 65/6 66/25
 67/14
does [18]  4/5 4/12 6/7 7/5 10/17 11/9 11/16
 23/15 26/14 27/12 27/15 28/20 31/5 32/6
 42/23 52/10 52/22 55/21
doesn't [28]  11/24 12/8 12/8 12/15 12/15
 16/19 17/8 20/9 28/19 28/21 33/5 33/25
 34/1 39/24 43/22 43/23 43/23 44/19 44/20
 47/4 48/3 52/30 54/3 59/14 63/12 64/10
 64/11 65/13
don't [65]  6/18 7/12 8/14 8/19 10/22 13/11
 13/22 15/5 15/8 15/13 16/25 18/11 18/14
 19/3 19/4 19/5 20/5 20/7 20/12 21/3 22/15
 23/5 23/16 23/21 24/17 24/18 25/24 26/16
 27/19 28/2 32/13 32/16 35/10 35/16 36/22
 37/22 38/3 38/5 38/6 38/10 38/12 39/3 39/7
 40/5 40/6 40/6 41/20 45/10 47/12 47/23
 49/14 49/16 49/21 50/5 52/1 52/1 56/18
 57/14 57/22 60/14 60/15 61/3 66/20 66/21
 67/4
down [6]  15/10 15/13 34/23 53/6 53/9
 57/13
drawn [1]  18/7
due [1]  14/21
during [1]  41/23
Dynamics [1]  62/25

**E**

e-mails [1]  15/8
each [2]  11/15 57/8
earlier [3]  9/2 14/20 15/3
economy [1]  38/15
eight [1]  53/12
either [9]  4/14 15/23 40/20 41/7 42/9 49/14
 51/14 53/24 60/8
elements [2]  51/14 52/17
Eleventh [1]  54/17
else [18]  7/5 18/15 26/9 35/20 35/24 36/4

36/14 37/9 40/8 41/9 42/21 44/9 47/7 57/24
 60/18 60/22 66/18 67/23
embarrassed [1]  58/11
employed [1]  59/14
employee [5]  33/1 33/1 34/20 66/16 66/24
end [2]  26/8 31/21
ended [1]  31/19
enforce [3]  52/8 58/13 58/16
enforceability [3]  7/14 11/18 12/21
enforced [1]  11/20
engaging [1]  52/3
enough [2]  38/1 52/14
enter [1]  12/13
entered [7]  17/15 21/5 21/13 21/14 45/16
 61/21 63/18
entities [4]  26/24 26/25 60/5 60/8
entitled [2]  52/24 68/15
entity [12]  25/4 25/19 29/11 30/10 30/13
 30/14 30/15 30/22 30/24 35/12 36/16 37/7
entries [2]  3/13 41/20
entry [8]  8/18 9/3 9/10 9/11 33/9 33/11
 34/10 64/13
Erik [3]  8/22 33/12 47/19
erroneous [2]  14/23 14/25
erroneously [1]  63/19
ESQ [2]  1/18 1/19
establish [2]  26/20 53/3
establishing [1]  48/22
estate [1]  5/24
et [4]  1/7 2/4 23/18 23/19
et cetera [1]  23/19
evaded [1]  34/14
even [13]  7/17 16/17 17/1 32/16 33/3 33/25
 35/19 39/16 41/20 42/5 43/23 50/5 63/12
event [3]  21/21 57/23 66/10
ever [11]  19/1 20/25 21/5 21/8 21/12 21/14
 21/15 21/24 24/20 33/1 45/20
every [1]  60/12
everyone [2]  36/14 38/14
everything [1]  7/5
evidence [8]  5/12 5/13 5/14 12/24 43/19
 61/21 62/3 65/7
exact [3]  35/10 39/5 51/25
examine [1]  33/5
except [1]  40/24
exception [1]  67/23
exchanges [1]  50/1
excluded [3]  3/18 4/1 6/9
excludes [1]  4/16
exclusion [2]  4/7 4/9
excuse [2]  52/19 55/24
execute [1]  65/17
executed [2]  11/14 39/18
exerts [1]  60/7
Exhibit [3]  8/12 11/6 50/12
exhibits [2]  14/23 14/25
exist [2]  13/13 29/4
existence [9]  7/9 7/11 11/19 12/15 12/20
 12/22 13/1 52/10 63/3
exists [2]  17/7 52/10
expect [1]  57/22
expectation [1]  57/6
expected [1]  52/4
experience [1]  45/6
expired [1]  15/2
explained [4]  11/11 34/16 34/25 41/22
explains [1]  9/17

**E**

explanation [1]  48/13
Express [2]  63/24 64/6
expressly [1]  4/16
extent [2]  54/22 59/19
extinguished [1]  54/19
extra [1]  37/23
extraneous [2]  15/20 16/1

**F**

F.2d [1]  54/16
face [2]  4/3 5/10
facially [1]  4/11
fact [17]  6/7 7/6 8/2 8/10 11/16 11/24 12/16
  13/1 26/20 34/25 42/6 45/9 46/1 48/25 49/2
  49/6 52/6
facts [6]  4/22 49/14 52/14 52/22 53/3 57/18
factual [4]  4/2 4/13 6/20 63/4
failed [1]  33/2
fails [3]  49/22 52/24 63/23
failure [1]  49/10
falls [2]  6/13 58/10
false [1]  63/11
familiar [3]  48/24 49/20 59/2
family [2]  41/9 51/23
far [3]  13/12 59/3 59/13
fast [1]  16/4
FCCPA [9]  3/8 4/10 14/8 40/24 49/15
  49/18 51/14 51/15 51/17
FDCPA [24]  3/8 3/22 3/25 4/6 4/19 14/8
  22/23 28/25 30/18 40/12 40/18 40/24 41/1
  42/1 42/5 42/6 43/5 49/15 49/17 50/3 51/14
  55/13 56/20 63/10
Federal [8]  5/12 5/13 5/14 16/3 16/3 40/10
  64/3 68/17
feel [2]  58/10 66/22
fellow [1]  44/17
felt [1]  14/19
Fifth [1]  63/9
figure [2]  28/22 30/16
figures [1]  51/5
file [12]  14/12 14/21 32/22 37/14 38/16
  41/19 45/12 46/7 51/1 51/3 64/19 65/16
filed [49]  3/3 5/4 6/2 8/22 9/2 11/5 11/22
  12/6 14/8 14/9 14/23 14/24 15/9 15/14 16/9
  18/12 19/10 22/21 22/25 22/25 23/6 23/19
  32/18 32/25 33/2 38/18 38/20 39/16 39/17
  39/22 39/23 39/24 40/1 40/21 44/10 44/25
  45/2 45/19 45/24 46/13 48/11 50/3 62/7
  62/8 63/15 63/21 64/2 64/4 66/3
filing [4]  5/5 10/16 12/24 62/22
filings [3]  15/11 26/8 60/4
fill [1]  48/3
filled [1]  29/24
finally [2]  63/24 64/12
finance [4]  44/4 52/23 52/25 53/4
Finance's [1]  53/10
financial [6]  41/12 44/19 54/16 57/7 57/9
  57/18
Financing [5]  25/3 26/1 26/24 40/22 44/13
find [9]  16/11 25/8 26/9 26/17 36/11 36/12
  36/16 45/8 45/13
finish [1]  31/10
finished [1]  58/4
firm [8]  33/13 34/21 37/14 41/14 44/19
  54/11 56/3 56/4

**F (continued)**

first [14]  3/17 4/15 9/1 16/3 18/11 21/12
  21/14 26/4 31/14 31/17 44/1 61/20 62/11
  64/23
fit [1]  42/2
FL [1]  1/23 68/19
FLORIDA [7]  1/1 1/5 1/16 1/20 40/10 58/9
  58/13
flsd.uscourts.gov [1]  1/24
flurry [2]  14/17 41/24
focus [3]  16/16 17/3 51/15
follow [1]  59/4
foreclosure [8]  9/16 10/21 36/3 45/11 45/16
  54/2 56/4 67/25
foregoing [2]  33/15 68/13
foreign [1]  26/8
foreigners [1]  26/5
forgery [2]  6/19 7/22
form [6]  29/24 33/3 48/2 66/3 66/9 66/10
formal [1]  52/17
formed [1]  26/7
Fort [1]  1/20
Forty [1]  57/8
forward [5]  23/14 23/14 35/21 37/2 65/6
found [2]  26/6 44/23
four [2]  5/17 51/16
Fourth [1]  63/6
frame [2]  8/25 39/6
front [2]  22/17 23/20
fund [1]  30/21
funded [7]  25/16 25/18 25/19 30/13 31/3
  44/2 44/3
funder [1]  31/8
funding [3]  30/11 30/22 30/24
funds [2]  18/8 29/13
further [2]  49/16 63/19

**G**

games [2]  18/18 23/25
gave [3]  17/1 30/14 34/18
Gburek [1]  58/25
General [1]  62/25
genuine [2]  13/1 49/6
get [24]  7/1 13/18 13/22 15/3 15/8 15/15
  15/22 16/12 19/16 21/8 21/19 22/2 23/24
  25/20 31/15 34/8 34/22 35/9 35/14 45/15
  46/22 49/9 65/23 68/5
getting [1]  52/25
give [2]  17/2 55/25
giving [1]  15/25
go [20]  6/21 10/15 11/1 12/8 13/9 25/11
  27/23 31/23 39/24 46/10 46/18 47/7 49/21
  49/24 58/8 61/4 65/16 66/4 66/13 67/6
goes [3]  15/14 59/18 60/5
going [23]  8/9 10/7 20/3 20/21 22/13 22/13
  22/17 22/18 22/19 23/7 23/8 23/17 23/20
  23/24 24/1 34/8 34/22 32/1 37/4 37/12 46/15
  51/14 66/9 67/5
gone [1]  49/5
good [9]  2/2 2/8 2/14 2/15 2/16 2/18 14/2
  14/3 68/7
got [10]  7/21 15/1 16/13 19/16 19/24 25/1
  29/22 34/17 35/12 35/21
granted [3]  14/12 53/11 55/11
granting [1]  5/24
GrayRobinson [3]  1/19 2/10 2/13
group [1]  15/1
guess [1]  15/11

**G (continued)**

Gulden [1]  59/1
guy [1]  20/20

**H**

had [33]  2/22 6/2 12/13 13/7 16/21 20/10
  22/22 24/15 24/16 26/2 30/2 30/3 38/9
  38/14 38/15 38/20 41/3 41/7 52/13 52/23
  56/19 57/19 58/14 58/18 59/25 61/6 62/10
  62/11 62/15 62/16 63/9 63/15 66/3
hadn't [1]  58/4
Haines [1]  27/18
handle [1]  60/1
handled [2]  55/13 62/18
handwriting [1]  47/19
handy [1]  8/19
happen [1]  24/1
happened [3]  15/6 38/23 44/23
happens [1]  49/7
happy [1]  49/23
harass [2]  52/4 58/10
hard [1]  53/19
has [31]  2/20 4/20 4/21 6/22 7/18 8/9 11/10
  12/13 12/14 16/9 19/10 22/24 26/23 35/20
  36/4 36/6 36/19 36/21 36/24 37/2 37/9
  40/25 44/20 48/25 49/22 52/14 53/15 54/8
  57/5 57/9 58/14
hasn't [1]  12/2
have [130]
haven't [4]  40/19 40/23 44/15 44/22
having [2]  11/25 57/22
he [87]
head [1]  58/25
hear [2]  13/13 46/21
heard [1]  61/9
hearing [1]  28/12
hearsay [2]  27/18 67/10
held [2]  38/14 54/17
Hello [1]  47/1
helps [2]  27/24 27/25
here [38]  2/3 2/19 7/24 9/1 11/19 15/13
  18/16 18/18 22/10 24/2 25/12 35/8 36/2
  39/11 41/19 46/3 47/18 48/10 48/14 48/17
  48/25 49/4 49/25 51/20 52/5 52/6 52/11
  53/14 54/3 54/6 55/1 55/20 57/16 63/17
  63/21 64/6 65/22 67/5
hereby [1]  68/13
herring [1]  48/10
Hey [1]  37/4
Hi [1]  46/25
higher [1]  64/4
highly [1]  57/20
him [5]  6/3 10/1 11/14 61/15 65/17
hired [2]  41/14 59/15
his [20]  4/23 5/2 5/20 6/3 10/4 10/6 11/15
  12/9 12/18 47/12 47/15 47/16 47/18 47/18
  47/24 49/5 55/13 63/15 63/16 67/25
Hold [2]  30/21 47/25
home [11]  25/3 26/1 26/24 40/22 41/7 44/13
  52/23 52/25 53/4 53/10 63/14
honestly [3]  37/25 42/16 66/19
Honor [31]  2/8 2/16 2/25 3/6 3/17 14/2
  27/17 28/24 34/7 34/13 35/4 38/13 39/9
  39/14 42/25 46/23 46/25 47/6 47/23 49/4
  55/20 58/5 58/25 60/15 60/22 61/7 64/23
  65/21 67/16 67/18 68/9
HONORABLE [1]  1/12
hopefully [2]  16/7 65/23

## H

hoping [2]  10/6 10/7
house [3]  41/10 56/12 57/23
how [14]  9/17 9/22 19/6 24/6 34/2 34/16
 36/6 38/1 41/22 42/9 44/20 44/22 58/16
 58/19
however [3]  4/9 24/5 65/15
hypothetically [1]  7/2

## I

I'll [10]  6/3 13/16 16/2 46/21 51/25 52/18
 54/15 55/4 61/2 67/18
I'm [58]  2/16 6/12 6/15 7/1 7/17 8/14 9/12
 10/1 10/3 10/24 13/12 15/4 15/5 15/6 15/12
 16/4 17/10 17/19 22/9 22/9 22/12 24/2 25/7
 25/22 27/23 28/5 28/7 28/8 29/23 31/24
 32/1 32/9 34/10 36/11 36/13 36/14 36/18
 38/10 38/11 39/1 40/7 40/16 41/16 43/17
 44/4 44/6 44/8 46/10 51/14 52/18 56/10
 56/14 58/1 59/1 59/22 66/9 67/4 67/19
I've [1]  21/24
identified [4]  25/14 26/11 27/11 32/2
identify [1]  52/25
identity [1]  32/7
ignored [1]  17/3
immediate [1]  41/9
immediately [2]  38/19 62/7
important [1]  54/25
impose [2]  3/23 54/23
in-between [2]  31/13 38/23
inaccurately [1]  11/23
included [3]  45/24 59/21 61/21
indicated [1]  2/20
individual [2]  33/18 34/19
infer [1]  43/25
inferred [1]  59/25
information [15]  14/23 15/25 17/2 17/2
 18/10 25/9 41/12 41/15 41/17 50/11 51/9
 51/12 51/18 57/7 57/12
initial [5]  4/18 8/8 48/21 50/7 59/7
initialed [2]  10/4 11/14
initials [2]  10/7 10/22
initiation [1]  54/2
instance [2]  6/23 59/5
Instead [3]  53/17 54/4 65/6
institution [1]  57/9
instrument [1]  33/15
intended [1]  65/13
intent [4]  43/5 52/11 53/18 58/14
intentionally [2]  56/15 57/2
interest [2]  17/17 42/13
interrogatory [1]  11/11
interrupt [4]  5/25 8/14 15/17 29/20
interrupted [1]  10/24
investigation [2]  32/17 33/8
investment [1]  21/24
investors [1]  26/8
Iqbal [1]  4/4
is [274]
is pre-sold [1]  44/1
isn't [7]  7/14 11/19 19/6 20/18 25/24 54/4
 59/11
issue [27]  3/17 4/2 4/5 4/7 4/15 6/14 8/5
 11/7 11/16 11/24 13/1 13/12 16/17 22/13
 22/25 28/18 32/5 32/10 34/23 35/1 48/25
 49/6 65/1 65/4 65/7 66/3 66/8

## J

issues [3]  3/14 39/2 55/16
it [279]
it's [21]  5/11 7/22 9/8 11/8 30/19 38/9 39/18
 40/13 47/24 51/1 53/19 53/23 57/22 60/17
 63/7 63/17 63/25 64/10 65/11 66/14 67/25
its [11]  3/13 4/3 5/10 11/18 12/15 12/21
 12/21 49/7 49/7 57/10 60/13
itself [8]  5/13 7/8 7/11 9/19 11/24 48/19
 65/3 65/12

January [1]  36/9
JOHN [5]  1/3 1/15 2/3 2/16 5/22
join [1]  41/16
JP [1]  2/3
JPMORGAN [38]  1/6 2/4 2/10 2/11 3/11
 3/21 5/22 17/6 17/16 17/21 18/7 18/8 18/15
 20/3 23/22 23/23 24/14 26/24 27/9 27/11
 34/20 35/25 37/8 41/14 48/22 49/2 50/10
 50/22 52/19 52/20 55/2 59/5 59/13 59/22
 59/23 60/2 60/6 60/7
JUDGE [5]  1/12 14/20 16/3 41/24 45/20
judgment [16]  1/11 2/21 2/23 5/7 5/8 12/24
 14/15 18/13 45/16 49/11 55/14 61/24 62/12
 62/18 65/7 65/14
judicata [3]  54/13 59/4 59/12
judicial [6]  39/21 63/1 63/2 64/5 65/1 65/5
July [4]  50/3 50/19 50/20 50/21
June [1]  50/15
jurors [1]  23/8
jury [5]  22/18 22/18 23/20 23/24 24/5
just [28]  5/16 6/12 6/15 7/2 7/14 9/14 9/21
 12/1 18/20 20/2 21/23 22/1 22/12 23/25
 26/25 38/5 38/6 39/13 40/9 45/1 45/10
 49/12 54/3 55/23 57/14 60/17 61/14 67/9

## K

KENNETH [1]  1/12
kept [1]  44/21
Kerner [1]  27/18
kind [9]  15/25 20/18 22/9 32/1 34/22 39/1
 44/6 53/21 66/23
kinds [1]  6/25
kitchen [1]  41/8
knew [1]  67/11
know [49]  8/19 9/21 11/13 13/9 16/15 18/20
 19/6 19/8 19/9 19/10 19/12 20/2 21/4 22/15
 24/17 25/24 26/20 27/1 30/14 32/16 34/2
 34/2 34/23 35/20 35/24 36/22 37/12 37/22
 38/1 38/3 38/5 38/6 38/10 38/12 43/3 43/21
 47/23 49/21 52/10 56/19 57/15 57/19 57/20
 58/18 60/15 66/4 66/20 66/21 67/9
knowledge [14]  25/8 40/25 41/3 44/20
 52/11 52/14 52/15 52/23 53/15 58/14 58/18
 58/21 66/25 67/22
known [2]  44/2 47/20
knows [1]  52/9

## L

labels [1]  52/16
laid [2]  40/18 49/19
language [1]  19/15
Lara [1]  58/25
Las [1]  1/20
last [4]  5/17 35/2 35/2 57/17
later [2]  25/25 31/4
Lauderdale [1]  1/20

laugh [1]  38/11
law [16]  8/1 11/2 29/4 33/13 37/14 41/13
 43/12 44/19 50/24 54/13 56/3 56/4 58/22
 60/14 60/15 67/24
lawsuit [4]  36/3 36/12 38/16 59/5
lawyers [1]  45/11
laying [1]  39/20
Lease [1]  54/16
leased [1]  34/20
least [4]  9/24 16/16 37/7 65/12
leave [1]  14/12
left [2]  11/14 55/8
legal [4]  4/12 4/21 52/10 53/24
legally [1]  52/24
legitimate [1]  52/9
lender [33]  4/23 12/17 16/22 16/24 17/4
 20/3 22/6 22/7 24/15 24/16 26/15 26/21
 27/5 27/6 27/7 27/10 27/13 27/15 28/15
 28/22 29/1 29/2 30/7 30/8 30/9 30/12 32/11
 42/15 42/24 43/8 47/3 48/23 49/2
lenders [1]  28/16
lent [1]  39/6
less [2]  40/1 40/2
LESSNE [5]  1/18 2/9 55/12 55/18 59/19
Lessne's [1]  55/9
let [8]  13/16 17/13 31/10 31/23 47/9 55/19
 58/1 66/9
let's [10]  6/15 11/9 12/8 16/15 17/3 19/9
 25/11 61/5 62/10 63/22
letter [19]  5/2 16/18 50/1 50/4 50/6 50/7
 50/14 50/19 50/20 50/21 50/24 51/1 51/2
 51/6 51/8 58/15 58/19 59/22 59/23
letters [2]  5/1 53/18
level [2]  52/6 52/7
liability [6]  3/23 3/25 54/12 54/20 54/24
 59/18
liable [3]  30/20 59/16 60/9
like [13]  13/5 18/10 31/11 31/13 35/4 35/19
 36/14 40/3 44/5 48/2 51/19 58/12 65/15
limitations [5]  50/4 50/5 50/15 54/1 54/2
limited [2]  14/16 14/16
line [4]  4/25 38/13 46/3 65/10
liquidation [1]  53/24
listed [4]  24/15 25/24 35/8 58/5
listen [1]  23/9
lists [2]  50/9 51/4
little [4]  26/6 28/3 48/10 57/23
living [1]  41/10
LLC [5]  25/3 26/1 26/24 40/22 44/13
loan [73]
loaned [3]  29/8 29/12 37/9
LOFFREDO [2]  1/19 2/12
long [3]  32/17 36/6 59/18
longer [5]  31/22 42/7 42/12 42/22 61/11
look [16]  6/22 6/24 46/18 48/4 48/7 48/14
 49/10 49/12 49/13 49/16 49/18 50/5 50/6
 50/8 50/12 60/4
looking [7]  10/1 34/10 41/15 41/17 41/25
 47/14 56/14
looks [3]  35/4 35/19 48/2
loophole [1]  43/4
lose [3]  42/11 42/18 43/14
lost [8]  38/20 44/22 45/3 45/14 45/15 45/21
 46/6 64/18
lot [3]  11/8 29/3 41/19
lower [1]  11/14
Lum [1]  63/5

**L**

lying [1]  7/22

**M**

made [12]  21/25 22/24 33/4 36/19 36/24
 41/4 50/9 53/15 55/11 55/19 60/21 68/2
magistrate [1]  48/12
mail [6]  15/9 20/19 21/4 21/22 30/3 34/5
mail-away [3]  20/19 21/22 34/5
mailed [1]  15/9
mails [1]  15/8
major [1]  40/13
make [14]  13/8 22/3 24/20 28/1 28/19 28/20
 31/5 36/12 36/15 36/17 36/18 36/23 47/4
 66/22
makes [1]  28/25
making [4]  24/19 24/22 66/22 67/21
managed [4]  25/22 25/22 50/18 59/24
many [3]  24/5 26/23 46/19
MARCH [1]  1/6
mark [5]  11/10 11/11 19/10 34/10 34/11
MARRA [3]  1/2 1/12 2/5
marriage [4]  31/13 31/14 31/14 31/16
married [1]  31/16
marry [1]  31/16
Marshall [14]  37/14 38/16 41/13 50/21
 50/25 51/10 54/7 54/11 54/23 56/2 59/6
 59/8 59/14 59/15
master [4]  59/16 59/17 60/2 60/9
master-servant [1]  60/9
matches [1]  5/18
material [2]  4/6 8/10
matter [8]  4/18 8/1 11/2 16/19 27/12 27/15
 28/21 68/15
matters [2]  62/15 62/16
may [7]  2/6 2/9 14/4 14/4 42/14 63/2 67/8
maybe [9]  7/23 9/25 9/25 37/20 38/11 40/7
 46/17 48/8 52/7
McMahon [1]  62/25
me [53]  2/12 7/25 10/11 11/2 13/5 14/16
 15/8 15/22 15/25 16/13 17/13 18/4 18/11
 18/22 18/24 20/20 24/8 26/2 26/3 26/22
 28/2 28/19 30/6 30/16 31/10 31/23 33/16
 34/18 36/3 37/4 37/18 38/11 38/16 40/8
 44/9 46/12 47/8 47/9 48/4 49/21 52/19
 55/19 55/24 56/7 56/9 58/1 58/7 58/15
 60/19 60/25 66/4 66/12 66/20
mean [21]  7/18 8/14 11/23 12/1 15/24 17/3
 18/10 19/9 24/3 25/13 31/6 35/7 40/5 41/6
 41/19 42/9 47/18 53/19 56/18 60/12 67/4
means [1]  45/10
meant [1]  9/8
meet [2]  51/13 63/23
meets [1]  67/23
members [2]  30/1 51/23
mention [1]  5/3
mentioned [5]  51/21 59/19 59/20 66/15
 67/1
mere [1]  45/9
merely [1]  11/20
met [2]  8/7 48/21
Miami [2]  1/23 1/23
MICHAEL [2]  1/18 2/9
might [6]  3/10 3/13 7/7 8/11 26/20 63/6
miller [4]  1/22 1/24 68/16 68/17
mine [2]  10/2 14/23

minute [2]  46/4 61/5
missed [1]  15/4
misstating [1]  47/1
modification [4]  26/1 37/13 37/16 37/17
moment [1]  67/5
money [18]  12/12 17/5 17/12 18/15 19/18
 22/1 24/23 25/2 25/5 29/8 29/12 35/22 36/5
 36/6 37/5 37/10 37/23 39/8
month [3]  37/17 40/1 40/2
more [6]  4/23 26/6 51/9 52/16 53/19 53/20
Moreover [1]  52/24
morning [12]  2/2 2/8 2/14 2/15 2/16 2/18
 14/2 14/3 16/5 16/7 27/17 65/23
mortgage [59]  3/11 4/23 5/1 5/5 5/11 5/13
 5/16 5/21 5/24 6/6 6/11 6/18 9/8 9/16 11/12
 11/18 11/19 11/22 12/9 12/10 12/18 12/25
 16/12 16/18 16/20 16/21 18/3 18/3 19/8
 20/16 21/5 21/10 21/12 21/14 28/22 29/17
 29/21 29/22 32/21 32/23 35/1 39/7 40/16
 42/21 44/4 45/11 47/5 48/15 48/15 48/19
 49/1 62/4 62/8 63/10 63/12 63/15 63/16
 65/3 65/3
mortgagee [2]  16/22 17/20
mortgagees [1]  45/7
most [1]  5/1
motion [43]  1/11 2/19 2/20 2/23 3/1 3/6 3/7
 5/7 5/8 5/8 14/11 14/14 14/14 14/18 18/13
 28/11 40/11 45/24 45/25 46/8 46/14 49/11
 49/19 52/18 53/11 55/11 55/14 55/16 55/8
 61/20 61/22 61/23 62/2 62/8 62/11 62/12
 62/17 64/8 64/12 64/20 65/9 66/1 66/2
motions [12]  3/2 5/6 14/17 15/1 23/1 41/24
 54/7 60/25 61/9 61/20 64/23 64/24
move [1]  62/6
moved [3]  27/20 61/24 64/9
Mr. [36]  3/12 5/1 5/19 5/19 5/19 5/24 6/2
 6/16 8/4 10/4 10/23 11/3 13/14 13/16 41/4
 44/16 46/9 47/10 47/11 48/23 50/2 50/7
 50/20 50/22 51/9 51/11 51/21 54/5 55/7
 55/9 55/12 55/18 59/15 59/19 64/14 65/16
Mr. DeL'Etoile [5]  44/16 46/9 47/11 64/14
 65/16
Mr. Lessne [3]  55/12 55/18 59/19
Mr. Lessne's [1]  55/9
Mr. Pinson [20]  3/12 5/19 5/19 6/2 8/4
 10/4 10/23 11/3 13/14 13/16 47/10 50/2
 50/7 50/20 50/22 51/9 51/21 54/5 55/7
Mr. Pinson's [5]  5/1 5/24 6/16 48/23 51/11
Mr. Wolf [2]  41/4 59/15
much [5]  4/25 19/18 25/7 40/24 43/1
must [5]  4/10 4/19 52/16 56/5 67/13
my [37]  7/18 9/24 10/14 10/22 14/19 14/21
 14/22 15/6 15/11 15/14 16/3 16/9 16/14
 18/16 23/7 26/10 27/22 33/8 35/4 35/5 41/9
 41/25 42/8 45/6 45/25 46/3 55/20 58/24
 59/1 60/17 61/2 62/11 62/23 63/5 63/22
 64/8 67/5
myself [1]  24/7

**N**

N.A [12]  2/10 3/12 3/21 5/22 17/21 26/24
 37/19 48/22 50/10 50/22 52/19 54/15
name [4]  7/18 25/23 47/15 47/16
named [2]  8/22 59/6
narrow [1]  39/1
NATIONAL [1]  1/6
necessarily [2]  17/1 56/21

necessary [1]  53/3
need [11]  13/13 13/20 48/14 52/1 52/1 53/6
 57/13 57/14 57/19 65/13 66/22
needed [1]  58/17
needs [1]  52/11
negligently [2]  56/15 57/2
nervous [1]  16/4
never [10]  6/18 20/15 22/1 27/1 37/25
 38/18 43/25 64/16 66/16 66/24
new [2]  18/10 44/18
next [2]  65/24 68/6
no [60]  1/2 4/6 4/9 5/10 6/16 8/2 10/2 10/5
 13/1 18/6 18/8 18/19 19/3 19/5 20/5 21/1
 22/11 22/11 24/18 25/6 25/13 27/11 28/6
 28/6 31/10 31/21 32/2 32/19 33/20 35/23
 35/24 36/3 36/4 37/2 37/3 37/6 37/9 42/7
 42/12 42/22 45/17 45/19 45/20 45/22 46/3
 48/6 48/16 48/25 49/6 52/4 52/5 52/6 53/9
 54/22 55/2 55/18 57/19 60/23 62/3 66/6
nonpublic [1]  57/11
normally [1]  40/3
not [126]
notarized [1]  5/15
notary [3]  33/16 47/12 48/3
note [37]  5/23 6/5 6/11 9/2 9/5 9/8 9/15
 12/9 12/11 12/13 12/14 12/25 12/25 16/22
 20/15 28/20 28/21 31/22 32/22 38/20 38/22
 39/7 42/20 44/22 44/22 45/3 45/8 45/13
 45/14 45/15 45/20 46/6 47/4 54/25 63/16
 64/18 68/1
notes [2]  46/18 61/4
nothing [4]  26/9 49/3 51/19 59/20
notice [10]  10/16 39/21 41/2 53/4 59/10
 63/1 63/2 64/5 65/1 65/5
now [11]  8/9 16/19 16/20 16/25 31/9 31/11
 32/22 38/11 40/10 48/24 50/2
Nowhere [1]  52/21
number [17]  2/4 3/14 4/25 5/16 5/18 9/3
 29/15 32/2 32/4 36/15 46/5 50/9 51/1 51/3
 51/4 66/2 66/2

**O**

oath [4]  6/6 6/17 49/4 49/5
Objection [2]  9/4 47/23
objections [1]  62/22
obligation [1]  57/10
obtain [2]  25/9 53/23
off [17]  9/14 9/20 9/21 9/22 10/1 10/2 10/8
 10/13 15/20 26/4 34/18 37/12 44/7 50/9
 55/8 58/5 58/24
offensive [1]  57/21
offered [1]  29/25
office [3]  10/14 40/6 64/3
Offices [1]  50/25
Official [2]  1/22 68/17
Oh [2]  10/2 55/12
okay [41]  3/4 7/25 10/20 13/16 15/21 19/24
 20/1 23/7 24/3 25/14 25/13 30/21 31/5 32/13
 32/19 33/21 33/24 34/6 35/16 36/10 38/7
 39/10 40/5 43/16 45/23 46/12 46/15 46/21
 48/1 48/8 49/25 52/2 55/17 57/1 57/4 57/24
 58/6 60/16 62/5 65/20 66/14
Olas [1]  1/20
old [1]  38/11
once [4]  31/15 42/12 42/18 42/21
one [32]  8/12 9/13 10/5 10/8 13/11 14/9
 15/2 19/6 19/9 23/13 27/1 29/15 30/22

**O**

one... [19]  30/24 31/10 35/24 36/4 37/2 37/7
  37/9 37/18 38/16 40/13 41/6 48/4 49/9 49/9
  50/5 54/1 54/6 58/25 61/11
ones [3]  10/22 29/8 41/1
online [1]  29/24
only [12]  3/15 9/12 30/22 30/22 30/24 36/2
  46/19 53/2 55/1 55/17 63/2 67/10
opportunity [1]  12/14
opposing [6]  7/4 46/7 56/18 60/21 61/21
  62/25
opposition [6]  6/3 11/6 18/12 46/8 62/10
  64/20
order [11]  2/22 4/18 13/10 14/18 14/22
  26/2 35/14 38/25 48/12 52/12 62/18
orders [1]  15/2
original [76]
original lender [1]  42/24
originally [1]  54/8
originated [1]  4/16
originating [4]  4/23 16/21 27/6 27/6
originator [4]  29/2 29/5 29/7 37/8
OSCAR [1]  26/7
other [20]  3/24 7/19 14/17 14/24 22/24
  23/12 23/13 24/15 24/16 27/18 35/25 37/24
  38/21 39/20 40/14 54/6 55/2 56/7 58/4
  63/18
our [2]  27/3 54/7
out [36]  12/2 16/11 21/17 24/23 25/8 26/6
  26/9 26/17 28/22 29/3 29/24 30/16 36/11
  36/12 36/16 36/20 36/25 39/20 40/18 41/5
  41/24 44/11 46/16 47/10 47/10 48/3 49/19
  50/1 50/2 50/9 55/12 56/4 59/15 62/18
  65/23 68/6
outcome [1]  8/11
outside [3]  50/4 50/15 62/16
over [13]  8/6 26/25 30/2 31/15 38/9 41/7
  56/9 60/2 60/8 61/4 62/14 66/5 67/19
Overseas [1]  62/24
overwhelmed [1]  41/23
owe [2]  35/25 37/5
own [6]  26/9 42/20 58/15 58/16 58/19 58/20
owned [4]  16/11 31/13 31/22 43/25
owner [20]  25/13 25/14 25/18 25/24 26/11
  26/13 26/14 26/15 27/6 27/11 27/12 27/14
  27/16 28/20 31/6 32/2 32/5 32/6 37/20 47/4
ownership [4]  30/23 42/12 60/10 60/10
owning [1]  32/7
owns [5]  16/18 16/20 16/25 28/21 36/8

**P**

P-R-O-C-E-E-D-I-N-G-S [1]  2/1
P.A [1]  1/19
Pacer [2]  15/5 15/13
package [4]  18/5 20/19 29/6 30/3
page [9]  8/13 11/6 11/15 33/14 35/2 35/3
  35/3 39/19 39/19
pages [3]  1/7 10/4 39/20
paid [5]  36/5 36/6 37/16 38/17 38/18
Painter [1]  58/17
PALM [5]  1/2 1/5 1/16 5/24 68/19
paper [2]  39/23 44/3
papers [2]  37/15 46/20
paragraph [6]  34/8 56/23 56/25 67/19
  67/21 67/22
paraphrasing [1]  25/22

parent [2]  55/3 60/12
part [14]  9/1 15/23 15/25 40/17 40/18 40/19
  40/25 41/9 42/2 42/4 44/24 44/9 49/9 62/12
partial [2]  5/8 49/11
particular [1]  54/14
parties [11]  2/6 7/12 7/16 41/12 55/19 56/6
  56/16 57/3 57/19 57/19 59/9
parties prior [1]  59/9
partner [1]  61/12
parts [1]  40/13
party [20]  7/4 7/18 18/3 20/10 29/7 29/7
  29/17 34/21 36/13 36/16 36/22 40/13 40/14
  41/16 44/19 45/22 51/18 64/16 64/17 67/13
passive [1]  11/13
past [3]  21/6 21/9 49/9
Pause [2]  13/24 61/16 67/7
pay [1]  37/4
paying [3]  24/23 35/21 36/13
payment [2]  36/19 36/25 53/23
payments [4]  24/19 24/20 24/22 36/16
payoff [2]  51/7 51/9
penalty [2]  33/4 33/10
people [5]  24/6 29/5 36/15 41/7 56/12
percent [1]  17/17
perhaps [5]  6/10 12/21 12/21 55/4 65/15
period [4]  39/17 50/4 50/16 55/15
perjury [2]  33/4 33/10
permitted [1]  2/22
person [12]  4/17 6/16 7/17 7/21 8/22 42/22
  44/4 48/3 52/9 52/10 56/12 57/21
personal [5]  41/12 53/24 57/12 66/24 67/22
personally [1]  47/20
phone [2]  30/2 30/2
piece [2]  39/23 44/3
pile [1]  67/5
pinning [1]  67/5
PINSON [25]  1/3 1/15 2/3 2/17 3/12 5/19
  5/19 5/19 5/22 6/2 8/4 10/4 10/23 11/3
  13/14 13/16 47/10 50/2 50/7 50/20 50/22
  51/9 51/21 54/5 55/7
Pinson's [5]  5/1 5/24 6/16 48/23 51/11
place [5]  21/22 26/4 31/2 31/2 44/1
placed [1]  11/12
plaintiff [17]  1/5 1/15 2/17 3/3 3/12 3/23
  4/19 4/20 7/3 8/9 51/16 52/22 52/24 53/1
  57/5 57/21 63/15
plaintiff's [6]  52/21 53/1 57/6 62/22 63/10
  63/21
plausible [4]  4/3 4/11 52/7 54/22
plausibly [1]  54/4
playing [2]  18/18 23/25
plead [2]  4/18 42/25
pleaded [2]  4/20 15/3
pleading [3]  52/13 52/16 55/17
pleadings [1]  62/16
pleads [1]  52/22
please [7]  2/2 2/7 2/9 13/21 14/4 53/9 61/8
pled [2]  42/2 41/14
point [4]  16/2 34/6 36/18 50/2
pointed [3]  12/2 47/9 47/10
points [2]  12/19 60/21
policy [1]  57/8
portion [1]  61/23
portions [1]  9/14
position [4]  6/17 42/7 47/1 47/2
pre [1]  44/1
preclude [1]  54/12

preclusion [2]  59/3 59/13
prejudice [4]  53/11 53/12 54/9 54/18
prepared [1]  61/1
present [2]  24/7 34/4
presented [2]  18/24 38/8
presenting [2]  38/22 44/23
presents [1]  6/3
presold [1]  25/17
presume [2]  21/11 35/14
pretty [3]  6/15 40/24 41/20
prevent [1]  66/21
principal [1]  5/23
principally [1]  48/11
prior [1]  59/9
privacy [1]  19/13 57/6 57/10
private [3]  57/7 57/7 57/18
pro [4]  1/15 2/17 15/4 15/13
pro se [1]  15/13
probably [1]  21/24
proceed [2]  2/24 14/5
proceeded [1]  14/16
proceedings [9]  13/24 15/7 45/8 53/25 61/6
  61/16 67/7 68/10 68/14
process [1]  41/23
produced [1]  44/15
promissory [1]  5/23
proof [1]  50/24
proper [2]  36/13 36/22
properly [2]  7/5 61/25
property [7]  21/11 30/15 30/15 50/25 51/3
  51/11 51/22
protect [2]  43/5 57/10
protected [1]  43/8
protection [2]  40/20 43/14
protections [1]  43/5
protective [2]  14/18 38/25
provided [3]  30/11 39/19 63/6
provides [1]  50/24 51/4 51/6
provision [2]  45/7 45/11
provisions [1]  51/1
public [11]  25/21 25/23 31/12 32/7 32/8
  39/22 50/14 50/17 59/24 62/8 64/1
purchased [2]  21/11 43/3
purpose [2]  7/11 48/11
purposes [9]  19/13 25/15 27/3 28/11 28/23
  30/10 50/3 65/13 65/14
pursuant [6]  3/18 5/11 5/13 5/14 6/5 54/18
pursue [1]  38/2
pursuing [2]  28/13 52/23
put [12]  23/13 23/14 29/6 34/24 41/1 41/24
  45/11 53/3 59/8 62/18 63/13 65/6
puts [1]  47/16

**Q**

qualified [5]  16/11 25/21 26/18 37/24 41/3
question [20]  5/9 5/10 6/7 6/20 7/6 7/8 8/2
  10/23 12/16 17/13 23/7 26/10 26/16 27/22
  30/17 37/12 42/3 47/9 49/12 58/1
questioned [1]  56/3
questioning [1]  9/13
questions [2]  38/23 54/5
quickly [1]  40/7
quite [3]  15/10 58/12 58/22
quoted [1]  62/23
QWR [1]  26/18

**R**

raise [4]  11/16 11/24 54/3 54/6

Pinson v. JPMorgan Chase                    77

**R**

raised [2] 49/1 54/7
raising [2] 12/16 28/11
ran [1] 61/14
rate [1] 17/17
reach [1] 4/5
read [7] 42/17 43/4 43/18 51/25 57/14 66/7
  66/19
readdress [1] 66/11
reading [2] 52/18 53/7
ready [2] 2/23 13/25
real [3] 5/24 34/2 35/1
reality [1] 45/10
really [16] 5/10 12/15 13/14 16/1 22/12
  22/19 23/23 24/1 24/3 27/2 39/21 42/25
  48/25 49/10 49/11 49/12
reason [10] 9/12 10/3 20/7 20/12 28/14
  36/11 37/24 41/18 64/9 66/17
reasonable [3] 43/17 57/5 57/21
reasonably [1] 52/3
reasons [1] 66/12
rebought [1] 43/20
rebuy [3] 43/9 43/10 43/13
recall [2] 29/17 35/10
receive [3] 19/18 20/14 20/24
received [9] 17/12 18/4 18/6 18/8 18/9 19/19
  20/15 21/4 26/18 68/1
recess [2] 61/5 61/6
recitation [1] 52/17
record [15] 5/17 8/1 11/1 15/19 15/23 15/25
  27/11 32/2 32/6 32/20 39/17 39/22 40/7
  62/8 64/1
recorded [4] 23/19 39/11 40/2 63/7
recorder's [1] 64/3
records [5] 23/18 34/2 44/21 67/23 67/23
red [1] 48/10
redacted [4] 9/16 9/17 10/19 19/12
redaction [5] 8/21 10/15 38/9 48/13 68/2
Reese [3] 52/18 52/19 58/17
refer [3] 3/21 27/1 54/15
reference [1] 8/25
referred [1] 29/4
referring [4] 8/12 33/9 56/23 57/15
refers [1] 5/1
refi [1] 30/1
refinance [2] 19/20 30/15
reflect [4] 4/25 20/9 22/1 64/11
reflects [5] 7/15 11/23 12/19 12/19 50/25
regard [1] 59/20
regardless [2] 30/8 30/23
reinstatement [1] 51/5
related [3] 32/4 56/21 58/23
relates [2] 13/12 40/15
relating [2] 30/18 60/3
relationship [2] 6/19 60/9
relevant [7] 14/19 16/1 16/17 17/1 25/14
  26/11 32/9
relied [1] 64/1
relief [3] 4/3 51/16 51/17
relies [1] 5/19
rely [1] 15/9
remainder [1] 67/22
remaining [1] 55/16
remember [1] 29/24
removable [1] 9/18
removal [1] 38/9

remove [1] 10/15
removing [1] 19/12
repeat [2] 53/8 57/17
reply [4] 5/6 49/19 62/23 64/8
Reported [1] 1/22
Reporter [3] 1/22 53/9 68/17
representative [2] 26/3
represented [1] 46/4
reputation [1] 51/19
request [8] 12/6 16/11 25/21 26/18 37/25
  38/25 41/2 41/3
requested [1] 51/5
requesting [2] 48/13 50/10
required [1] 48/17
requirement [2] 63/23 67/10
requiring [1] 11/15
res [3] 54/13 59/4 59/12
research [3] 25/8 26/6 42/16
residential [1] 40/16
RESPA [1] 3/8
respect [7] 4/6 7/10 49/16 49/18 50/4 57/10
  65/12
respectively [1] 3/9
respects [1] 8/7
respond [5] 9/7 13/6 13/16 45/25 55/10
responding [1] 48/12
response [13] 5/4 11/11 12/6 14/21 14/22
  27/8 27/10 41/25 50/12 50/13 51/1 61/22
  63/9
responses [7] 5/2 5/6 50/6 50/23 53/18
  53/20 54/4
responsible [2] 60/11 60/13
restated [1] 56/8
restroom [1] 41/8
resumed [1] 61/6
retrieved [1] 44/23
return [3] 20/20 22/4 30/4
revealed [1] 57/18
review [1] 12/14
reviewed [2] 12/14 68/2
reviewing [1] 38/14
right [32] 2/19 7/25 9/12 10/24 11/5 13/4
  19/17 19/22 24/8 25/11 27/21 30/5 31/23
  34/8 34/22 35/8 36/20 38/3 39/15 40/8
  41/11 44/6 46/10 47/7 52/10 53/16 60/18
  61/18 64/21 65/22 67/15 68/6
rise [1] 52/6
rises [2] 52/5 52/5
RMR [2] 1/22 68/17
Road [1] 1/15
room [3] 1/23 36/15 68/18
Rule [4] 5/12 5/13 5/14 14/15
ruled [2] 14/20 59/10
rules [1] 15/12
ruling [4] 14/15 41/24 65/23 68/5
rulings [1] 42/17
run [1] 15/10
rundown [1] 67/9

**S**

said [16] 6/10 6/17 9/8 11/8 11/8 15/2 26/22
  29/21 37/18 43/22 55/22 56/1 56/8 56/12
  59/23 68/5
same [10] 20/19 30/4 32/4 40/24 53/14 56/8
  58/11 59/12 59/19 64/10
saw [1] 12/3
say [31] 3/20 7/20 10/12 11/9 12/8 12/9

13/14 19/10 19/12 25/2 26/19 27/11 27/14
  27/14 29/10 30/6 31/12 32/23 33/10 34/9
  35/5 35/6 35/18 38/4 38/9 39/12 39/13 48/3
  53/19 55/22 56/11
saying [24] 6/15 12/12 16/19 17/7 18/23
  20/2 20/4 24/13 24/14 25/13 29/11 32/19
  32/22 33/19 33/21 33/22 37/2 41/10 43/7
  44/11 45/2 45/4 59/4 66/23
says [21] 7/17 7/18 7/20 10/4 11/9 11/13
  11/22 12/3 23/22 28/25 33/12 33/14 39/18
  50/13 50/13 50/17 51/2 52/21 63/20 67/19
  67/21
se [4] 1/15 2/17 15/4 15/13
se and [1] 15/4
search [1] 67/5
seat [1] 13/22
seated [2] 2/2 61/8
SEC [3] 26/8 60/4 63/25
seclusion [1] 57/6
second [13] 4/2 4/5 5/25 8/25 9/13 14/10
  14/13 29/20 30/21 31/16 52/2 61/11 62/15
Section [1] 3/19
secure [1] 51/4
secures [1] 5/23
securitized [1] 26/4
security [12] 25/22 25/23 31/12 32/7 32/8
  32/12 32/16 50/14 50/17 57/11 59/24 60/1
see [25] 4/10 4/12 6/22 6/24 7/12 8/9 10/9
  12/23 18/11 18/14 26/17 27/23 33/14 33/21
  34/3 34/6 39/2 47/12 47/12 49/6 55/19
  57/14 57/16 62/10 63/22
seeking [1] 14/19
seeks [3] 3/23 51/16 51/17
seem [1] 28/3
seems [2] 31/11 32/4
seen [1] 36/15
self [6] 5/11 5/14 8/6 48/16 65/3 65/4
self-authenticating [6] 5/11 5/14 8/6 48/16
  65/3 65/4
sell [3] 42/21 42/21 43/8
seller [1] 32/6
send [1] 37/22
sense [2] 28/20 28/25
sent [17] 16/10 16/17 20/22 22/6 22/7 22/8
  25/20 26/18 37/15 37/18 37/24 41/4 41/13
  56/2 56/4 58/15 58/19
separate [6] 6/14 39/20 59/5 59/11
series [1] 49/25
servant [3] 59/17 60/2 60/9
served [1] 14/11
servicer [9] 15/15 16/18 25/6 25/9 25/10
  40/21 40/22 44/12 44/13
Servicing [1] 63/14
set [1] 3/2
settle [2] 22/16 37/25
settled [1] 58/2
settlement [2] 54/19 59/9
several [5] 5/6 18/4 31/4 62/11 62/23
Shall [1] 53/8
she [2] 31/17 31/17
Shipping [1] 62/24
short [1] 61/3
should [11] 2/20 8/1 15/2 21/25 23/2 40/9
  40/10 54/11 55/11 55/13 59/21
shouldn't [1] 65/4
show [16] 4/13 4/22 10/1 10/8 10/22 11/20
  32/6 38/22 42/17 44/20 51/13 52/14 53/18

Pinson v. JPMorgan Chase                                    78

**S**

show... [3]  54/3 59/21 64/17
showed [1]  16/10
showing [5]  8/10 12/25 53/15 53/17 54/3
shown [4]  40/22 44/12 44/22 63/8
shows [3]  7/15 39/19 39/23
side [6]  7/19 11/14 14/18 15/6 27/18 63/18
sign [19]  6/6 6/11 6/17 7/4 7/21 11/10 18/22
 18/23 22/19 23/25 24/10 24/10 33/18 33/22
 33/23 34/9 35/7 65/18 65/19
signature [18]  10/5 11/15 12/9 33/17 35/2
 35/4 35/5 35/19 39/19 47/10 47/12 47/13
 47/17 47/18 47/20 47/24 48/6 65/10
signed [30]  6/18 7/19 7/19 7/20 10/6 11/3
 12/10 18/25 19/7 19/11 19/16 20/1 20/2
 20/6 20/16 20/22 23/12 23/18 24/14 29/18
 33/3 33/10 35/13 38/5 39/6 39/7 39/13 48/5
 64/14 64/16
significant [1]  43/4
signs [1]  47/15
similar [1]  4/9
simply [3]  52/13 53/14 53/20
since [8]  5/15 16/22 36/6 36/8 36/19 36/24
 40/25 47/9
sir [20]  9/6 13/25 15/18 16/2 17/9 18/17
 20/6 25/8 33/20 34/7 35/23 36/3 36/23 37/3
 38/6 45/5 47/25 55/24 61/11 65/25
sit [1]  23/8
situation [4]  7/10 15/12 58/11 63/16
six [2]  35/3 35/3
skip [1]  32/1
slow [3]  53/6 53/9 57/13
so [97]
sold [20]  16/13 25/21 26/4 26/19 26/19 32/5
 42/6 42/12 42/18 42/23 43/20 43/22 43/23
 43/23 43/24 44/1 44/1 50/14 50/17 59/24
sole [1]  7/11
solely [1]  3/24
solicitation [1]  53/24
solitude [1]  57/6
some [15]  2/22 6/2 13/18 14/18 14/23 19/11
 23/12 23/13 24/15 24/16 35/12 35/13 40/17
 40/20 58/14
somebody [2]  18/15 19/17
somehow [4]  8/11 14/22 14/25 43/3
someone [14]  19/21 19/22 19/24 23/22
 24/11 24/12 30/1 30/3 33/1 35/9 41/9 42/21
 51/10 51/22
something [5]  15/3 44/2 54/7 57/22 58/16
sometime [1]  39/3
sometimes [1]  15/10
somewhere [2]  35/11 39/5
sorry [11]  8/14 10/25 22/9 38/12 44/6 44/8
 46/10 53/8 56/10 58/2 61/17
sounds [1]  18/10
SOUTHERN [2]  1/1 62/24
special [1]  30/1
specific [1]  53/4
specifically [1]  52/25
specifics [1]  53/2
speculative [1]  52/7
speeding [1]  56/10
spent [1]  55/14
spoiled [2]  12/4 12/5
spoke [2]  51/22 66/1
sponsor [1]  32/8

sponte [2]  53/12 53/13
stage [1]  55/17
stand [1]  23/20
standard [3]  45/6 45/11 64/4
standpoint [2]  16/17 16/19
start [4]  11/9 13/20 50/1 55/8
started [4]  23/19 32/1 46/16 55/12
starting [3]  4/15 8/5 14/18
starts [3]  11/6 41/8 50/9
state [19]  2/6 4/3 23/5 29/18 33/3 33/25
 34/1 43/22 43/23 43/24 46/2 49/10 49/14
 49/23 52/12 55/21 63/12 67/11 67/13
stated [5]  56/5 56/19 58/9 64/16 67/8
statement [7]  11/16 11/23 12/4 12/18 29/14
 43/21 55/18
statements [6]  15/15 15/22 25/1 27/19 55/9
 67/10
states [5]  1/1 1/12 1/22 4/11 68/18
stating [2]  58/15 58/19
status [6]  13/2 42/11 42/18 42/23 43/1 55/3
statute [9]  4/14 16/23 16/24 28/13 28/17
 30/7 50/5 58/9 58/13
Statutory [1]  25/23
stay [1]  16/2
step [3]  6/21 13/6 55/4
stick [1]  15/19
sticker [1]  11/12
still [2]  42/15
stopped [1]  26/22
straight [1]  16/12
straightforward [1]  3/16
stray [1]  15/20
Street [1]  68/18
stricken [2]  23/2 67/15
strike [23]  3/2 23/1 27/20 45/24 46/1 46/8
 46/12 46/14 61/1 61/9 61/20 61/21 61/24
 62/7 62/9 62/11 64/8 64/9 64/12 64/20
 64/24 65/9 66/4
strips [1]  9/17
sua [2]  53/12 53/13
subject [3]  3/22 3/25 4/25
submitted [6]  8/3 8/18 9/13 27/9 39/11
 59/10
subscribed [2]  33/15 47/19
subsection [1]  52/13
subsequent [1]  43/11
subsequently [1]  61/23
subsidiaries [1]  60/13
successfully [1]  34/14
such [5]  4/17 38/10 58/11 62/16 63/4
sue [2]  16/24 28/13
suffices [1]  47/18
sufficient [2]  11/2 65/12
sufficiently [2]  4/19 4/22
suggest [1]  3/13
suggests [1]  58/2
suing [1]  31/7
suit [5]  8/11 22/21 32/18 37/15 54/2
Suite [1]  1/20
summary [15]  1/11 2/21 2/23 5/7 5/8 12/23
 14/15 18/12 49/11 55/14 61/24 62/12 62/17
 65/7 65/14
support [3]  5/20 27/9 65/7
supported [1]  53/3
supposed [1]  21/3
sure [9]  25/7 35/18 36/12 36/14 39/5 39/8
 45/13 61/2 61/12

survive [1]  52/18
swear [3]  6/17 23/17 64/15
sworn [2]  33/15 65/11

**T**

table [2]  25/16 44/2
table-funded [2]  25/16 44/2
take [16]  6/21 13/11 16/5 16/7 16/8 49/12
 49/18 53/1 55/4 61/3 61/5 63/1 63/2 64/5
 65/1 65/5
taken [3]  21/17 43/3 62/20
takes [2]  21/22 40/14
talk [2]  6/12 16/4
talked [1]  32/3
talking [6]  6/13 30/9 34/11 40/9 41/8 62/2
tapdancing [1]  11/7
tape [2]  9/18 38/10
Taylor [1]  63/19
technical [1]  67/9
television [1]  36/14
tell [10]  7/25 16/13 24/5 24/8 40/8 44/9 47/8
 60/19 60/25 66/12
telling [6]  11/8 15/6 15/8 15/22 28/11 18/22
ten [1]  61/5
term [7]  4/15 15/16 26/23 30/8 30/8 30/13
 41/18
terms [6]  11/17 18/4 19/8 19/15 29/3 47/2
testifies [1]  27/19
testify [3]  23/21 67/14 67/20
than [8]  4/23 18/7 35/25 40/1 40/2 52/16
 53/20 55/3
Thank [20]  2/25 13/19 14/1 14/7 28/9 34/7
 46/23 55/5 55/6 60/23 60/24 61/19 64/21
 64/22 65/21 68/3 68/4 68/7 68/8 68/9
that [421]
that's [60]  4/11 4/17 6/18 6/19 8/10 8/25
 9/2 10/12 11/8 11/10 12/1 15/11 15/12
 15/23 16/1 16/15 17/10 19/15 20/5 20/18
 24/1 24/2 26/8 27/16 28/4 28/18 28/18
 29/23 30/2 31/14 31/16 34/10 35/8 36/18
 37/8 38/21 39/5 39/16 40/5 41/11 41/17
 42/17 43/17 44/24 45/6 46/4 46/11 49/1
 49/9 51/23 52/4 54/6 57/20 60/14 61/18
 63/5 63/11 63/16 65/1 66/25
their [24]  2/6 8/8 16/19 18/12 23/18 27/4
 27/9 27/13 27/16 28/11 38/14 38/24 40/11
 41/1 41/4 44/11 45/7 51/1 53/3 60/5 61/22
 61/22 62/2 62/10
them [20]  13/11 15/19 15/16 15/16 21/24
 21/8 22/2 22/16 25/6 28/13 35/25 39/8 40/7
 41/2 46/21 58/24 59/1 59/10 59/14 66/9
then [37]  3/21 12/8 13/16 14/9 14/11 14/15
 14/17 15/1 17/13 23/14 25/17 29/7 36/16
 38/16 40/17 42/6 42/22 43/8 43/10 43/12
 48/23 50/12 50/19 50/23 51/6 51/8 51/10
 59/16 60/4 60/10 61/3 62/1 63/24 64/12
 66/11 67/22 68/2
theory [1]  6/13
there [105]
therefore [1]  47/3
these [9]  9/17 11/2 22/25 23/2 51/13 56/12
 57/11 60/4 60/8
they [155]
they're [2]  27/4 28/11
thick [1]  41/20
thing [5]  20/21 38/10 38/21 54/6 57/17
things [12]  12/20 15/20 19/11 19/13 22/25

**T**

things... [7]  23/6 33/6 38/1 41/10 56/8 56/5 62/11
think [38]  6/21 7/7 7/12 8/7 11/1 11/15 11/17 12/23 13/21 16/25 21/1 21/2 21/4 21/23 21/25 23/24 24/1 24/3 26/16 26/25 27/17 28/25 35/7 38/14 40/5 40/6 41/16 45/10 47/14 47/17 48/9 48/14 48/24 54/1 58/10 58/24 60/14 65/11
thinking [1]  41/9
third [21]  18/3 29/6 29/7 29/17 31/17 34/21 36/16 40/17 41/12 44/19 51/18 55/19 56/5 56/16 57/3 57/18 57/19 62/21 64/12 65/9 67/13
third-party [4]  18/3 29/17 34/21 44/19
this [95]
THOMAS [1]  1/19
thorough [1]  49/22
those [13]  7/23 7/24 10/18 26/7 29/3 33/6 38/1 54/11 54/12 59/2 61/10 63/17 64/15
though [2]  35/19 48/9
thought [9]  13/7 22/1 34/16 46/15 46/17 66/15 66/17 66/23 66/25
threat [1]  58/13
threatened [1]  52/25
threatening [2]  37/15 52/8
three [9]  32/4 33/14 36/19 36/21 36/24 40/3 40/13 66/2 67/21
threw [1]  44/6
through [10]  25/11 27/23 29/21 29/22 31/23 41/2 49/6 49/21 66/19 67/5
throw [1]  45/7
thrown [1]  45/9
TILA [1]  38/1
time [22]  13/11 15/2 16/3 16/5 16/8 18/11 21/21 22/3 29/15 30/18 30/19 31/6 31/6 37/11 37/13 38/2 39/6 39/17 44/14 55/15 61/19 67/4
times [1]  18/4
today [4]  27/4 28/23 32/10 49/4
today's [1]  28/12
together [1]  29/6
told [3]  20/20 26/2 26/3
Tom [1]  2/12
too [2]  3/25 16/4
took [4]  31/2 31/2 36/20 36/25
top [2]  51/3 58/24
touch [1]  41/6
track [1]  44/7
traditional [2]  47/17 47/20
transaction [1]  17/16
TRANSCRIPT [1]  1/11
transcription [1]  68/14
transferred [1]  29/12
trial [5]  22/13 22/14 22/17 22/20 23/8
troublesome [1]  28/8
true [2]  40/5 53/14
trust [6]  2/11 25/17 25/18 25/23 31/12 59/24
trusts [1]  26/7
truth [3]  3/15 18/21 63/3
try [5]  16/2 16/16 22/18 31/23 68/5
trying [19]  13/14 15/5 22/12 26/17 27/23 28/5 28/7 28/8 28/22 30/5 30/16 31/12 31/24 32/9 36/11 36/12 36/18 39/1 63/17
turned [1]  22/24

**U**

two [6]  3/7 7/12 32/2 40/4 64/23 67/19
Twombly [1]  4/4
type [1]  52/4
typical [1]  48/2

**U**

U.S.C [1]  3/19
ultimately [2]  60/6 60/7
unauthenticated [1]  23/4
under [26]  3/25 4/3 4/9 4/19 6/6 6/13 6/17 7/23 16/23 16/24 21/10 28/13 28/16 33/4 33/10 42/5 42/5 49/4 49/5 49/14 51/17 52/12 55/16 56/20 58/9 58/11
underlying [1]  47/2
understand [17]  9/19 10/10 22/12 25/6 27/25 28/2 28/6 28/24 29/5 31/24 32/9 39/22 40/12 48/7 56/20 66/6 66/8
understanding [2]  42/8 60/17
undertake [1]  4/10
UNITED [4]  1/1 1/12 1/22 68/18
Universal [4]  63/24 63/25 64/2 64/6
unknown [3]  32/8 32/8 32/12
unless [2]  15/23 15/24
until [2]  13/22 30/3
unusual [1]  20/18
up [11]  15/1 23/20 37/16 38/17 38/18 41/1 44/11 46/20 51/22 56/10 60/5
upon [3]  5/5 54/10 64/1
USA [1]  37/18
use [2]  15/13 44/18
used [1]  41/18

**V**

validate [1]  53/18
validation [1]  41/2
various [1]  46/13
verification [1]  51/9
version [1]  65/17
versus [12]  2/3 27/18 52/19 52/19 54/15 58/17 62/24 62/25 63/5 63/14 63/19 63/25
very [5]  3/15 11/8 12/22 48/24 67/18
vicarious [1]  54/20
vicariously [1]  60/8
violate [2]  40/17 43/12
violation [9]  4/13 30/18 30/19 31/1 31/2 31/7 41/11 42/1 52/2
violations [4]  3/8 22/23 51/16 53/5
virtue [1]  3/24
visit [1]  41/16
voice [1]  11/13

**W**

wait [1]  61/15
waiting [1]  61/12
walked [2]  51/21 51/22
walking [1]  51/11
Walkland [1]  62/24
want [20]  13/5 31/24 34/22 40/8 44/9 46/12 46/18 46/20 47/8 49/21 54/6 58/7 60/18 60/25 61/9 66/12 66/20 66/21 67/9 67/17
wanted [4]  13/8 13/9 57/15 66/4
was [210]
wasn't [12]  7/21 9/4 19/11 22/7 23/23 33/3 33/10 56/5 56/19 64/14 64/15 64/16
waste [1]  67/4
watch [1]  36/14
water [3]  13/17 13/20 13/23

Watson [15]  37/14 38/16 41/13 50/21 50/25 51/11 54/8 54/11 54/23 56/3 58/3 59/6 59/8 59/14 59/15
way [7]  9/25 15/12 30/24 38/15 39/22 52/25 59/18
we [77]
we'll [1]  61/4
weeks [3]  40/3 65/24 68/6
welcome [1]  46/24
well [23]  2/13 3/5 6/21 10/3 12/4 13/7 19/1 25/1 25/16 26/14 29/15 31/9 34/16 40/12 42/14 56/2 58/1 58/14 59/22 60/12 62/2 66/9 66/21
went [5]  3/8 8/6 14/22 25/2 56/9
were [40]  3/3 4/24 7/20 11/14 12/3 14/24 16/22 16/24 18/8 19/8 19/12 24/22 24/23 25/10 26/7 27/13 28/15 29/23 31/9 31/11 31/20 31/21 37/16 38/24 39/10 42/5 43/2 46/4 46/13 46/15 55/13 55/17 57/15 61/12 63/20 63/21 64/2 64/24 64/25 64/25
weren't [3]  10/5 41/10 56/13
WEST [4]  1/2 1/5 1/16 68/19
Westwood [1]  1/15
what [58]  8/2 9/25 11/8 11/9 12/8 13/14 15/6 15/19 16/16 17/10 17/25 19/8 19/15 20/4 20/8 22/12 22/19 23/14 24/1 24/5 25/13 29/14 29/11 29/13 29/23 31/5 32/24 33/19 33/21 34/25 38/8 38/23 39/2 39/18 40/8 41/4 44/9 44/23 44/24 45/4 46/4 46/13 46/20 47/7 48/24 49/5 49/22 49/25 52/25 53/17 55/22 55/25 56/11 56/23 57/24 59/3 63/7 66/25
what's [1]  54/3
whatever [2]  30/13 31/13
when [45]  3/20 6/3 7/20 15/8 16/14 18/2 19/11 19/16 19/19 20/16 21/11 21/19 24/19 24/22 25/1 25/20 25/25 26/6 26/17 26/25 31/1 31/2 31/21 32/5 34/1 37/4 37/16 38/14 38/15 38/16 38/16 39/21 41/23 43/22 45/12 52/8 53/6 56/5 56/13 56/25 57/22 58/11 60/4 62/18 66/1
where [21]  7/3 7/10 10/5 16/10 22/18 23/8 25/17 29/25 33/14 33/17 38/22 43/19 43/20 46/2 47/10 47/16 55/8 57/15 57/19 64/17 64/18
whether [19]  3/17 4/2 4/10 6/7 6/8 6/13 6/22 7/8 8/9 12/5 12/16 13/13 16/25 23/11 34/23 38/4 44/24 49/12 62/13
which [44]  2/20 3/8 4/16 6/3 8/6 8/12 9/1 11/6 12/20 27/1 27/20 29/4 29/9 30/8 31/10 31/11 33/7 33/9 33/11 34/25 37/24 38/17 40/3 40/15 40/18 44/2 44/17 48/15 48/19 48/24 51/2 51/5 52/3 52/3 52/20 54/7 54/16 55/14 59/13 62/13 63/4 64/12 65/13 67/14
while [3]  4/20 11/7 53/22
whiteout [2]  12/4 38/9
who [41]  7/12 7/15 7/20 16/11 16/18 16/20 16/25 17/3 18/3 23/17 23/23 24/17 24/22 24/23 25/2 25/24 26/19 27/12 27/15 28/19 28/21 28/22 30/16 30/23 31/6 32/5 32/6 32/10 32/16 33/12 36/8 36/15 36/22 39/8 41/14 43/24 47/4 47/19 48/3 48/4 54/8
whoever [1]  22/8
whole [3]  9/23 20/21 26/17
whom [2]  42/22 43/23
why [27]  7/25 9/14 9/21 11/1 13/11 13/22 23/2 24/2 24/8 25/14 26/10 26/14 27/12

**W**

why... [14]  27/15 29/10 32/9 40/9 40/10
   42/23 46/12 49/22 54/13 55/11 56/3 59/21
   61/3 66/12
wife [3]  31/17 31/17 31/18
will [12]  4/12 6/12 9/6 24/6 46/21 50/2
   52/17 65/15 65/16 65/16 65/23 68/5
willfully [3]  52/3 56/15 57/3
within [2]  38/24 63/4
without [2]  41/24 62/17
witness [2]  7/20 23/5
witnesses [1]  23/17
Wolf [5]  41/4 56/15 57/2 57/18 59/15
won't [1]  16/7
wondering [2]  9/14 9/21
word [1]  63/12
words [1]  56/7
work [1]  40/6
worked [5]  34/1 38/2 44/18 66/16 67/11
working [2]  64/16 64/17
world [2]  35/20 35/24
would [52]  3/21 3/25 6/10 6/20 7/13 10/6
   10/8 10/15 13/5 13/21 21/4 21/4 25/17
   25/18 25/18 26/12 28/18 29/7 29/8 30/5
   30/9 30/12 30/16 30/20 30/24 31/21 33/11
   34/2 36/9 40/16 42/6 42/15 42/16 42/20
   43/4 45/15 47/17 47/21 48/3 52/6 57/20
   58/20 59/4 59/4 59/16 60/2 60/8 60/9 60/11
   60/12 65/15 66/19
wouldn't [1]  59/12
write [2]  24/23 48/3
written [6]  16/11 25/21 26/18 37/24 41/3
   63/13
wrong [5]  7/21 17/1 36/16 40/7 47/5
wrote [2]  29/12 47/15

**Y**

Yeah [6]  8/16 14/1 24/21 39/4 46/19 67/8
year [1]  50/5
years [5]  31/4 36/19 36/21 36/24 38/10
yes [24]  2/25 3/4 8/24 14/6 15/18 17/22
   17/24 18/17 19/23 19/25 21/7 21/16 28/24
   34/13 35/14 35/15 36/23 37/1 39/9 45/5
   50/14 61/11 65/25 67/2
York [1]  44/18
you [349]
you're [5]  6/8 39/8 46/24 47/3 67/15
you've [2]  7/21 42/12
your [91]